## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAPITOL PAVING OF D.C., INC.          :
2211 Channing Street, N. E.
Washington, D.C. 20018                :

      Plaintiff                       :

v.                                    :          Civil Action No. _____

DISTRICT OF COLUMBIA                  :
Serve:
George C. Valentine, Esquire          :
Deputy Attorney General
Civil Litigation Division             :
Office of the Attorney General
Government of the District of Columbia :
441 - 4th Street, N. W.
Suite 600 South                       :
Washington, D. C. 20001
                                      :
and
                                      :
ADRIAN M. FENTY
in his official capacity as Mayor of  :
the District of Columbia
                                      :
Serve:
Office of the Mayor
of the District of Columbia           :
Attention: Tabitha Braxton, Staff Assistant
John A. Wilson Building               :
1350 Pennsylvania Avenue, N. W.
Suite 419                             :
Washington, D. C. 20004
                                      :
      Defendants                      .

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Capitol Paving of D.C., Inc. ("Capitol Paving"), by its attorneys, Gavett &

Datt, P.C., and Douglas A. Datt, Esquire, brings this complaint against defendants District

of Columbia and Mayor Adrian M. Fenty, and for grounds states as follows:

## **INTRODUCTION**

1.      This suit seeks to have this Court declare invalid and enjoin the implementation
of a provision in the District of Columbia Small, Local, and Disadvantaged Business
Enterprise Development and Assistance Act of 2005 ("the 2005 Act"), D.C. Code § 2-218.01
*et seq.*, which gives an unprecedented and disproportionate preference to businesses who
compete in the District of Columbia's contracting and procurement process and who have
been in business in the District of Columbia for twenty consecutive years or longer. This
provision: (1) has a discriminatory effect in that it denies minority businesses, who, for the
most part, have not had the advantage of being in business for twenty or more years, equal
opportunity to participate in the District of Columbia's contracting and procurement process;
(2) has the effect of denying small businesses equal opportunity to participate in the District
of Columbia's contracting and procurement process and further has no rational basis in that
it violates the stated goal of the 2005 Act to stimulate and foster greater opportunities for
local, small, and disadvantaged business enterprises to participate in the District's contracting
and procurement process; (3) is not rationally related to a legitimate District of Columbia
interest in that there is no reasonable basis for affording such a large and unprecedented
preference to companies that have been in business for twenty years or longer when the
application of this enormous preference in fact, has a severe adverse economic impact on
both the plaintiff and others similarly situated; (4) conflicts with the District of Columbia
Procurement Practices Act because it has the effect of reducing competition; and (5) is
unconstitutionally vague.

In addition, the 2005 Act explicitly requires that the Mayor issue proposed rules to
implement the subtitle. The 2005 Act further requires that the Director of the District of

Columbia Department of Small and Local Business Development establish procedures and guidelines for the implementation of the programs established pursuant to the Act. Since the Mayor never issued any proposed rules or implementing rules, and the Director of the District of Columbia Department of Small and Local Business Development has never established procedures and guidelines for the implementation of the programs, the actions taken by the District of Columbia Department of Small and Local Business Development and/or District of Columbia Small and Local Business Opportunity Commission in certifying companies for this preference, and the actions taken by District agencies, in particular the District of Columbia Department of Public Works, District Division of Transportation, in applying this preference in evaluating bids and awarding contracts, are in violation of the 2005 Act as well as the District of Columbia Administrative Procedures Act.

## A. **PARTIES**

2.      Plaintiff, Capitol Paving, is a District of Columbia minority-owned and operated corporation authorized to conduct business in the District of Columbia, which has performed work in the District of Columbia since November 1987. The work of Capitol Paving includes asphalt paving and rehabilitation work.

Capitol Paving is eligible as a small business enterprise pursuant to the United States Small Business Act, 15 U.S.C. § 631 et seq., and therefore qualifies as a Small Business Enterprise pursuant to § 2332 of the Small, Local and Disadvantaged Business Enterprise Development and Assistance Act of 2005.[1]

3.      The District of Columbia Department of Small and Local Business Development ("DSLBD") is a department of the District of Columbia which the 2005 Act authorizes as responsible for, among other things, stimulating and fostering greater

---

[1] Capitol Paving has applied for such certification before the District of Columbia Department of Small and Local Business Development.

opportunities for local, small, and disadvantaged business enterprises to participate in the District's Contracting and procurement process. The 2005 Act further requires the Director to establish procedures and guidelines for the implementation of the programs established by the Act.

4.    The District of Columbia Small and Local Business Opportunity Commission ("SLBOC") is a District of Columbia commission appointed by the Mayor responsible for, among other things, reviewing applications for certain business certifications including certification as a Local Business Enterprise, Small Business Enterprise, Disadvantaged Business Enterprise, and Longtime Resident Business.

5.    The District of Columbia Department of Public Works, District Division of Transportation ("DDOT") is a department of the District of Columbia that has applied these certifications in soliciting and awarding contracts.

6.    Defendant District of Columbia is a municipal corporation organized under the Constitution and laws of the United States.

7.    As a municipal corporation, Defendant District of Columbia is a proper defendant in a civil action against agencies and departments of the District of Columbia.

8.    Defendant Adrian M. Fenty is the Mayor of the District of Columbia, and as such is responsible for executing and administering the District of Columbia's laws, customs, practices and policies. Further, the Act charges the Mayor with responsibility for issuing rules to implement the Act. In addition, as the chief executive of the District of Columbia, Mayor Fenty also oversees the District of Columbia DSLBD, SLBOC, and the District of Columbia DDOT. In those capacities, Mr. Fenty is presently sued in his official capacity.

## B. JURISDICTION & VENUE

9.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

10.     Pursuant to 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over Plaintiff's non-federal claims.

11.     This Court may issue a declaratory judgment and further relief in this matter pursuant to 28 U.S.C. §§ 2201-02.

12.     Venue in this district is appropriate pursuant to 28 U.S.C. § 1391(b).

## C. FACTS COMMON TO ALL COUNTS

13.     Since the 1970's, the District of Columbia has had a contracting program regarding contracts for competitively-bid goods and services entered into with the District of Columbia. Under this program, local, small and economically disadvantaged businesses, which have been certified as such by a District of Columbia agency, have been able to receive preference points on responses to Requests for Proposals ("RFP's") or percent reductions on responses to Invitations or Requests for Bids ("IFB"). Thus, although a business may submit a bid with a bid price that is higher than a competitor's bid, after the application of these preference points or percent reductions, the bid may be considered the lower bid resulting in the contract being awarded to that bidder. Although a contractor's bid may be given a discount for purposes of award consideration, the actual contract award to be paid to the contractor will be the actual bid amount.

14.     The original legislation setting forth certain such categories and preferences was the Minority Contracting Act of 1976, effective March 29, 1977, D.C. Law 1-95; D.C. Code §2-215.03 et seq. The Sheltered Market Program, established under the Minority

Contracting Act of 1976, which set forth certain preferences to local minority business enterprises, was declared unconstitutional by the United States Court of Appeals for the District of Columbia Circuit in *O'Donnell Construction v. District of Columbia*, 963 F.2d 420 (D.C. Cir. 1992). As a result thereof, the Sheltered Market Program for minority businesses was discontinued and the District of Columbia City Council enacted a new program in 1992, allowing businesses to be certified in the Program in a variety of categories. The Local, Small, and Disadvantaged Business Enterprise ("LSDBE") Program was established in 1992 as the Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act. The 1992 Act was amended by the Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998, effective April 27, 1999, D.C. Law 12-628, D.C. Code § 2-217.01 *et seq.*

15.    Throughout the years, pursuant to this legislation, the number of preference points or percent reductions for particular categories has varied somewhat, ranging from 2 points or 2 percentage point reductions to 5 points or 5 percentage point reductions for any one category. There had never been a category that had a preference assigned to it in excess of 5 points.

16.    On March 24, 2005, the Chairman of the Council of the District of Columbia, Linda W. Cropp, at the request of the Mayor, introduced before the Council the Fiscal Year 2006 Budget Support Act of 2005 (Bill 16-200). Title II of that Act, Subtitle A, was the District of Columbia Small, Local, and Disadvantaged Business Enterprise Development and Assistance Act of 2005 ("the 2005 Act"). That proposed legislation provided that each District agency shall exercise its contracting and procurement authority in such a way as to meet on an annual basis the goal of procuring and contracting 50% of the dollar volume of its goods and services to Small Business Enterprises ("SBE"). The proposed legislation also

has a mandatory set-aside of small contracts for small business enterprises and a set-aside program for local, small or disadvantaged business enterprises for the District of Columbia supply schedules. The proposed legislation further set forth four categories of preferences in evaluating bids and proposal preferences as follows:

a.  Local Business Enterprise (LBE)                4 points or 4%

b.  Disadvantaged Business Enterprise (DBE)    3 points or 3%

c.  Resident Business Ownership (RBO)           3 points or 3%

d.  LBE with principal office located in an
    enterprise zone (DZE)                                  2 points or 2%

17.    The final version of the 2005 Act, was signed by the Mayor on July 26, 2005, and transmitted to Congress for review. The law became effective on October 20, 2005. D.C. Code § 2-218.01. A copy of the relevant sections of the 2005 Act are attached hereto as Exhibit 1.

18.    The final version of the Act set forth many of the same preference categories that had been provided for in previous legislation, with preference points or percent reductions of either 2 or 3 points or percent reductions for each category. Inexplicably, however, the newly enacted Act provided for a new category that had not appeared in the original version introduced by Council Chair Cropp on March 24, 2005 nor in any predecessor legislation. There is no information in the legislative history as to how this category suddenly appeared in the final version of the Act. This new category, entitled "Longtime Resident Business" ("LRB"), is defined in the Act as "a business which has been continuously eligible for certification as a Local Business Enterprise... for twenty consecutive years." § 2-218.02(13). This new category was accorded the unprecedented and

disproportionate preference of ten points or ten percent (10%) reduction in bid price. § 2-218.43.

19.    The 2005 Act established the Department of Small and Local Business Development ("the Department" or "DSLBD"). § 2-218.11. The Act also established the District of Columbia Small and Local Business Opportunity Commission ("SLBOC" or "Commission"), which was to replace the previously established Local Business Opportunity Commission ("LBOC"). § 2-218.21.

20.    The 2005 Act states that "[i]t shall be the goal and responsibility of the Department to stimulate and foster greater opportunities for local, small, and disadvantaged business enterprises to participate in the District's Contracting and procurement process." § 2-218.13(a).

21.    The 2005 Act further states that, "The Director shall establish procedures and guidelines for the implementation of the programs established pursuant to part D of this subtitle." § 2-218.13(b).

22.    The 2005 Act further provides that the Department shall establish, among other divisions, the Office of Certification, Compliance, and Enforcement, which shall be responsible for, among other things, reviewing applications for certification as a local, small, or disadvantaged business enterprise, or as a resident-owned or resident business or as a local business enterprise with its principal office located in an enterprise zone. § 2-218.13(c)(1).

23.    The 2005 Act described the functions of the Commission and provided that the Commission shall, among other things, "Determine a business enterprise's or joint venture's eligibility for certification under part D and review and determine the continued eligibility of business enterprises and joint ventures certified by the Commission."  § 2-218.22.

24.    The 2005 Act further stated that the Commission "shall educate the public, including District residents and businesses, about the District's programs for local, small, and disadvantaged business enterprises" and "stimulate and foster greater opportunities for local, small, and disadvantaged business enterprises to participate in the District's contracting and procurement process and provide recommendations to the Council and the Mayor on ways to increase the participation." § 2-218.23.

25.    Subsection D of the 2005 Act set forth programs for Certified Business Enterprises. This subsection establishes the following seven categories of Certified Business Enterprises: Local Business Enterprises ("LBE")(§ 2-218.31); Small Business Enterprises ("SBE")(§ 2-218.32); Disadvantaged Business Enterprises ("DBE") (§ 2-218.33); Qualified Metropolitan Area Business Enterprises ("QMABE") (§ 2-218.34); Resident-owned Businesses ("ROB")(§ 2-218.35); Longtime Resident Businesses ("LRB")(§ 2-218.36); and Local Business Enterprises with Principal Offices located in an Enterprise Zone ("DZE") (§ 2-218.37).

26.    Section 218.41 of the Act sets forth a goal for District agencies with respect to contracting and procurement. This section provides that each agency shall exercise its contracting and procurement authority so as to meet, on an annual basis, the goal of procuring and contracting 50% of the dollar volume of its goods and services, including construction goods and services, to Small Business Enterprises. § 2-218.41(a).

27.    In order to achieve the contracting and procurement goals, the Act provides for certain bid and proposal preferences to be granted to the following six categories of Certified Business Categories as follows:

a. Small business enterprise (SBE)                3 points or 3%

b. Resident-owned business enterprise (ROB)       3 points or 3%

c.  Longtime Resident Business (LRB)                10 points or 10%

d.  Local Business Enterprise (LBE)                 2 points or 2%

e.  LBE with principal office located in an

    enterprise zone ( DZE)                          2 points or 2%

f.  Disadvantaged business enterprise (DBE)         2 points or 2%

§ 2-218.43(a).

28.     The Act further provides that a certified business enterprise shall be entitled to any or all of the preferences provided in section 218.43, but in no case shall a certified business enterprise be entitled to a preference of more than 12 points, or reduction in price of more than 12%. § 2-218.43(b).

29.     Section 2-218.61 sets forth that enterprises seeking to be certified in the following categories must file written applications with the Commission: LBE, SBE, DBE, ROB, and DZE. There is no mention of the filing of applications for certification in the category of LRB.

30.     The 2005 Act explicitly requires that the "Mayor shall... issue proposed rules to implement this subtitle." § 2-218.72. No such implementing rules have ever been issued.

31.     Despite the fact that no implementing rules have been issued, the DSLBD and/or SLBOC have started to certify companies in the LRB category and that certification and its associated preferences are being relied upon and applied by District of Columbia agencies in evaluating bids and awarding contracts.

32.     Less than one month after the effective date of the 2005 Act, on November 2, 2005, an amendment was introduced by Council-member Brown, the "Longtime Resident Business Definition Amendment Act of 2005," Bill 16-506, which would amend the 2005 Act to provide that a business enterprise seeking to meet the definition of a Longtime

- 10 -

Resident Business, is bound by the size standard of a ***small business enterprise*** and must have been continuously certified as such for ***ten (10)*** consecutive years. (emphasis added). That proposed amendment was not acted on by the Council.

33.    On October 20, 2006, a public hearing was held on this Bill with testimony from the public, the Department of Small and Local Business Development, and the Small and Local Business Opportunity Commission.  Several witnesses representing individual businesses and public interest organizations representing minority business owners testified in support of the proposed legislation because the reduction in number of years to be eligible for the LRB preference would allow a number of businesses to qualify for LRB certification and would level the playing field for the small business owner.  In addition, the Acting Director of the District of Columbia DSLBD testified in support of the legislation and proposed additional changes, noting that "this change will reduce the significant advantage currently being enjoyed by larger longtime resident businesses when competing for city contracts against smaller companies." A representative of the District of Columbia SLBOC also testified in support of the legislation  and stated that the Commission viewed a fifteen year residency requirement as the most equitable and best suited for identifying longtime resident businesses. *See* Council of the District of Columbia, Committee on Economic Development Report on Bill 16-506 (November 6, 2006), attached as Exhibit 2.

34.    As a result of  the public testimony and further review of the legislation, on November 5, 2006, The Committee on Economic Development met to mark -up Bill 16-506. Arising out of that meeting, legislation was proposed that amended the existing law defining resident businesses and small businesses and reduced the residency requirement for longtime resident businesses from 20 to 15 years. See Exhibit 2, Draft Committee Print.

- 11 -

35.   On December 5, 2006, a favorable First Vote/Reading of the Amended Bill was undertaken by the Council.   See Exhibit 3, Council of the District of Columbia Legislative Information Management System.

36.   On December 19, 2006, Council Chairperson Linda Cropp introduced an entirely new marked-up bill, Bill 16-506, the "Longtime Resident Business Definition Amendment Act of 2006", which was passed by the Council that day.   The amendment amends the definition of Longtime Resident Business under the 2005 Act by lowering the threshold for Small Business Enterprises to fifteen consecutive years.   Thus, a Longtime Resident Business would include either a business which has been continuously eligible for certification as a Local Business Enterprise for twenty consecutive years or a Small Business Enterprise which has been continuously eligible for certification as a Local Business Enterprise for fifteen consecutive years.   The amendment was signed by the Mayor on December 29, 2006 and is pending approval by Congress.   A copy of the Amendment is attached hereto as Exhibit 4.   At this time, however, the 2005 Act remains in force, and even if the 12/19/2006 Amendment becomes law, the 2005 Act would apply to bids that took place prior to the effective date of the Amendment.

### The Effect of the 2005 Act

37.   The preferences accorded to an LRB pursuant to the 2005 Act effectively precludes plaintiff and other local, small, and/or disadvantaged enterprises from competing in the District of Columbia contracting and procurement process.   Without enjoinment of this provision of the Act, plaintiff will suffer imminent harm as a result of the application of the LRB preference.

38.   For example, although Capitol Paving was the low-bidder in response to a March 3, 2006, Solicitation from the District of Columbia, Department of Public Works,

District Division of Transportation ("DDOT") for citywide rehabilitation of alleys at various locations in the District of Columbia (FY05 First Citywide Alley Contract, D. C. Solicitation No. POKA-2005-B-0015-LS), the District of Columbia Department of Transportation advised Capitol Paving on June 7, 2006, that after the application of the recently enacted preference points, another contractor was considered the low bidder. Capitol Paving's bid was $576,068.20 lower than that other contractor's bid. In analyzing the bids, the Department assigned a 2 percent reduction in the bid price to Capitol Paving for its certification as a Local Business Enterprise (LBE). Capitol Paving has been a District of Columbia business enterprise for nineteen years. The contractor who was considered the low-bidder, who has been in business for twenty years, received a total of a 12% reduction in the bid price: 2 percent for a Local Business Enterprise (LBE) and 10 percent based on its recent certification as a Longtime Resident Business (LRB). Although Capitol Paving's bid was almost $600,000 lower than its competitor's bid, after application of the preferences, the competitor's bid was considered lower than Capitol Paving's bid by in excess of $ 2 million dollars. Thus, if and when this contract is finally awarded, the District will be paying almost $600,000 dollars per year more than it would have had the contract been awarded to the low bidder, Capitol Paving, based solely on the fact that Capitol Paving has been in business just short of the twenty year period required to receive ten preference points as an LRB. In addition, of the four(4) contractors who bid on that project, only one contractor was certified as LRB. On October 12, 2006, Capitol Paving's Protest of this

Solicitation was denied by the Contract Appeals Board.  CAB No. P-0736 (October 12, 2006).[2]

39.    The DDOT continues to issue solicitations for similar such work and the application of the LRB preference will cause irreparable harm to Capitol Paving and others. Capitol Paving filed a second Protest to another Solicitation issued by DDOT for the Citywide rehabilitation of streets and road surfaces which have developed cracks (FYO6 Citywide Slurry Seal and Chip Seal Contract, No. POKA-2006-B-0090-LJ). Again, the one company that has been certified as LRB will receive a disproportionate preference in comparison to all other companies who bid on this solicitation.  On November 9, 2006, Capitol Paving's Protest of this Solicitation was denied by the Contract Appeals Board. CAB No. P-0741 (November 9, 2006).[3]

40.    The amendment to the Act, which was passed by the District of Columbia Council, does not relieve the unfair effects of the Act, and if the amendment becomes law, it would only be effective when passed, and would not afford relief to local, small, and/or disadvantaged enterprises that are being unfairly precluded from competing for contracts that are being awarded as of now pursuant to the 2005 Act and the current definition of LRB.

41.    Plaintiff has no adequate remedy at law for the burdens imposed on it by the 2005 Act.  If the defendants are not enjoined from enforcing application of the LRB preference, plaintiff will suffer immediate and irreparable harm.

_____

[2]    On November 13, 2006, Capitol Paving filed a Petition for Review of the CAB decision with the Superior Court of the District of Columbia.

[3]    On December 11, 2006, Capitol Paving filed a Petition for Review of the CAB decision with the Superior Court of the District of Columbia.

42.    There is a substantial likelihood that plaintiff will succeed on the merits of this action.

43.    Denial of injunctive relief will cause greater injury to plaintiff than granting injunctive relief will cause to defendants.

44.    Injunctive relief will serve the public interest in that the application of the LRB preference points pursuant to the 2005 Act causes substantial harm to the District because after application of the unprecedented and disproportionate ten point preference to LRB's, the District will be awarding contracts to bidders who, prior to the award of these points, in fact, were not the lowest bidders and therefore the District and its residents are entering into contracts which are not the lowest bids for the work. Injunctive relief will further serve the public interest in that it will preserve the status quo and foster equitable and broad-based competition in the District through support of the free enterprise system, ensuring support of the local, small and disadvantaged business opportunity program, full and open competition by providing that contractors are given adequate opportunities to bid and that the government receives sufficient bids to ensure that it obtains the lowest possible price for goods and services that meet specifications and standards for quality; provide for increased public confidence in the procedures followed in public procurement; provide increased economy in procurement activities, and would ensure the fair and equitable treatment of all persons who deal with the procurement system of the District government.

## COUNT I

### (Declaratory/Injunctive Relief - Violation of Equal Protection Clause of the United States Constitution, Violation of Civil Rights, 42 U.S.C. §1981, 42 U.S.C. §1983)

45.    The plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 44 above as if expressly set forth herein.

- 15 -

46.    In order to receive an LRB preference, which amounts to a discount of ten percentage points (twelve points when combined with the LBE category, which a business must have as a prerequisite), a business must have been eligible as an LBE for twenty or more consecutive years.

47.    Census data demonstrate that minority-owned businesses in the District of Columbia have shown significant increases since 1992. Thus, there are a significant number of minority-owned businesses who are not eligible for LRB certification under the current legislation because they have not been in existence for close to twenty years and will not be eligible for such status for quite some time. Capitol Paving has been in existence since November 1997 and is therefore not currently eligible as an LRB. Moreover, even if these businesses were to receive for example, three certifications as a Small Business Enterprise, Local Business Enterprise, and Disadvantaged Business Enterprise, the combination of the preference points for these categories (7 total: 3 for SBE, 2 for LBE, and 2 for DBE) still would not come close to the disproportionate preference that an LRB receives pursuant to the 2005 Act (10 for LRB plus 2 for LBE).

48.    The application of the LRB preference has the effect of violating the equal protection principles embodied in the Due Process Clause of the Fifth Amendment to the Constitution, violates plaintiff's rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment, and violates plaintiff's rights under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 because it largely does not give minority-owned businesses the same opportunity to compete in the District of Columbia contracting and procurement process, as non-minority owned businesses.

- 16 -

**COUNT II**
**(Declaratory/Injunctive Relief - Violation of Equal Protection Clause - No Rational**
**Basis - Conflicts With Stated Purpose of Act)**

49.     The plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 48 above as if expressly set forth herein.

50.     The LRB classification is an economic provision that is not rationally related to a legitimate state interest and is arbitrary, capricious, and unreasonable.

51.     Because of the realities of the marketplace and the nature of companies who have been in business in the District continuously for twenty years or more, the application of the LRB preference category will result in significant preferences awarded to large, established businesses.

52.     Application of the LRB preference will therefore have the effect of counteracting the stated goal of the District that each agency shall exercise its contracting and procurement authority in such a way as to meet on an annual basis the goal of procuring and contracting 50% of the dollar volume of its goods and services to Small Business Enterprises ("SBE").

53.     Application of the LRB preference further conflicts with the purpose and goal of the 2005 Act, and its predecessor acts, to stimulate and foster greater opportunities for local, small, and disadvantaged business enterprises to participate in the District's Contracting and procurement process.

54.     There is no evidence that the District of Columbia Council considered any justification for the adoption of the LRB category. Indeed, the very appearance of the LRB category in the final legislation, when it had not appeared in any previous versions of the bill,

is suspect. Although the District of Columbia Council has now passed an amendment changing the definition of the LRB category to be more favorable to small business enterprises, that amendment would only apply prospectively if and when it is signed into law. In addition, the amendment continues to allow for large companies to receive the LRB preference, and thus places small businesses at a continuing disadvantage in having to compete with larger companies on the same terms.

55.    There is no rational basis for a provision that grants such an enormous preference to a business that has been certified as LBE for twenty or more years. There is no evidence that this would result in any benefit to the District, and, indeed, as shown above, reveals that the application of such a deep discount in evaluating a bid that is, in fact, much higher than others, and that would obligate the District to the original bid price if the contract is awarded, in fact, hurts the District as well as the entity that was the low-bidder prior to the application of the LRB preference.

56.    This provision of the District Act, therefore, violates the Equal Protection clause of the United States Constitution.

## COUNT III
### (Declaratory/Injunctive Relief - Act Conflicts with District of Columbia Procurement Practices Act)

57.    The plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 56 above as if expressly set forth herein.

58.    The District of Columbia Code regarding Procurement Practices, § 2-301.01 provides, in relevant part, that the purpose of the District's procurement practices are: to foster effective and equitably broad-based competition in the District through support of the

- 18 -

free enterprise system, ensuring support of the local, small and disadvantaged business opportunity program; to obtain full and open competition by providing that contractors are given adequate opportunities to bid and that the government receives sufficient bids to ensure that it obtains the lowest possible price for goods and services that meet specifications and standards for quality; to provide increased procurement opportunities for District-based, women-owned businesses; to provide for increased public confidence in the procedures followed in public procurement; to provide increased economy in procurement activities and to maximize, to the fullest extent allowed by law, the purchasing power of the District government; and to insure the fair and equitable treatment of all persons who deal with the procurement system of the District government.

59.    The effects of applying the LRB category and its associated disproportionate preference conflicts with all of these stated goals in that it impedes effective and equitably broad-based competition in the District, contradicts the policy to promote local, small and disadvantaged businesses; hinders full and open competition, limits the government's ability to receive sufficient bids to ensure that it obtains the lowest possible price for goods and services that meet specifications and standards for quality; decreases, instead of increases procurement opportunities for District-based, women-owned businesses; decreases public confidence in the procedures followed in public procurement; decreases economy in procurement activities; minimizes, instead of  maximizes, the purchasing power of the District government; and infringes on the fair and equitable treatment of all persons who deal with the procurement system of the District government.

60.    Because application of the LRB preference conflicts with long-established District procurement law, this aspect of the law should be enjoined from enforcement.

### COUNT IV
### (Declaratory/Injunctive Relief - Application of LRB Preference is Void for Vagueness)

61.    The plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 60 above as if expressly set forth herein.

62.    The 2005 Act defines "Longtime resident business" as "a business which has been continuously eligible for certification as a Local Business Enterprise... for twenty consecutive years." § 2-218.02(13). Section 2-218.61(a) states that no business enterprise shall be permitted to participate in a program established under this part unless the business enterprise has been issued a certificate of registration or provisional certification. Section 2-218.61(b)(1) then describes the certification process for several categories including local, small or disadvantaged business enterprise, resident-owned business, resident business, and Local Business Enterprise with its principal office located in an enterprise zone. Notably absent is any description of certification as a LRB. Thus, the legislation is ambiguous and void for vagueness since it does not even mention in any way whatsoever the certification process for the category of LRB.

63.    Even assuming, *arguendo*, that the legislation is not vague with respect to its failure to include the LRB category in the description of the certification process, it is clear that an entity that receives LRB certification, by definition, must, as a prerequisite, be an LBE. The legislation is further vague, however, because it fails to explain whether being designated as LRB allows you to "double dip" and add-on LBE certification as well. Thus,

- 20 -

it is ambiguous whether an entity that is eligible for a 10 point LRB preference in essence is automatically entitled to a 12 point preference, claiming under both LBE and LRB, or whether the LRB category subsumes the LBE category and entities are limited to the LRB category alone and cannot also claim additional preference points under the LBE category. The legislation is therefore void for vagueness and should be set aside.

64. Further, the legislation is also vague because it fails to describe how a company may be "eligible" for certification as an LRB. Under the previous Acts, in order to apply for LBE certification, a company was required to submit an application accompanied by a sworn Affidavit that the statements made in the application were true and correct along with a Certificate of Good Standing. The 2005 Act does not state that an LRB is a business which has been certified as a Local Business Enterprise for twenty years, but rather, that an LRB is a business which has been continuously *eligible* for certification as a Local Business Enterprise... for twenty consecutive years. Thus, a business may not have been *certified* as an LBE for twenty years, yet the legislation provides that if it was eligible, it can still obtain LRB certification. This is completely vague and ambiguous. What does it mean to be "eligible" for certification? Must the company receive retroactive certification as an LBE for the years that it was not certified as such? Does "eligibility" for certification as an LRB for the years prior to actually being certified as LBE for those years require the company to submit an Application for LRB certification accompanied by a sworn Affidavit that the statements made in the application are true and correct, as it would have to have done to have received LBE certification? Is the company required to submit a Certificate of Good Standing for all twenty years as it was required to do when applying for LBE certification?

In addition, the 2005 Act requires a company applying for certification in these other categories to submit evidence of ability and character.  § 2-218.61(b)(2).  Does a company applying for LRB certification  have to submit  evidence of ability and character for a twenty-year period?  The legislation is, on its face, void for vagueness with respect to the certification under the new LRB category and should therefore be set aside.

## COUNT V
### (Declaratory/Injunctive Relief - Unlawful Action by Public Officials - Failure to Comply with 2005 Act and Administrative Procedures Act)

65.    The plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 64 above as if expressly set forth herein.

66.    Although the 2005 Act explicitly requires that the "Mayor shall... issue proposed rules to implement this subtitle" (Section 2-218.72), no such implementing rules have ever been issued.

67.    The 2005 Act further requires that "The Director shall establish procedures and guidelines for the implementation of the programs established pursuant to part D of this subtitle." § 2-218.13(b).

68.    The District of Columbia Administrative Procedures Act requires notice of proposed rules and an opportunity to comment upon proposed rules, prior to such rules being enforced by an agency of the District of Columbia government (except in the case of emergency rules).

69.    Since no implementing rules have ever been proposed or issued by the Mayor, and no procedures and guidelines have ever been established by the Director, the actions taken by the DSLBD and/or SLBOC in certifying companies for the LRB preference, and the

actions taken by District agencies, specifically the DDOT, in applying this preference in evaluating bids and awarding contracts, are in violation of plaintiff's constitutional rights, the 2005 Act, as well as the District of Columbia Administrative Procedures Act.

## REQUESTED RELIEF

WHEREFORE, based upon the foregoing allegations, plaintiff Capitol Paving requests that the Court:

i. Enter a judgment preliminarily and permanently enjoining defendants, and their officers, agents, and employees, from implementing and applying the LRB category and preferences as set forth in the District of Columbia Small, Local and Disadvantaged Business Enterprise Development and Assistance Act of 2005;

ii. Enter a judgment determining and declaring that application of the LRB preference category as set forth in the District of Columbia Small, Local and Disadvantaged Business Enterprise Development and Assistance Act of 2005:(1) has a discriminatory effect in that it denies minority businesses, who, for the most part, have not had the advantage of being in business for twenty or more years, equal opportunity to participate in the District of Columbia's contracting and procurement process; (2) has no rational basis in that it violates the stated goal of the 2005 Act to stimulate and foster greater opportunities for local, small, and disadvantaged business enterprises to participate in the District's contracting and procurement process; (3) is not rationally related to a legitimate District of Columbia interest in that there is no reasonable basis for affording such a large and unprecedented preference to companies that have been in business for twenty years or longer when the application of this enormous preference in fact, has a severe adverse economic impact on the District; (4) conflicts with the District of Columbia Procurement Practices Act; (5) is unconstitutionally

- 23 -

vague; and (6) the application of the LRB preferences by District of Columbia officials and agencies, in the absence of implementing rules ever having been proposed or issued by the Mayor, and in the absence of procedures and guidelines ever having been established by the Director of the DSLBD, is in violation of the 2005 Act as well as the District of Columbia Administrative Procedures Act.

     iii.    Enter a judgment against defendants for:

        a.    Attorneys' fees and expenses incurred in this litigation;

        b.    Costs of these proceedings as permitted by law; and

        c.    Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

GAVETT AND DATT, P.C.

Douglas A. Datt, Bar No. 410354
15850 Crabbs Branch Way, Suite 180
Rockville, MD 20855-2622
ddatt@gavettdatt.com
Telephone: (301) 948-1177
Facsimile: (301) 948-4334
**Counsel for Plaintiff**
**Capitol Paving of D.C., Inc.**

F:\Data\GD\Corporate\104.000\104-32\Pleadings\Federal-Court\COMPLAINT-001.wpd

AN ACT

D.C. ACT 16-166

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

JULY 26, 2005

FISCAL YEAR 2006 BUDGET SUPPORT ACT OF 2005

TABLE OF CONTENTS

TITLE I.    GOVERNMENT DIRECTION AND SUPPORT . . . . . . . . . . . . . . . . . . . . . . . 8
            SUBTITLE A.  FISCAL YEAR 2006 BUDGET SUBMISSION
               AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            SUBTITLE B.  PERFORMANCE BASED BUDGETING AMENDMENT . . . . 9
            SUBTITLE C.  CRITERIA FOR SPENDING CONTINGENCY FUNDING . . 11
            SUBTITLE D.  APPROPRIATION OF ADDITIONAL REVENUE . . . . . . . . 12
            SUBTITLE E.  COLLECTIVE BARGAINING AMENDMENT . . . . . . . . . . . 14
            SUBTITLE F.  SUPPORT FOR VOTING RIGHTS EDUCATIONAL AND
               INFORMATIONAL ACTIVITIES . . . . . . . . . . . . . . . . . . . . . . . . 14
            SUBTITLE G.  LEASING FEES WORKING FUND AMENDMENT . . . . . . . 15
            SUBTITLE H.  TOBACCO SETTLEMENT TRUST FUND BOARD
               MEETINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            SUBTITLE I.  SURPLUS PERSONAL PROPERTY SALES OPERATING
               FUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            SUBTITLE J.  REVENUE AND ALLOCATION PRIORITY
               CLARIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            SUBTITLE K.  STANDARD DEDUCTION AND PERSONAL EXEMPTION
               INCREASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            SUBTITLE L.  EXPANSION OF THE EARNED INCOME TAX CREDIT . . . 19
            SUBTITLE M.  ASSESSMENT OF COLLECTION FEES ACT OF 2005 . . . . 20
            SUBTITLE N. ESTABLISHMENT OF COMPLIANCE AND REAL
               PROPERTY TAX ADMINISTRATION FUND ACT OF 2005 . . . . . . 20
            SUBTITLE O.  HOMESTEAD DEDUCTION INCREASE . . . . . . . . . . . . . . . 21
            SUBTITLE P.  ESTABLISHMENT OF THE COMMODITIES COST
               RESERVE FUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

Exhibit 1

ENROLLED ORIGINAL

SUBTITLE Q.  DISHONORED CHECK FEE COLLECTION  . . . . . . . . . . . . 24
SUBTITLE R.  REPROGRAMMING AMENDMENT  . . . . . . . . . . . . . . . . . . 25
SUBTITLE S.  TAX DEFERRAL FOR LOW-INCOME PROPERTY
    OWNERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
SUBTITLE T.  FEE COLLECTION INCENTIVE . . . . . . . . . . . . . . . . . . . . 30
SUBTITLE U.  THE CATHOLIC UNIVERSITY OF AMERICA TAX
    EXEMPTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
SUBTITLE V.  CARVER 2000 LOW-INCOME AND SENIOR HOUSING
    TAX EXEMPTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
SUBTITLE W.  DUPONT COMMONS LOW-INCOME HOUSING TAX
    EXEMPTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
SUBTITLE X.  THE WAY OF THE CROSS CHURCH OF CHRIST TAX
    EXEMPTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
SUBTITLE Y.  APPALACHIAN STATE UNIVERSITY TAX EXEMPTION  35
SUBTITLE Z.  FAMILY PROPERTY RECORDATION AND TRANSFER
    TAX EXEMPTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
SUBTITLE AA.  AMERICAN PSYCHOLOGICAL ASSOCIATION TAX
    EXEMPTION CONTINUATION . . . . . . . . . . . . . . . . . . . . . . . . 36
SUBTITLE BB.  RECYCLABLE MATERIAL SALES TAX
    CLARIFICATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
SUBTITLE CC.  NURSING HOME PROVIDER TAX TECHNICAL
    AMENDMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
SUBTITLE DD.  WASHINGTON CONVENTION CENTER MARKETING
    FUND AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
SUBTITLE EE.  RESIDENTIAL PROPERTY TAX RATE AND CAP
    REDUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
SUBTITLE FF.  CALCULATED RESIDENTIAL PROPERTY TAX RATE
    ESTABLISHMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
SUBTITLE GG.  LIMITED-EQUITY COOPERATIVE TAX FAIRNESS  . . . . 43
SUBTITLE HH.  AFFORDABLE HOUSING PRESERVATION TAX
    ASSESSMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
SUBTITLE II.  TRIENNIAL GROUP DISPARITY CORRECTION . . . . . . . . 46
SUBTITLE JJ.  INCOME EXCLUSION FOR DISABLED PERSONS . . . . . . . 47
SUBTITLE KK.  REDUCED TAX LIABILITY FOR DISABLED
    PROPERTY OWNERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

TITLE II.  ECONOMIC DEVELOPMENT AND REGULATION . . . . . . . . . . . . . . . . . . 52
SUBTITLE A.  OFFICE OF PEOPLE'S COUNSEL AMENDMENT . . . . . . . . 52
SUBTITLE B.  T.I.F. RE-AUTHORIZATION . . . . . . . . . . . . . . . . . . . . . . . . 52

ENROLLED ORIGINAL

SUBTITLE C.  DISTRICT OF COLUMBIA SUPPORT FOR PUBLIC
    HOUSING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
SUBTITLE D.  DEPARTMENT OF CONSUMER AND REGULATORY
    AFFAIRS CONSUMER PROTECTION REVITALIZATION ACT. . . 53
SUBTITLE E. UNEMPLOYMENT COMPENSATION ADMINISTRATIVE
    FUNDING ASSESSMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
SUBTITLE F. YOUTH EMPLOYMENT SERVICE INITIATIVE . . . . . . . . . . 56
SUBTITLE G.  OFFICE OF THE CHIEF TENANT ADVOCATE
    ESTABLISHMENT ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
SUBTITLE H.  TRANSITIONAL EMPLOYMENT PROGRAM AND
    APPRENTICESHIP INITIATIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
SUBTITLE I.  GREAT STREETS DEVELOPMENT . . . . . . . . . . . . . . . . . . 62
SUBTITLE J.  HOUSING PRODUCTION TRUST FUND AND NEW
    COMMUNITIES FINANCING . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
SUBTITLE K.  NATURAL GAS FUND . . . . . . . . . . . . . . . . . . . . . . . . . 71
SUBTITLE L.  INSURANCE REGULATORY TRUST FUND
    ENHANCEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
SUBTITLE M.  TARGETED HISTORIC HOUSING TAX CREDIT ACT . . . 72
SUBTITLE N.   SMALL, LOCAL, AND DISADVANTAGED BUSINESS
    ENTERPRISE DEVELOPMENT AND ASSISTANCE . . . . . . . . . . . . . 73

TITLE III.    PUBLIC SAFETY AND JUSTICE . . . . . . . . . . . . . . . . . . . . . . . . . . 98
SUBTITLE A. ESTABLISHMENT OF THE OFFICE OF THE CHIEF
    MEDICAL EXAMINER MANAGEMENT FUND . . . . . . . . . . . . . . 98
SUBTITLE B. LEGAL SERVICE AMENDMENT . . . . . . . . . . . . . . . . . . . . 99
SUBTITLE C. THE DEPARTMENT OF CORRECTIONS REIMBURSEMENT
    FUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104

TITLE IV.    PUBLIC EDUCATION SYSTEM . . . . . . . . . . . . . . . . . . . . . . . . . . 105
SUBTITLE A.  EDUCATION LICENSURE COMMISSION . . . . . . . . . . . . 105
SUBTITLE B.  UNIFORM PER STUDENT FUNDING FORMULA FOR
    PUBLIC SCHOOLS AND PUBLIC CHARTER SCHOOLS . . . . . . . . 106
SUBTITLE C.  PRESERVATION OF SCHOOL-BASED STAFF
    POSITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110
SUBTITLE D.  FISCAL YEAR 2006 EDUCATIONAL INVESTMENTS
    FUND FOR DISTRICT OF COLUMBIA PUBLIC SCHOOLS AND
    PUBLIC CHARTER SCHOOLS SPENDING PLAN
    REQUIREMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111
SUBTITLE E. SCHOOLS MODERNIZATION FUND . . . . . . . . . . . . . . . . 112
SUBTITLE F.  POLICIES FOR 3RD AND 8TH GRADE STUDENTS . . . . . . . 114

TITLE V.    HUMAN SUPPORT SERVICES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115
            SUBTITLE A.   HEALTH CARE AND CHILD DEVELOPMENT FACILITIES
                LICENSOR FEES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115
            SUBTITLE B. CLINICAL LABORATORY . . . . . . . . . . . . . . . . . . . . . . . . . . 115
            SUBTITLE C.  BOARD OF MEDICINE AMENDMENT . . . . . . . . . . . . . . . 119
            SUBTITLE D.  CHILD SUPPORT PASS-THROUGH ESTABLISHMENT  . 120
            SUBTITLE E.  CHOICE IN DRUG TREATMENT SERVICES . . . . . . . . . . . 120
            SUBTITLE F.  HEALTH REGULATION AND OCCUPATIONS FEES . . . . 121
            SUBTITLE G.  SCHOOL BASED HEALTH  . . . . . . . . . . . . . . . . . . . . . : 122
            SUBTITLE H. ACCESS RX AMENDMENT ACT . . . . . . . . . . . . . . . . . . . . 122
            SUBTITLE I.  HEALTH REPORTING REQUIREMENTS . . . . . . . . . . . . . . 123
            SUBTITLE J.  RESIDENTIAL PLACEMENT OF CHILDREN
                AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 126
            SUBTITLE K.  DEPARTMENT OF MENTAL HEALTH RETIREMENT
                INCENTIVE PROGRAM ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 126
            SUBTITLE L.  DEPARTMENT OF MENTAL HEALTH ACUTE CARE
                INITIATIVE ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128
            SUBTITLE M.  HIV/AIDS CRISIS AREA CAPACITY BUILDING FUND  . 129
            SUBTITLE N.  DESIGNATED APPROPRIATION ALLOCATIONS . . . . . . 130
            SUBTITLE O.  FUNDING SAFEGUARDS FOR THE CHILD AND FAMILY
                SERVICES AGENCY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137

TITLE VI.   PUBLIC WORKS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138
            SUBTITLE A. TRAFFIC AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 138
            SUBTITLE B. PARKING FINES INCREASE . . . . . . . . . . . . . . . . . . . . . . . 138
            SUBTITLE C. LOCAL ROADS CONSTRUCTION AND MAINTENANCE
                FUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 139
            SUBTITLE D.  INTERNATIONAL REGISTRATION PLAN FUND
                REVISION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 139
            SUBTITLE E.  DISTRICT DEPARTMENT OF TRANSPORTATION
                OPERATING FUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 140
TITLE VII.  EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 141

ENROLLED ORIGINAL

To amend the Fiscal Year 2005 Budget submission to allow the Mayor to submit to the Council a segmented budget; to amend Title 47 of the District of Columbia Code to establish performance measures by which agencies under performance based budgeting or funded by O-type funds shall be evaluated; to establish a criteria for contingency funds spending; to allocate additional revenue realized through a revised quarterly revenue estimate; to amend the District of Columbia Government Comprehensive Merit Personnel Act of 1978 to provide that no subordinate agency may negotiate a collective bargaining agreement; to allow the Mayor to issue a grant solely for the purpose of education and informing the general public on the District's lack of voting rights; to amend the District of Columbia Appropriations Act, 1955, to create a nonlapsing working fund for the receipt and expenditure of certain funds received by the Office of Property Management; to amend the Tobacco Settlement Trust Fund Establishment Act of 1999 to provide that the Board of Trustees' duty to meet begins once funds are deposited into the Fund; to amend the District of Columbia Procurement Practices Act of 1985 to authorize an operating fund to pay the costs of conducting District of Columbia surplus personal property sales and of operating and maintaining the Personal Property Division of the Office of Contracting and Procurement; to amend Title 47 of the District of Columbia Official Code to increase the standard deduction from $2000 to $2500; to amend Title 47 of the District of Columbia Official Code to increase the earned income tax credit to 34% of the federal credit and make it nonrefundable; to amend the Title 47 of the District of Columbia Code to allow the Mayor to assess a collection fee; to amend Title 47 of the District of Columbia Code to establish a dedicated fund to fund the Compliance Administration and the Real Property Tax Administration; to amend Title 47 of the District of Columbia Official Code to increase the homestead deduction from $38,000 to $60,000; to amend Title 47 of the District of Columbia Code to create a dedicated fund for the payment of unbudgeted commodity costs; to amend An Act To authorize the Commissioners of the District of Columbia to prescribe penalties for the handling and collection of dishonored checks to establish a fund for the collection of fees from dishonored checks; to amend Title 47 of the District of Columbia Official Code to amend section 47-363 of the District of Columbia Official Code to make an adjustment to the reprogramming threshold for capital projects; to amend Title 47 of the District of Columbia Official Code to provide a real property tax deferral for low-income District resident property owners and a real property tax deferral for low-income senior property owners; to amend Title 47 of the District of Columbia Official Code to exempt from taxation certain property of and provides equitable real property tax relief to The Catholic University of America for the Soldier's and Airmen's Home; to amend Title 47 of the District of Columbia Official Code to provide tax and fee waivers and exemptions for the Carver 2000 Low-Income and Senior Housing Project provides WIN/Enterprise Fort Dupont Nehemiah Homes Inc. with a deferral

from recordation and real property taxes for 2 years and an exemption from the same for up to 4 years based on sales to low-income homeowners; to amend Title 47 of the District of Columbia Official Code to exempt from taxation certain property of and provide equitable real property tax relief to the Way of the Cross Church of Christ for use of the property as the home for their pastor; to amend Title 47 of the District of Columbia Official Code to exempt from taxation certain property of and provide equitable real property tax relief to the Board of Trustees of the Endowment Fund of Appalachian State University; to amend Title 47 of the District of Columbia Official Code to exempt intra-family transfers of property between grandparents and grandchildren from the recordation and transfer tax; to amend Title 47 of the District of Columbia Official Code to exempt from taxation certain property of a subsidiary of the American Psychological Association; to amend Title 47 of the District of Columbia Official Code to retroactively exempt the collection and disposal of recyclables in the District of Columbia from sales tax and provide tax relief to Consolidated Waste Industries; to amend Title 47 of the District of Columbia Official Code to make technical corrections to the existing provider tax; to amend Washington Convention Center Authority Act of 1994 to establish Washington Convention Center Authority Marketing Fund; to amend Title 47 of the District of Columbia Official Code to limit real property tax increases to 10% of the prior year's tax for certain owner-occupied properties; to amend Title 47 of the District of Columbia Official Code to revise real property tax rates for Class 1 real property; to amend Title 47 of the District of Columbia Official Code to provide for a mechanism for recomputing real property tax rates for Class 1 real properties; to amend Title 47 of the District of Columbia Official Code to provide real property valuation rules for limited-equity cooperatives; to amend Title 47 of the District of Columbia Official Code to provide real property valuation rules for certain nonprofit housing organizations;  to amend Title 47 of the District of Columbia Official Code to adjust the prior year's taxable assessment for triennial groups 1 and 2 for purposes of the owner-occupant residential tax credit; to amend Title 47 of the District of Columbia Official Code to provide to disabled persons an income tax exclusion not to exceed $10,000 for income from any source; to amend Title 47 of the District of Columbia Official Code to provide a 50% reduction to disabled persons on their property tax liability; to create an administrative funding surtax for administering the unemployment compensation law; to create a year round employment program for out-of school District youth; to create a Transitional Employment and Pre-Apprenticeship Program for District residents; to establish the Great Streets Development Fund, and to require the Mayor to transmit legislation to implement the program; to amend the Housing Production Trust Fund of 1998 to allow the funds to be used for the New Communities Initiative upon approval of a plan by an act of the Council and in accordance with District of Columbia Municipal Rules and Regulations, and to permit the funds to secure the issuance of revenue bonds; to amend the Omnibus

Utility Amendment Act of 2004 to add a funding source for the Natural Gas Trust Fund; to authorize the appropriation of additional revenues if the Chief Financial Officer certifies that funds are available; to amend An Act Making appropriations to provide for the expenses of the government of the District of Columbia for the fiscal year ending June thirtieth, nineteen hundred and fourteen, and for other purposes to allow the Office of People's Counsel to obtain assessments of special franchise tax deposits in instances of cases involving bankruptcy of a company with whom a public utility has contracts and where the utility alleges that the bankruptcy may have adverse consequences on District of Columbia ratepayers; to amend the District of Columbia Housing Authority Act of 1999 to provide that local revenues of the District appropriated funds for the Housing Authority shall not be deposited in the dedicated fund of the Housing Authority and shall be expended and accounted for in the same manner as all other District agencies; to amend Title 28 of the District of Columbia Code to revitalize consumer protection in the District, including enforcement options through the Department of Consumer and Regulatory Affairs and before the Office of the Attorney General and the courts; to amend the Insurance Regulatory Trust Fund Act of 1993 and the Certified Capital Companies Act of 2003 to authorize the Department of Insurance, Securities, and Banking to deposit fees generated from the Certified Capital Companies Act of 2003 in the Insurance Regulatory Trust Fund; to establish an Office of the Tenant Advocate as an office within the Department of Consumer and Regulatory Affairs responsible for education and outreach to tenants and the community about laws, rules, and other policy matters involving rental housing; to improve contracting and procurement opportunities for local, small, and disadvantaged businesses based in the District of Columbia by elevating the Office of Local Business Development to the Department of Small and Local Business Development, a subordinate agency in the executive branch of government, and charging the Department with enhanced compliance monitoring, meaningful advocacy, outreach, and efficient certification of eligible business enterprises, to establish the District of Columbia Small and Local Business Opportunity Commission to certify business enterprises for participation in the contracting and procurement programs of the District government, and to repeal the remaining provisions of the Minority Contracting Act of 1976 and the Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998; to amend the Establishment of the Office of the Chief Medical Examiner Act of 2000 to establish the Office of the Chief Medical Examiner Management Fund as a nonlapsing fund and to require that all revenue collected and deposited into the fund be used for personnel and non-personnel expenditures of the Office of the Chief Medical Examiner; to amend the District of Columbia Government Comprehensive Merit Personnel Act of 1978 to require, starting in fiscal year 2006, Legal Service attorneys employed by subordinate agencies to be transferred to the employment and control of the Office of the Attorney General for the District of Columbia, with agencies retaining responsibility for the

compensation of these attorneys out of their own budgets during fiscal year 2006, to grant the Attorney General for the District of Columbia the authority to manage the Legal Service full-time equivalent budgets in the subordinate agencies, to conform Title VIII-B of the CMPA to Mayor's Order 2004-92, which renamed the Office of the Corporation Counsel as the Office of the Attorney General; to amend the Department of Mental Health Establishment Amendment Act of 2001 to make the General Counsel, or the equivalent, at the Department of Mental Health an employee of the Office of the Attorney General, under the full control of the Attorney General for the District of Columbia; to amend An Act Making appropriations to provide for the expenses of the government of the District of Columbia for the fiscal year ending June thirtieth, nineteen hundred and fourteen, and for other purposes to repeal obsolete references and to clarify that the People's Counsel is in the Senior Executive Attorney Service as mandated by the Legal Service Establishment Amendment Act of 1998; to amend the District of Columbia Government Comprehensive Merit Personnel Act of 1978 to classify the attorneys and the Executive Director of the Public Employee Relations Board in the Legal Service; to establish the Department of Corrections Reimbursement Fund as a nonlapsing fund to be used to support the activities prescribed by the Memorandum of Understanding between the Department of Corrections and the United States Marshals Service; to amend the Education Licensure Commission Act of 1976 to require that all revenues collected by the Education Licensure Commission be deposited in the Education Licensure Commission Site Evaluation Fund; to amend the State Education Office Establishment Act of 2000 to establish the Education Licensure Commission Site Evaluation Fund as a nonlapsing fund to be used to cover costs associated with the Education Licensure Commission's review of educational institutions for licensing purposes; to amend the Uniform Per Student Funding Formula for Public Schools and Public Charter Schools and Tax Conformity Clarification Amendment Act of 1998 to reflect inflationary adjustments and to repeal the 5% set-aside for District of Columbia Charter Schools; to amend the District of Columbia School Reform Act of 1995 to establish restrictions on reductions of school-based employees by the Board of Education; to establish the Fiscal Year 2006 Educational Investments Fund for District of Columbia Public Schools and Public Charter Schools into which shall be deposited $25.2 million to be used by District of Columbia public schools and public charter schools to conduct activities leading to increased student achievement and improved school performance, and to provide that no funds from the fund may be available for expenditure unless the Superintendent, the District of Columbia Public Charter School Board, and the District of Columbia Board of Education Charter School Board submit to the Mayor, no later than December 31, 2005, a plan for the use of the funds; to establish a revolving, nonlapsing dedicated fund, within which shall be 2 dedicated accounts, within the General Fund of the District of Columbia to be used to pay the debt service on revenue bonds issued to finance the repair and renovation of District schools and to

make bond revenue available to the District of Columbia Public Schools for that purpose, and to establish criteria for the use of the bond revenue to make repairs and renovations to schools; to request that the Board of Education and Superintendent establish policies to ensure that 3rd grade students are able to read independently and understand the fundamentals of mathematics upon being promoted to the 4th grade, and that 8th grade students are able to read at or above grade level and are exposed to pre-algebra concepts in preparation for high school; to amend section 5(j) of the Health-Care and Community Residence Facility, Hospice and Home Care Licensure Act of 1983 to permit the Mayor to establish and modify license fees for health-care facilities and agencies without prior Council approval and to amend section 47-2842 of the District of Columbia Official Code to remove the prohibition against license fees for child development homes; to amend the Clinical Laboratory Act of 1988 to include a physician office or other health care facility laboratory within the definition of clinical laboratory, define tests, to allow laboratories to operate without a license for one year from the date rules are issued, to clarify activities that shall be licensed, to provide that licenses shall be renewed every 2 years and to establish personnel requirements; to amend the District of Columbia Health Occupations Revision Act of 1985 to permit a designee to serve on the Board of Medicine for the Director, Department of Health; to amend the District of Columbia Public Assistance Act of 1982 to provide for a $150-per-month child support pass-through and disregard for families in the Temporary Assistance to Needy Families program; to amend the Choice in Drug Treatment Act of 2000 to improve access to substance abuse rehabilitation; to amend the Department of Health Functions Clarification Act of 2001 to require that fee and fines relating to health be deposited in the Regulatory Enforcement Fund or the Health Occupations Regulations Fund; to require that the Maternal and Family Health Administration provide to the Council a plan for supplying Medicaid eligible service to children enrolled in public and charter schools; to amend title I of the AccessRx Act of 2004 to establish a Pharmaceutical Resource Center; to require that the Environmental Health Administration provide a report on the status a $250,000 allocation; to require that the Health Care Regulation and Licensing Administration provide a report on the number of District residents in long-term care facilities located outside of the District of Columbia; to require the Policy, Planning and Research Administration to provide a report on the status of the proposed updated District State Health Plan; to require the Medical Assistance Administration to report on its effort to use State Childrens Health Insurance Program funds to expand eligibility for health services provided by DC Healthy Families; to require the Department of Health to provide a report on its effort to enter into an agreement with the Office of Administrative Hearings; to require the Department of Health and the Department of Mental Health to offer training; to require the Department of Health to provide a report on its effort to ensure that its private community services providers are billing appropriate costs to Medicaid providers; to

require the Agency Management Program in the Department of Health to provide a report on all leases or tenancies for properties occupied by the Department Health; to require the Department of Mental Health, the Children and Family Services Administration, and the Department of Youth Rehabilitation Services to enter into an agreement for the Department of Mental Health to contract and authorize placement for children and youth requiring residential treatment center placement; to authorize the Department of Mental Health to participate in a retirement incentive program if one is offered; to amend section 115 of the Mental Health Establishment Amendment Act of 2001 to authorize the Department of Mental Health to seek amendment approval from the federal government and from the Council to provide for a per diem reimbursement for inpatient psychiatric treatment in certain cases; to establish a HIV/AIDs Crisis Area Capacity Building Fund to provide loans and grants to expand support to persons with HIV/AIDS in certain wards; to authorize the City Administrator to provide a grant, if available, of up to $1.8 million to the District of Columbia Primary Care Association; to require a $75,000 distribution to Howard University Hospital to support diabetes programs; to require a $250,000 distribution to Howard University Hospital to supplement its prostate cancer screening program; to require a $250,000 distribution to Greater Southeast Community Hospital to supplement a cancer screening program; to require a $400,000 distribution to the American Lung Association of DC for tobacco cessation initiatives; to require a $500,000 distribution to the Children's National Medical Center to meet Department of Health specified needs; to require a $600,000 distribution to the District of Columbia Area Health Education Center for primary care and prevention for professional training programs and supplemental services and to facilitate access to matching federal funds; to require a $100,000 distribution to the Washington Regional Transplant Consortium to assist with an organ transplant database; to require a $500,000 distribution to Food & Friends for supplemental services; to require that no less than $250,000 be made available for burial assistance; to require that $1 million be made available to the Addiction Prevention and Recovery Administration Choice in Drug Treatment Program to coordinate comprehensive treatment for and support of substance abusers with HIV/AIDS; to require that $323,000 of funds appropriated in fiscal year 2006 for the HIV/AIDS Administration be made available for inmates of Oak Hill Juvenile Detention Center and the D.C. Jail for the purpose of counseling, testing, and referral services; to require that $150,000 be provided to Transgender Health Empowerment, Inc., for HIV/AIDS support services and prevention education; to require that $50,000 be provided to Greater DC Cares to assist with creation of a volunteer emergency responder data base and $150,000 be provided to the District of Columbia Hospital Association for the Terrorism Response Planning; to make $5 million available for the Department of Health to contract with the School of Public Health at George Washington University; to allocate $2 million for contractual services in the Office of Program Integrity to perform audits of Medicaid programs; to

ENROLLED ORIGINAL

require that no less than $1.5 million be expended by the Office of Managed Care in the Medical Assistance Administration in the Department of Health to increase reimbursement rates and access to dental services; to require that no less that $1,505,250 be expended for services to the elderly and physically disabled from funds appropriated in fiscal year 2006 for the Office of Disabilities and Aging in the Medicaid Assistance Administration in the Department of Health; to require that $500,000 from funds for Office of Program Operations in the Medicaid Assistance Administration in the Department of Health be allocated to the Health Care Ombudsman Program; to require that $2 million in Department of Health funds be used exclusively for the purpose of funding the Nursing Facility Quality of Care Fund; to require that $1 million from Department of Health appropriated funds be granted to Southeastern University to develop training programs for allied health services; to require that $900,000 be made available to the Addiction Prevention and Recovery Administration Choice in Drug Treatment Program to coordinate comprehensive treatment for and support of substance abusers with mental illness; to require that $3.6 million of Department of Mental Health funds be allocated to school-based mental health services; to require that $1.5 million of Department of Mental Health Direct Community Services funds be allocated to expand jail diversion programs and to provide mental health services at the D.C. Jail; to require that $1 million of Department of Mental Health Direct Community Services funds be allocated to enhance the Department of Mental Health's housing program; to require that $250,000 of Department of Mental Health Direct Community Services funds be allocated for a contract with the District of Columbia Birth Center, Inc., to support critical community work; to require that $150,000 of Addiction Prevention and Recovery Administration funds be granted to the Wards on a priority need basis to be used for substance abuse prevention and outreach; to require that $100,000 of Department of Mental Health funds be allocated to mental health services at the Addiction Prevention and Recovery Administration Detoxification Facility; to require that designated appropriation allocation in subtitle N of Title V of this act be consistent with the requirements of the District of Columbia Procurement Practices Act of 1985 to chapter 5000 of Title 1 of the District of Columbia Municipal Code or the terms and conditions of the federal funding source; to provide that a request for additional funding in Fiscal Year 2006 for the Child and Family Services Agency to hire necessary personnel transmitted by the Mayor to the Council shall identify the source of the funding and include a certification from the Chief Financial Officer that the funds are available and needed, and to clarify that the additional funding would be in addition to $1 million of contingency funds potentially available to the agency for the hiring of personnel; to provide that $3.3. million allocated to the Department of Mental Health for the provision of mental health services to foster-care children shall be transferred to the Child and Family Services Agency if the Department of Mental Health is unable build the capacity to provide those services by October 1, 2005; to provide one-time

ENROLLED ORIGINAL

nonrecurring funds to the Department of Health from the budgets of agencies under the purview of the Committee on Finance and Revenue; to amend the District of Columbia Traffic Amendment Act of 1990 to permit the increase of the fine for immobilized vehicles; to amend the Title 18 of the District of Columbia Municipal Regulations to increase various parking fines; to amend the Highway Trust Fund Establishment Act of 1996 to include 50% of sales and use taxes collected by the District for parking and storing vehicles to the source of funds for the Local Roads Construction and Maintenance Fund; to amend the International Registration Plan Agreement Act of 1997 to provide that a certain portion of International Registration Plan fees may be used by the Department of Motor Vehicles for operating costs; and to amend the Department of Transportation Establishment Act of 2002 to establish the District Department of Transportation Operating Fund.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this act may be cited as the "Fiscal Year 2006 Budget Support Act of 2005".

TITLE I. GOVERNMENT DIRECTION AND SUPPORT
SUBTITLE A. FISCAL YEAR 2006 BUDGET SUBMISSION AMENDMENT
Sec. 1001. Short title.
This subtitle may be cited as the "Fiscal Year 2006 Budget Submission Amendment Act of 2005".

Sec. 1002. The Fiscal Year 2006 Budget Submission Act of 2004, effective December 7, 2004 (D.C. Law 15-205; 51 DCR 8441), is amended as follows:
(a) Subsection (a) is amended to read as follows:
"(a) Beginning with the submission of the fiscal year 2006 budget, the Mayor shall submit a budget to the Council that is segmented and distinctly identifies:
"(1) That portion of the budget submission in which local funds are consistent with the amount projected in spending for the previous fiscal year by the Council in its Committee of the Whole Report on the Budget Request Act; provided, that the amounts included in the Committee of the Whole Report are to be revised to incorporate supplemental budget actions approved by the District during the course of any fiscal year; provided further, that the revised projections are certified by the Office of the Chief Financial Officer; and
"(2) Any additional proposed budget expenditures not included in paragraph (1) of this subsection that are supported by the revenue and resources certified as available by the Office of the Chief Financial Officer,".
(b) New subsections (e) and (f) are added to read as follows:
"(e) Beginning with the submission of the fiscal year 2007 budget, the Mayor shall include a Children's Budget report that:

ENROLLED ORIGINAL

Sec. 2213. Fiscal impact statement.
The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

SUBTITLE N. SMALL, LOCAL, AND DISADVANTAGED BUSINESS ENTERPRISE DEVELOPMENT AND ASSISTANCE

TABLE OF CONTENTS

Part A. Short Title and Definitions.

Sec. 2301. Short title.
Sec. 2302. Definitions.

Part B. Department of Small and Local Business Development.

Sec. 2311. Establishment of the Department of Small and Local Business Development.
Sec. 2312. Director of the Department of Small and Local Business Development.
Sec. 2313. Organization and functions of the Department.
Sec. 2314. Reorganization of the Department.

Part C. Small and Local Business Opportunity Commission.

Sec. 2321. Small and Local Business Opportunity Commission Establishment; composition; appointment; term of office; qualifications; vacancies; removal; compensation.
Sec. 2322. Functions of the Commission.
Sec. 2323. Additional functions of the Commission.
Sec. 2324. Record keeping.
Sec. 2325. By-laws and internal rules.

Part D. Programs for Certified Business Enterprises.

Subpart 1. Certified Business Enterprises.

Sec. 2331. Local business enterprises.
Sec. 2332. Small business enterprises.
Sec. 2333. Disadvantaged business enterprises.
Sec. 2334. Qualified metropolitan area business enterprises.

**ENROLLED ORIGINAL**

*Codification
District of
Columbia
Official Code*

2001 Edition

2005 Fall
Supp.

West Group
Publisher

Sec. 2335.  Resident-owned businesses.
Sec. 2336.  Longtime resident businesses.
Sec. 2337.  Local business enterprises with principal offices located in an enterprise zone.

Subpart 2.  Requirements for Programs.

Sec. 2341. Goals for District agencies with respect to contracting and procurement with
small                business enterprises.
Sec. 2342.  Required programs, procedures, and policies to achieve contracting and
procurement goals.
Sec. 2344.  Mandatory set-asides of small contracts for small business enterprises.
Sec. 2345.  Mandatory set-asides of contracts in the District of Columbia Supply Schedule
for small business enterprises.
Sec. 2346.  Performance and subcontracting requirements for construction contracts;
subcontracting plans.
Sec. 2347.  Unbundling requirement.
Sec. 2348.  Penalties.
Sec. 2349.  Other procedures and programs.
Sec. 2350.  Special requirements for government corporations.
Sec. 2351.  Waiver of subcontracting requirement.
Sec. 2352.  Enforcement mechanism against an agency.
Sec. 2353.  Agency reporting requirements.
Sec. 2354.  Department reporting requirements.
Sec. 2355.  Regional governmental entities.

Subpart 3.  Certification.

Sec. 2361.  Certificate of registration.
Sec. 2362.  Provisional certification; self-certification prohibited.
Sec. 2363.  Revocation of registration; challenges to registration; penalties.

Subpart 4.  Triennial Review and Rulemaking.

Sec. 2371.  Triennial review of program and subtitle.
Sec. 2372.  Rulemaking authority.

ENROLLED ORIGINAL

Part E. Conforming Amendments.

Sec. 2381. Amendments.
Sec. 2382. Repealers.

Part F. Fiscal Impact.

Sec. 2391. Fiscal impact statement.

Part A. Short Title and Definitions.

Sec. 2301. Short title.
This subtitle may be cited to as the "Small, Local, and Disadvantaged Business Enterprise Development and Assistance Act of 2005".

Sec. 2302. Definitions.
For the purposes of this subtitle, the term:
(1) "Agency" means an agency, department, office, board, commission, or instrumentality of the District of Columbia government.
(2) "Commission" means the District of Columbia Small and Local Business Opportunity Commission, established by section 2321.
(3) "Department" means the Department of Small and Local Business Development, established by section 2311.
(4) "Director" means the Director of the Department of Small and Local Business Development.
(5) "Disadvantaged business enterprise" means a business enterprise as described in section 2333.
(6) "District of Columbia Supply Schedule" or "DCSS" means the District of Columbia's multiple award schedule procurement program for providing commercial products or services to District government agencies.
(7) "Economically disadvantaged individual" means an individual whose ability to compete in the free enterprise system is impaired because of diminished opportunities to obtain capital and credit as compared to others in the same line of business where such impairment is related to the individual's status as socially disadvantaged. An individual is socially disadvantaged if the individual has reason to believe that the individual has been subjected to prejudice or bias because of his or her identity as a member of a group without regard to his or her qualities as an individual.
(8) "Enterprise zone" means:
(A) The area of the District designated as the District of Columbia

ENROLLED ORIGINAL

Enterprise Zone under section 1400 of the Internal Revenue Code of 1986, approved August 5, 1997 (111 Stat. 863; 26 U.S.C. § 1400); or

(B) An economic development zone designated by the Mayor and approved by the Council pursuant to sections 2 through 5 of the Economic Development Zone Incentives Amendment Act of 1988, effective October 20, 1988 (D.C. Law 7-177; D.C. Official Code § 6-1501 et seq.).

(9) "Expendable budget" means the total budget of an agency, reduced by such funding sources, object classes, objects, and other items as shall be identified by the Mayor through rulemaking.

(10) "Government corporation" means an entity established as a corporate body or independent authority or instrumentality of the District government created to effectuate certain public purposes, with or without a legal existence separate from that of the District government.

(11) "Joint venture" means a combination of property, capital, efforts, skills, or knowledge of 2 or more persons or businesses to carry out a single project.

(12) "Local business enterprise" means a business enterprise as described in section 2331.

(13) "Longtime resident business" means a business which has been continuously eligible for certification as a local business enterprise, as defined in section 2331, for 20 consecutive years.

(14) "Regional governmental entity" means an organization that represents the District and surrounding local or state governments.

(15) "Resident-owned business" means a local business enterprise owned by an individual who is, or a majority number of individuals who are, subject to personal income tax in the District of Columbia.

(16) "Small business enterprise" means a business enterprise as described in section 2332.

Part B. Department of Small and Local Business Development.

Sec. 2311. Establishment of the Department of Small and Local Business Development.

(a) Pursuant to section 404(b) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 787; D.C. Official Code § 1-204.04(b)), there is established, as a subordinate agency, in the Executive Branch of the government of the District of Columbia, the Department of Small and Local Business Development.

Sec. 2312. Director of the Department of Small and Local Business Development.

(a)(1) The Department shall be under the supervision of a Director who shall carry out the functions and authorities assigned to the Department.

(2) The Mayor shall appoint the Director with the advice and consent of the Council.

(b) The Director shall have full authority over the Department and all functions and personnel assigned to the Department, including the power to re-delegate to other employees and

officials of the Department such powers and authority as in the judgment of the Director are warranted in the interests of efficiency and sound administration.

(c) The Director shall monitor the accomplishment of the requirements of this subtitle in contracting and procurement performed by any government corporation involved in the development of a commercial ballpark or soccer stadium and in all projects exceeding $10 million in value.

(d) The Director shall have authority to make a recommendation to the Chief Procurement Officer of the Office of Contracting and Procurement or a government corporation to reject proposed award of contract awards and procurements that the Director finds fail to comply with agency or project requirements for local, small, and disadvantaged business enterprise contracting and procurement.

(e) The Director shall have authority to make a recommendation to the Chief Procurement Officer of the Office of Contracting and Procurement or a government corporation to require the payment of fines pursuant to section 2348 by prime contractors who fail to comply with the requirements of this subtitle.

(f) The Director shall have the authority to make a recommendation to the Chief Procurement Officer of the Office of Contracting and Procurement or a government corporation to withhold payment on contracts shown to be substantially noncompliant as to their approved local, small, and disadvantaged business enterprise subcontracting plans, if a subcontracting plan is required pursuant to section 2346.

Sec. 2313. Organization and functions of the Department.

(a) It shall be the goal and responsibility of the Department to stimulate and foster greater opportunities for local, small, and disadvantaged business enterprises to participate in the District's contracting and procurement process.

(b) The Department shall administer part D of this subtitle except for those responsibilities assigned to another agency by this subtitle or through an order of the Mayor. The Director shall establish procedures and guidelines for the implementation of the programs established pursuant to part D of this subtitle. The Mayor shall not reassign a responsibility specifically assigned to the Department by this subtitle.

(c) The Department shall include, and the Director shall establish, oversee, and administer, the following divisions which shall have the stated responsibilities:

(1) The Office of Certification, Compliance, and Enforcement, which shall be responsible for:

(A) Reviewing applications for certification as a local, small, or disadvantaged business enterprise, or as a resident-owned or resident business or as a local business enterprise with its principal office located in an enterprise zone;

(B) Providing information and assistance to business enterprises regarding the certification and application process;

(C) Recommending to the Commission whether an application for certification should be approved or denied;

**ENROLLED ORIGINAL**

      (D)  Providing information and assistance to the Commission in the Commission's review of applications for certification;

      (E)  Monitoring agency contracting and procurement activities to the extent those activities are related to the achievement of the goals set forth in section 2341;

      (F)  Monitoring third-party contracting and procurement activities to the extent those activities are related to the achievement of goals related to contracting with, and procuring from, local, small, and disadvantaged business enterprises;

      (G)  Preparing the quarterly and annual reports of the Department required by section 2353;

      (H)  Reviewing the quarterly and annual reports of agencies required by section 2352; and

      (I)  Reviewing any reports as may be required of third parties;

    (2)  The Office of Contracting Opportunities, which shall be responsible for:

      (A)  Maintaining, growing, and advocating on behalf of local, small, and disadvantaged business enterprises in the following areas;

        (i)  Local, small, and disadvantaged business enterprises with less than $10 million in annual revenue;

        (ii)  Under separate criteria, local, small, and disadvantaged business enterprises with over $10 million in annual revenue; and

        (iii)  All local, small, and disadvantaged business enterprises that desire to participate in contracting opportunities with any government corporation;

      (B)  Maintaining and providing public access to a list of all current District government contracting and procurement bids and solicitations;

      (C)  Maintaining and providing public access to a list of other current government contracting and procurement bids and solicitations, including those of the federal government and nearby local jurisdictions;

      (D)  Monitoring agency contracting and procurement activities to the extent those activities are related to the achievement of the goals set forth in section 2341;

      (E)  Monitoring third-party contracting and procurement activities to the extent those activities are related to the achievement of goals related to contracting with, and procuring from, local, small, and disadvantaged business enterprises;

      (F)  Monitoring and preparing recommendations to ensure agency achievement of the goals set forth in section 2341;

      (G)  Monitoring agency implementation of the programs required by part D of this subtitle;

      (H)  Maintaining a list of current private contracting and procurement bids and solicitations;

      (I)  Organizing and publicizing local, small, and disadvantaged business enterprise opportunities and events where contracting, procurement, or networking opportunities will be available;

(J)  Organizing or attending meetings with business groups and other organizations to provide information on the District's local, small, and disadvantaged business enterprise programs, the certification process, and the services and activities of the Department;

(K)  Making known to the public and the business community information on the District's local, small, and disadvantaged business enterprise programs and the certification process; and

(L)  Making known to the public and the business community information on the services and activities of the Department; and

(3)  The Office of Training and Education, which shall be responsible for the following:

(A)  Coordinating the District's offerings, curricula, and locations of educational and training classes, sessions, and seminars to assist small businesses in the following areas:

(i)  Basic and intermediate business skills, such as bookkeeping, accounting, and marketing;

(ii)  Locating and obtaining contracting and procurement opportunities; and

(iii)  Locating and obtaining financing and capital;

(B)  Maintaining a current list of educational and training classes, sessions, and seminars in the Washington Metropolitan Region in the subject areas set forth in subparagraph (A) of this paragraph offered by persons or organizations outside the District government;

(C)  To the extent feasible, coordinating the offerings, curricula, and locations of educational and training classes, sessions, and seminars in the Washington Metropolitan Region in the subject areas set forth in subparagraph (A) of this paragraph offered by persons or organizations outside the District government;

(D)  To the extent necessary, providing educational and training classes, sessions, and seminars in the subject areas set forth in subparagraph (A) of this paragraph which are not otherwise conveniently or comprehensively provided by the District government or persons or organizations outside the District government; and

(E)  Training agency contracting officers on the requirements and procedures of this subtitle.

(d)  The Director may establish such other offices and the Department may take such other actions as are necessary or appropriate to carry out the provisions of this subtitle.

Part C. District of Columbia Small and Local Business
Opportunity Commission.

Sec. 2321.  District of Columbia Small and Local Business Opportunity Commission Establishment; composition; appointment; term of office; qualifications; vacancies; removal; compensation.

(a)  Pursuant to section 404(b) of the District of Columbia Home Rule Act, approved

ENROLLED ORIGINAL

December 24, 1973 (87 Stat. 787; D.C. Official Code § 1-204.04(b)), there is established the District of Columbia Small and Local Business Opportunity Commission. The Commission is the successor in interest to the Local Business Opportunity Commission, established by section 4(a) of the Minority Contracting Act of 1976, effective March 29, 1977 ( D.C. Law 1-95; D.C. Official Code § 2-215.03(a)).

(b)(1) The Commission shall consist of 9 members. The Mayor shall appoint one member from each ward of the District and one at-large member to staggered, 2-year terms with the advice and consent of the Council, in accordance with section 2 of the Confirmation Act of 1978, effective March 3, 1979 (D.C. Law 2-142; D.C. Official Code § 1-523.01).

(2) All members of the Commission shall be residents of the District of Columbia.

(3) Commissioners shall be eligible for reappointment.

(4) All commissioners shall have knowledge of the small, local, or disadvantaged business community as it relates to employment and economic development.

(5) Notwithstanding the provisions of this section, current members of the Local Business Opportunity Commission, as established by section 4(a) of the Minority Contracting Act of 1976, effective March 29, 1977 ( D.C. Law 1-95; D.C. Official Code § 2-215.03(a)), shall be considered qualified and may continue to serve as members of the Commission until new members are appointed.

(c)(1) The Mayor shall appoint the chairperson of the Commission from among its members with the advice and consent of the Council. The nomination of the chairperson shall be submitted to the Council for a 45-day period of review, excluding Saturdays, Sundays, legal holidays, and days of Council recess. If the Council does not approve or disapprove the nomination within the 45-day period of review, the nomination shall be deemed approved.

(2) The chairperson shall serve as the chairperson at the pleasure of the Mayor.

(d) Any person appointed to fill a vacancy on the Commission shall be appointed only for the unexpired term of the member whose vacancy is being filled.

(e) The Mayor may remove any member of the Commission for misconduct, incapacity, or neglect of duty in accordance with procedures that the Mayor shall establish and that shall include procedures for notification and an opportunity for hearing.

(f)(1) The Commission shall meet at least once each month for the purpose of transacting any business as may properly come before it.

(2) The Commission shall meet with the Chairman of the Council Committee on Economic Development at least once per year.

(3) Special meetings may be held at such times as the chairperson may provide. Notice of each meeting and the time and place thereof shall be given to each member in such manner as the Commission may provide.

(4) The Commission may permit members to participate in meetings for the certification of joint ventures by means of a conference telephone, interactive conference video, or other similar communications equipment when it is otherwise difficult or infeasible for the members to attend the meeting in person; provided, that each member participating by such device

can be identified when speaking, all participants are able to hear each other at the same time, and members of the public attending the meeting are able to hear any member of the Commission who speaks during the meeting.

(g)  A majority of the members appointed to the Commission at any given time shall constitute a quorum for the transaction of official business. Official actions of the Commission shall be based on a majority vote of the members participating at the meeting.

(h)  A Commission member who has a direct financial or personal interest in any measure pending before the Commission shall disclose this fact to the Commission and shall not vote upon such measure.

(i)  Members of the Commission shall serve without compensation for their service on the Commission.

Sec. 2322. Functions of the Commission.

The Commission shall:

(1)  Determine a business enterprise's or joint venture's eligibility for certification under part D and review and determine the continued eligibility of business enterprises and joint ventures certified by the Commission;

(2)  Determine the percentage of the dollar amount of a joint venture which may be attributed toward an agency's percentage goal; and

(3)  Repeal and suspend the certification of a business enterprise pursuant to section 2363.

Sec. 2323. Additional functions of the Commission.

The Commission shall:

(1)  Educate the public, including District residents and businesses, about the District's programs for local, small, and disadvantaged business enterprises;

(2)  Stimulate and foster greater opportunities for local, small, and disadvantaged business enterprises to participate in the District's contracting and procurement process and provide recommendations to the Council and the Mayor on ways to increase the participation;

(3)  Maintain contacts with the business community, including financial institutions and bonding companies, and elicit cooperation for economic opportunities for local, small, and disadvantaged business enterprises;

(4)  Make recommendations related to agency and third-party contracting and procurement activities to increase participation by local, small, and disadvantaged business enterprises;

(5)  Review the annual reports of agencies and make appropriate recommendations as set forth in section 2352;

(6)  Review the triennial reports required by section 2371 and the goals, intents, and purposes of this subtitle, and make appropriate recommendations as set forth in section 2371; and

(7)  Take such other actions as are necessary or appropriate to carry out

the responsibilities of the Commission under this subtitle.

Sec. 2324. Record keeping.
(a)  A record of the proceedings of the Commission shall be kept and files shall be maintained.
(b)  The Commission shall maintain a register of all applicants for registration showing for each applicant the date of the application, name, qualifications, place of business, place of applicant's residence, and whether the certificate was granted or denied.
(c)  The books and register of the Commission shall be prima facie evidence of all matters recorded therein.

Sec. 2325. By-laws and internal rules.
The Commission may promulgate, amend, repeal, and enforce any by-laws and internal rules of operation, consistent with the provisions of this subtitle, as may be necessary or appropriate to carry out its responsibilities under this subtitle.

Part D. Programs for Certified Business Enterprises.
Subpart 1. Certified business enterprises.
Sec. 2331. Local business enterprises.
A business enterprise shall be eligible for certification as a local business enterprise if the business enterprise:
(1)  Has its principal office located physically in the District of Columbia;
(2) Requires that its chief executive officer and the highest level managerial employees of the business enterprise maintain their offices and perform their managerial functions in the District; and
(3)(A)  Is licensed pursuant to Chapter 28 of Title 47 of the District of Columbia Official Code;
(B)  Is subject to the tax levied under Chapter 18 of Title 47 of the District of Columbia Official Code; or
(C)  Is a business enterprise identified in § 47-1808.01 (1) through(5) of the District of Columbia Official Code and more than 50% of the business is owned by residents of the District.

Sec. 2332. Small business enterprises.
(a)  A business enterprise shall be eligible for certification as a small business enterprise if the business enterprise:
(1)(A)  Is a local business enterprise; or
(B)  Is a qualified metropolitan area business enterprise;
(2)  Is independently owned, operated, and controlled; and
(3)(A)  Is certified by the United States Small Business Administration as a small

**ENROLLED ORIGINAL**

business concern under the Small Business Act, approved July 18, 1958 (72 Stat. 863; 15 U.S.C. § 631 *et seq.*); or

(B)  Has had average annualized gross receipts for the 3 years preceding certification not exceeding the following limits:

| | |
|---|---|
| Construction, Heavy (Street and Highways, Bridges, etc.) | $23 million |
| Construction, Building (General Construction, etc.) | $21 million |
| Construction, Specialty Trades | $13 million |
| Goods and Equipment | $20 million |
| General Services | $19 million |
| Professional Services, Personal Services (Hotel, Beauty, Laundry, etc.) | $5 million |
| Professional Services, Business Services | $10 million |
| Professional Services, Health and Legal Services | $10 million |
| Professional Services, Health Facilities Management | $19 million |
| Manufacturing Services | $10 million |
| Transportation and Hauling Services | $13 million |
| Financial Institutions | $300 million. |

(b)  A business enterprise that is affiliated with another business enterprise through common ownership, management, or control shall be eligible for certification as a small business enterprise if:

(1)  The business enterprise seeking certification as a small business enterprise is a local business enterprise or a qualified metropolitan area business enterprise;

(2)  The consolidated financial statements of the affiliated business enterprises do not exceed the average annualized gross receipt limits established by subsection (a)(3)(B) of this section; and

(3)  In the event of a parent-subsidiary affiliation, the parent company qualifies for certification as a small business enterprise.

(c)  If a business enterprise seeking certification as a small business enterprise is affiliated only with one or more business enterprises that are in a different line of business, subsection (b) of this section shall not apply, and the business enterprise shall be eligible for certification as a small business enterprise if it meets the requirements of subsection (a) of this section.

Sec. 2333.  Disadvantaged business enterprises.

(a)  A business enterprise shall be eligible for certification as a disadvantaged business enterprise if the business enterprise is:

(1)  Owned, operated, and controlled by economically disadvantaged individuals; and

(2)(A)  Is a local business enterprise; or

(B)  Is a qualified metropolitan area business enterprise.

(b)  A business enterprise that is affiliated with another business enterprise through common ownership, management, or control shall be eligible for certification as a disadvantaged business

enterprise if:

(1) The business enterprise seeking certification as a disadvantaged business enterprise is a local business enterprise or a qualified metropolitan area business enterprise; and

(2) In the event of a parent-subsidiary affiliation, both enterprises meet the requirements of subsection (a) of this section.

Sec. 2334. Qualified metropolitan area business enterprises.

A business enterprise shall be eligible for certification as a qualified metropolitan area business enterprise if the business enterprise is independently owned, operated, and controlled and:

(1) Has its principal office located in the Washington-Arlington-Alexandria, DC-MD-VA-WV Metropolitan Division, as defined by the Office of Management and Budget Bulletin No. 05-02; and

(2) Meets 3 of the 4 following standards:

(A) More than 50% of the assets of the business enterprise, excluding bank accounts, are located in the District;

(B) More than 50% of the employees of the business enterprise are residents of the District;

(C) The owners of more than 50% of the business enterprise are residents of the District; or

(D) More than 50% of the total sales or other revenues are derived from transactions of the business enterprise in the District.

Sec. 2335. Resident-owned businesses.

A business enterprise shall be eligible for certification as a resident-owned business if it meets the definition of resident-owned business pursuant to section 2302.

Sec. 2336. Longtime resident businesses.

A business enterprise shall be eligible for certification as a longtime resident business if it meets the definition of longtime resident business pursuant to section 2302.

Sec. 2337. Local business enterprises with principal offices located in an enterprise zone.

A local business enterprise shall be eligible for certification as a local business enterprise with principal offices located in an enterprise zone if its principal offices are located in an enterprise zone as defined by section 2302.

Subpart 2. Requirements of programs.

ENROLLED ORIGINAL

Sec. 2341. Goals for District agencies with respect to contracting and procurement with small business enterprises.

(a) Each agency, including an agency that contracts or procures in whole or in part through the Office of Contracting and Procurement, shall exercise its contracting and procurement authority so as to meet, on an annual basis, the goal of procuring and contracting 50% of the dollar volume of its goods and services, including construction goods and services, to small business enterprises.

(b) The dollar volume referenced in subsection (a) of this section shall be based on the expendable budget of the agency.

Sec. 2342. Required programs, procedures, and policies to achieve contracting and procurement goals.

To achieve the goals set forth in this subtitle, the Department shall establish by rules issued pursuant to section 2372, programs for local, small, and disadvantaged business enterprises, resident-owned businesses, resident businesses, and local business enterprises with principal offices located in an enterprise zone. The Department shall include among these programs:

(1) A bid preference mechanism for local and disadvantaged business enterprises, resident-owned businesses, resident businesses, and local business enterprises with principal offices located in an enterprise zone;

(2) A set-aside program for small business enterprises; and

(3) A set-aside program for local, small, and disadvantaged business enterprises for the District of Columbia Supply Schedule.

Sec. 2343. Bid and proposal preferences.

(a) In evaluating bids or proposals, agencies shall award preferences as follows:

(1) In the case of proposals, points shall be granted as follows:

(A) Three points for a small business enterprise;

(B) Three points for resident-owned business;

(C) Ten points for a longtime resident business;

(D) Two points for a local business enterprise;

(E) Two points for a local business enterprise with its principal office located in an enterprise zone; and

(F) Two points for a disadvantaged business enterprise.

(2) In the case of bids, a percentage reduction in price shall be granted as follows:

(A) Three percent for a small business enterprise;

(B) Three percent for resident-owned business;

(C) Ten percent for a longtime resident business;

(D) Two percent for a local business enterprise;

(E) Two percent for a local business enterprise with its principal office located in an enterprise zone; and

(F) Two percent for a disadvantaged business enterprise.

(b)  A certified business enterprise shall be entitled to any or all of the preferences provided in this section, but in no case shall a certified business enterprise be entitled to a preference of more than 12 points or a reduction in price of more than 12 percent.

Sec. 2344.  Mandatory set-asides of small contracts for small business enterprises.

(a)  Except as provided in section 2345, each agency shall set aside every contract or procurement of $100,000 or less for small business enterprises; provided, that the agency shall not be required to set aside a contract or procurement if the agency determines in writing that there are not at least 2 responsible certified small business enterprises that can provide the services or goods which are the subject of the contract.

(b)  An agency may refuse to award a contract or procurement set aside under this section, and may thereafter issue the contract or procurement in the open market if the agency determines in writing that the bids for the contract or procurement set aside for a small business enterprise are believed to be 12% or more above the likely price on the open market.

Sec. 2345.  Mandatory set-asides of contracts in the District of Columbia Supply Schedule for small business enterprises.

Each agency shall set aside every contract of $100,000 or less for the District of Columbia Supply Schedule for small business enterprises; provided, that the agency shall not be required to set aside a contract if the agency determines in writing that there are not at least 2 responsible certified small business enterprises on the DCSS that can provide the services or goods which are the subject of the contract.

Sec. 2346.  Performance and subcontracting requirements for construction contracts; subcontracting plans.

(a)  All construction contracts  shall include a requirement that at least 35% of the dollar value, excluding the cost of materials, goods, and supplies, be subcontracted to small business enterprises, except that if there are insufficient qualified small business enterprises to fulfill this requirement, then 35% of the dollar value, excluding the cost of materials, goods, and supplies, shall be subcontracted to local, small, or disadvantaged business enterprises.

(b)(1)(A)  Each construction contract for which a local, small, or disadvantaged business enterprise is selected as a prime contractor and is granted points or a price reduction pursuant to section 2343 or is selected through a set-aside program under this subpart shall include a requirement that the business enterprise perform at least  35% of the contracting effort, excluding the cost of materials, goods, and supplies, with its own organization and resources and, if it subcontracts, 35% of the subcontracted effort, excluding the cost of materials, goods, and supplies, shall be with local, small, or disadvantaged business enterprises.

(B)  If the total of the contracting effort, excluding the cost of materials, good, and supplies, proposed to be performed by local, small, or disadvantaged business enterprises is less

than the amount required by subparagraph (A) of this paragraph, then the business enterprise shall not be eligible to receive preference points or price reductions for a period of not less than 2 years.

(2)(A) Each construction contract for which a joint venture is selected as a prime contractor and is granted points or a price reduction pursuant to section 2343 or is selected through a set-aside program under this subpart shall include a requirement that the local, small, or disadvantaged business enterprise perform at least 50% of the contracting effort, excluding the cost of materials, goods, and supplies, with its own organization and resources and, if the joint venture subcontracts, 35% of the subcontracted effort, excluding the cost of materials, goods, and supplies, shall be with local, small, or disadvantaged business enterprises.

(B) If the total of the contracting effort, excluding the cost of materials, good, and supplies, proposed to be performed by local, small, or disadvantaged business enterprises is less than the amount required by subparagraph (A) of this paragraph, then the business enterprise shall not be eligible to receive preference points or price reductions for a period of not less than 2 years.

(c) Each construction contract of $1 million or less for which a local, small, or disadvantaged business enterprise is selected as a prime contractor and is granted points or a price reduction pursuant to section 2343 or is selected through a set-aside program under this subpart shall include a requirement that the business enterprise perform at least 50% of the on-site work with its own work force.

(d) Bids or proposals responding to a solicitation, including an open market solicitation, shall be deemed nonresponsive and shall be rejected if the solicitation requires submission of a local, small, or disadvantaged business enterprise subcontracting plan and the prime contractor fails to submit a subcontracting plan as part of its bid or proposal. A local, small, or disadvantaged business enterprise subcontracting plan shall specify the following:

(1) The name and address of the subcontractor;

(2) Whether the subcontractor is currently certified as a local, small, or disadvantaged business enterprise;

(3) The scope of work to be performed by the subcontractor; and

(4) The price to be paid by the contractor to the subcontractor.

(e) No prime contractor shall be allowed to amend the subcontracting plan filed as part of its bid or proposal except with the consent of the contracting officer and the Director. Any reduction in the dollar value of the subcontracted portion resulting from such amendment of the plan shall inure to the benefit of the District.

(f) No multiyear contracts or extended contracts in which the options or extensions exceed $1 million in value, which are not in compliance with this subtitle at the time of the contemplated exercise of the option or extension, shall be renewed or extended, and any such option or extension shall be void.

(g) The subcontracting requirements of this section may be waived pursuant to section 2351.

Sec. 2347.  Unbundling requirement.

The Mayor shall establish procedures to ensure that solicitations are subdivided and unbundled and that smaller contracts are created to the extent feasible and fiscally prudent.

Sec. 2348.  Enforcement and penalties for willful breach of subcontracting plan.

The willful breach by a contractor of a subcontracting plan for utilization of local, small, or disadvantaged businesses in the performance of a contract, the failure to submit any required subcontracting plan monitoring or compliance report, or the deliberate submission of falsified data may be enforced by the Department through the imposition of penalties, including monetary fines of $15,000 or 5% of the total amount of the work that the contractor was to subcontract to local, small, or disadvantaged businesses, whichever is greater, for each such breach, failure, or falsified submission.

Sec. 2349.  Other procedures and programs.

(a)  The Mayor shall establish policies and procedures to maximize the participation of local, small, and disadvantaged business enterprises in the contracting and procurement processes, including:

(1)  A procedure whereby an agency may waive bid security requirements on contracts in excess of $100,000, where the waiver is appropriate to achieve the purposes of this subtitle; and

(2)  A policy whereby an agency shall make advance payments to a certified contractor, where the payments are necessary to achieve the purposes of this subtitle.

(b)  The Mayor may establish a pilot set-aside program for small business enterprises with gross revenues of $5 million or less.

Sec. 2350.  Special requirements for government corporations.

(a)  A government corporation shall comply with all provisions of this subtitle.

(b)(1)(A)  A government corporation shall take all measures as shall be reasonably necessary to assure that all contracts entered into by the government corporation, or any agency or subsidiary of the government corporation, with respect to each major phase of the development and construction of a project undertaken by the government corporation, including contracts for architectural, engineering, and construction services, shall provide that at least 35% of the work in the aggregate under such contracts shall be awarded to small business enterprises.

(B)  In the event that there are insufficient qualified small business enterprises to fulfill this requirement, 35% of the dollar value, excluding the cost of materials, goods, and supplies, shall be subcontracted to local, small, or disadvantaged business enterprises.

(2)  Of the work required to be awarded pursuant to paragraph (1) of this subsection, at least 10% of those business enterprises shall be located in the ward in which the work is being performed.

(3)  If 35% of the work required to be awarded pursuant to paragraph (1) of this

ENROLLED ORIGINAL

subsection, is unattainable, the government corporation shall report this fact to the Council for reconsideration of this requirement.

(c) The subcontracting requirement of subsection (b) of this section may be waived pursuant to section 2351.

(d)(1) A government corporation shall take all measures as shall be reasonably necessary to assure that all contracts entered into by the government corporation, or any agency or subsidiary of the government corporation, with respect to the development and construction of a project undertaken by the government corporation, comply with the First Source Employment requirements of the First Source Employment Agreement Act of 1984, effective June 29, 1984 (D.C. Law 5-93; D.C. Official Code § 2-219.01 et seq.).

(2) Of the jobs required to be filled pursuant to paragraph (1) of this subsection, at least 20% of those jobs shall be designated for residents in the ward in which the work is being performed.

(e)(1) A government corporation shall take all measures as shall be reasonably necessary to assure that all contracts entered into by the government corporation or any agency or subsidiary of the government corporation with respect to the development and construction of a project undertaken by the government corporation shall comply with the requirements of An Act To provide for voluntary apprenticeship in the District of Columbia, approved May 21, 1946 (60 Stat. 204; D.C. Official Code § 32-1401 et seq.).

(2)(A) Fifty percent of all apprenticeship hours performed pursuant to any apprenticeship programs related to the construction and operation of a project undertaken by the government corporation shall be performed by District of Columbia residents.

(B) Any prime contractor or subcontractor that fails to make a good faith effort to comply with the requirements of this paragraph shall be subject to a monetary fine in the amount of 5% of the direct or indirect labor costs of the contract. Fines shall be imposed by the Department of Employment Services to be applied to job training programs, subject to appropriations by Congress.

(f) Beginning with the first full quarter after the effective date of this subtitle, each government corporation shall provide a quarterly report to the Department within 30 days after the end of each quarter. The quarterly report shall include the following information:

(1) The dollar volume and percentage of awards to local, small, and disadvantaged business enterprises in construction and development projects;

(2) The dollar volume and percentage of awards to local, small, and disadvantaged business enterprises in development projects as equity partners; and

(3) The dollar volume and percentage of awards to local, small, and disadvantaged business enterprises for contracting and procurement of goods and services.

(g) Beginning with fiscal year 2006, each government corporation shall provide an annual report to the Department within 45 days after the end of each fiscal year. The annual report shall include:

(1) The information required to be included in the quarterly reports (with the dollar

**ENROLLED ORIGINAL**

percentages and volumes calculated on an annual basis);

(2) The dollar volume and percentage of the contracts and procurements awarded during the fiscal year which were actually paid (including payments through subcontracting) to:

(A) Local, small, and disadvantaged business enterprises;

(B) Local businesses enterprises;

(C) Small business enterprises; and

(D) Disadvantaged business enterprises;

(3) A description of the activities the government corporation engaged in, including the programs required by this part, in order to achieve the requirements set forth in this section; and

(4) A description of any changes the government corporation intends to make during the succeeding fiscal year to the activities it engages in to achieve the requirements set forth in this section.

(h) The Department shall monitor government corporation compliance with the reporting requirements of this section.

(i) The Department shall review the annual report of each government corporation to determine whether the planned activities of the government corporation for the succeeding fiscal year are likely to enable the agency to achieve the requirements set forth in this section. The Department shall make recommendations on activities the government corporation should engage in to meet or exceed the requirements set forth in this section. The Department's recommendations shall be submitted to the government corporation, the Council, and the Commission.

(j) The Commission may review the annual report of a government corporation to determine whether the planned activities of the government corporation for the succeeding fiscal year are likely to enable the government corporation to achieve the goals set forth in this section. The Commission may make recommendations concerning activities in which the government corporation should engage in to meet or exceed the requirements set forth in this section. The Commission's recommendations shall be submitted to the government corporation, the Council, and the Department.

Sec. 2351. Waiver of subcontracting requirements.

(a) The Director may waive the subcontracting requirements of sections 2346 and 2350 pursuant to this section.

(b) A contracting officer may request that the Director waive the subcontracting requirements for a particular contract by submitting to the Director with the request for waiver a statement of the reasons that justify a waiver.

(c) The Commission may find that a waiver of the subcontracting requirements of sections 2346 and 2350 for a particular contract are justified in order to achieve the purposes of this title.

(d)(1) The Director shall approve a waiver of the subcontracting requirements of section 2346 and 2350 requested by a contracting officer if the Director finds that no qualified business enterprises are available to satisfy the subcontracting requirements.

(2) The Director shall waive the subcontracting requirements of sections 2346 and

2350 if the Commission finds that a waiver is necessary to achieve the purposes of this title.

(e) In addition to a waiver granted pursuant to subsection (d) of this section, the Director may grant a waiver or modification of a subcontracting plan requested by the contracting officer if the Director finds that the applicant has made a good faith effort to meet the requirements of sections 2346 and 2350. In making a good faith determination, the Director shall consider the following factors:

(1) Whether the applicant conducted any pre-solicitation or pre-bid conferences to inform local, small, or disadvantaged business enterprises of contracting and subcontracting opportunities;

(2) Whether the applicant advertised in general circulation, trade association, and ethnic-focus media concerning the contracting and subcontracting opportunities;

(3) Whether the applicant provided written notice to a reasonable number of specific local, small, or disadvantaged business enterprises, in sufficient time to allow local, small, or disadvantaged business enterprises to participate effectively, that their interest in the contract was being solicited;

(4) Whether the applicant followed up initial solicitations of interest by conducting negotiations with local, small, or disadvantaged business enterprises;

(5) Whether rejections by the applicant of local, small, or disadvantaged business enterprises as being unqualified were based on sound reasoning and thorough investigation of their capabilities;

(6) Whether the applicant made efforts to assist interested local, small, or disadvantaged business enterprises in obtaining bonding, lines of credit, or insurance required by the applicant;

(7) Whether the applicant effectively used the services of the Commission in recruiting qualified and responsible local, small, or disadvantaged business enterprises;

(8) Whether bids submitted by local, small, or disadvantaged business enterprises were excessive or noncompetitive based upon a review of prevailing market conditions; and

(9) Any other factors which may be relevant in a particular case.

(f)(1) The contracting officer shall provide written notice of the waiver of the subcontracting requirements of sections 2346 and 2350 to the applicant prior to the acceptance of bids or proposals and upon approval of the waiver by the Director.

Sec. 2352. Enforcement mechanism against an agency.

If an agency fails to meet any of the goals set forth in section 2341, the Department may require that a portion of the agency's contracts and procurements be made part of a set-aside program for small business enterprises.

Sec. 2353. Agency reporting requirements.

(a) Beginning with the first full quarter after the effective date of this subtitle, each agency shall provide a quarterly report to the Department within 30 days after the end of each quarter. The

**ENROLLED ORIGINAL**

quarterly report shall include the following information:

    (1) A list of each contract or procurement of the agency during the quarter, and, for each contract or procurement:

        (A) The dollar amount of the contract or procurement;

        (B) A description of the goods procured or the services contracted for;

        (C) The name of the business enterprise from which the goods were procured or services contracted;

        (D) Whether the business enterprise was a certified local, small, or disadvantaged business enterprise, and, if it was:

            (i) The category or categories under which the business enterprise is certified; and

            (ii) The identification number of the business enterprise assigned by the Department; and

        (E) The source of funding for the contract or procurement (local, federal, other, or capital);

    (2) The dollar percentage of the contracts and procurements awarded during the quarter which were awarded to:

        (A) Local, small, and disadvantaged business enterprises;

        (B) Local businesses enterprises;

        (C) Small business enterprises; and

        (D) Disadvantaged business enterprises; and

    (3) The dollar volume of the contracts and procurements awarded during the quarter which were awarded to:

        (A) Local, small, and disadvantaged business enterprises;

        (B) Local businesses enterprises;

        (C) Small business enterprises; and

        (D) Disadvantaged business enterprises.

  (b) Beginning with fiscal year 2006, each agency shall provide an annual report to the Department within 45 days after the end of each fiscal year. The annual report shall include:

    (1) The information required to be included in the quarterly reports (with the dollar percentages and volumes calculated on an annual basis);

    (2) The dollar volume and percentage of the contracts and procurements awarded during the fiscal year which were actually paid (including payments through subcontracting) to:

        (A) Local, small, and disadvantaged business enterprises;

        (B) Local businesses enterprises;

        (C) Small business enterprises; and

        (D) Disadvantaged business enterprises;

    (3) A description of the activities the agency engaged in, including the programs required by this part, in order to achieve the goals set forth in section 2341; and

    (4) A description of any changes the agency intends to make during the succeeding

fiscal year to the activities it engages in to achieve the goals set forth in section 2341.

(c) The Department shall monitor agency compliance with the reporting requirements of this section.

(d) The Department shall review the annual report of each agency to determine whether the planned activities of the agency for the succeeding fiscal year are likely to enable the agency to achieve the goals set forth in section 2341. The Department shall make recommendations on activities the agency should engage in to meet or exceed the goals set forth in section 2341. The Department's recommendations shall be submitted to the agency, the Council, and the Commission.

(e) The Commission may review the annual report of an agency to determine whether the planned activities of the agency for the succeeding fiscal year are likely to enable the agency to achieve the goals set forth in section 2341. The Commission may make recommendations on activities the agency should engage in to meet or exceed the goals set forth in section 2341. The Commission's recommendations, if any, shall be submitted to the agency, the Council, and the Department.

Sec. 2354. Department reporting requirements.

Within 45 days of its receipt of the annual reports required by section 2352(b), the Department shall submit to the Council and the Commission a report containing the following documents and information:

(1) A chart containing the following information with respect to each agency for the prior fiscal year:

(A) The expendable budget of the agency;

(B) Each goal of the agency under section 2341 in dollar and percentage terms;

(C) The agency's achievement with respect to each goal established by section 2341, which shall include the following information:

(i) The percentage of the expendable budget, the percentage of the total budget, and the dollar volume that was contracted or procured with the following:

(I) Local business enterprises;

(II) Small business enterprises; and

(III) Disadvantaged business enterprises; and

(ii) The dollar volume and percentage of the contracts and procurements awarded during the quarter which were actually paid (including payments through subcontracting) to:

(I) Local business enterprises;

(II) Small business enterprises; and

(III) Disadvantaged business enterprises; and

(D) A list of each contract or procurement of the agency, including:

(i) A description of the contract or procurement;

(ii) The dollar amount of the contract or procurement;

(iii)  The name of the business enterprise from which the goods or services were contracted or procured;

(iv)  Whether the business enterprise was a certified local, small, or disadvantaged business enterprise, and, if it was:

(I)  The category or categories under which the business enterprise is certified; and

(II)  The identification number of the business enterprise assigned by the Department; and

(v)  The source of funding for the contract (local, federal, other, or capital); and

(2)  A chart listing the following information with respect to each agency for the current fiscal year:

(A)  The total budget of each agency;

(B)  The expendable budget of each agency;

(C)  A description of each funding source, object class, object, or item that was excluded from the total budget of the agency in the Department's calculation of the expendable budget of the agency; and

(D)  Each goal of the agency under section 2341 in percentage and dollar terms.

Sec. 2355.  Regional governmental entities.

(a)  Except as provided in subsection (b) of this section, a regional governmental entity shall be exempt from the requirements of this subtitle to the extent that the requirements of this subtitle impact on the regional governmental entity's operations within the territory of a member government other than the District.

(b)  The District of Columbia Water and Sewer Authority shall be exempt from the requirements of this subtitle to the extent that the requirements of this subtitle are contrary to procurement regulations promulgated pursuant to statutes establishing the District of Columbia Water and Sewer Authority.

Subpart 3.  Certification.

Sec. 2361.  Certificate of registration.

(a)  No business enterprise shall be permitted to participate in a program established under this part unless the business enterprise:

(1)  Has been issued a certificate of registration under the provisions of this subtitle; or

(2)  Has been issued a provisional certification under regulations issued pursuant to this subtitle.

(b)(1)  An enterprise seeking to be certified as a local, small, or disadvantaged business enterprise, as a resident-owned business, as a resident business, or as a local business enterprise with

ENROLLED ORIGINAL

its principal office located in an enterprise zone shall file with the Commission a written application on such form or forms as may be prescribed by the Commission or the Department.

(2) The application shall include, at a minimum, the following documents and information:

(A) A certification of the correctness of the information provided;

(B) Written evidence that the applicant is:

(i) A bona fide local business enterprise;

(ii) A bona fide disadvantaged business enterprise;

(iii) A bona fide small business enterprise;

(iv) A bona fide local business enterprise located in an enterprise zone;

(v) A bona fide resident-owned business; or

(vi) A bona fide resident business.

(C) Evidence of ability and character;

(D) Evidence of financial position, which may be the applicant's most recent financial statement. For the purposes of this subparagraph, the term "recent" means produced from current data no more than 90 days prior to the application date; and

(E) Any other information the Commission or Department may require.

(c) The Commission shall issue the applicant a certificate of registration if:

(1) The information provided in the application or additional filings is satisfactory to the Commission;

(2) The business enterprise meets the standards of this subtitle; and

(3) The applicant fulfills other requirements as may be established by the Commission or the Department.

(d) A certificate of registration shall expire 2 years from the date of approval of the application.

Sec. 2362. Provisional certification; self-certification prohibited.

(a) The Department may authorize a business enterprise to participate in a program established under this part without receiving a certificate of registration under section 2361; provided, that such authorization shall be granted only when:

(1) A business enterprise is applying for certification in order to bid on a contract or procurement for which responses are due within the next 45 days;

(2) The business enterprise has submitted a majority of the information required under section 2361; and

(3) The Department reasonably believes that the Commission will certify the business enterprise after the business enterprise has submitted all of the information required under this subtitle or regulations promulgated pursuant to this subtitle.

(b) An authorization granted under this section shall not last for more than 120 days.

(c) The Department shall make authorizations under subsection (a) of this section pursuant

**ENROLLED ORIGINAL**

to rules promulgated pursuant to this subtitle.

(d)  A business enterprise may not self-certify or self-authorize to participate in a program established under sections 2343 through 2349.

Sec. 2363.  Revocation of registration; challenges to registration; penalties.

(a)  The Commission may revoke or suspend the certificate of registration of a business enterprise that:

(1)  Engaged in fraud or deceit in obtaining the registration;

(2)  Furnished substantially inaccurate or incomplete ownership or financial information;

(3)  Failed to report changes that affect its eligibility for certification;

(4)  Acted with gross negligence, incompetence, financial irresponsibility, or misconduct in the practice of a trade or profession; or

(5)  Willfully violated any provision of this subtitle or rules adopted pursuant to this subtitle.

(b)(1)  Any person may file with the Commission a complaint alleging a violation of this subtitle against an applicant for registration or a business enterprise registered pursuant to this subtitle. The complaint shall be in writing and sworn to by the complainant.

(2)  The Commission may request that the Department investigate the facts and merits of the complaint.

(3)  The Commission may, without a hearing, dismiss a complaint which it determines to be frivolous or otherwise without merit.

(4)  If the Commission does not determine that a complaint is frivolous or otherwise without merit, it shall hold a hearing on the complaint within 3 months of the filing of the complaint. The Commission shall determine the time and place of the hearing. The Commission shall cause to be issued and served on the person or business enterprise alleged to have committed the violation, hereafter called the "respondent", a written notice of the hearing together with a copy of the complaint at least 30 days prior to the scheduled hearing. Notice shall be served by registered or certified mail, return receipt requested, or by personal service. At the hearing, the respondent shall have the right to appear personally or by a representative and to cross-examine witnesses and to present evidence and witnesses.

(5)  If, after the conclusion of the hearing, the Commission determines that the respondent has violated the provisions of this subtitle or regulations issued pursuant to this subtitle, the Commission shall issue, and cause to be served on the respondent, a decision and order, accompanied by findings of fact and conclusions of law, revoking or suspending the respondent's registration, or taking any other action it deems appropriate.

(6)  The Commission shall have the authority to issue subpoenas requiring the attendance of witnesses and to compel the production of records, papers, and other documents.

(c)  In addition to the procedures and penalties provided in subsection (b) of this section, the Attorney General for the District of Columbia may bring a civil action in the Superior Court of the

District of Columbia against a business enterprise and the directors, officers, or principals of a business enterprise that is reasonably believed to have obtained certification by fraud or deceit or to have willfully furnished substantially inaccurate or incomplete ownership information to the Commission. A business enterprise or individual found guilty under this subsection shall be subject to a civil penalty of not more than $100,000.

(d) The Commission may at any time reissue a certificate of registration to any firm or joint venture whose certificate has been revoked; provided, that a majority of at least 4 members of the Commission vote in favor of reissuance. The Commission may consider whether the firm or joint venture should be required to submit satisfactory proof that conditions within the company that led to the violation have been corrected.

### Subpart 4. Triennial review and rulemaking.

### Sec. 2371. Triennial review of program and subtitle.

(a) Every 3 years following the effective date of this subtitle, the Department shall submit to the Council, the Mayor, and the Commission the results of an independent evaluation of the local, small, and disadvantaged business enterprise programs. This evaluation shall compare the costs of contracts awarded pursuant to this subtitle to the cost of contracts awarded without use of the set-asides and bid preferences authorized by this subtitle. This evaluation shall also compare economic outcomes such as revenue, tax payments, and employment of District residents for local, small, and disadvantaged business enterprises certified by the Commission to economic outcomes for similar firms that are not certified by the Commission.

(b) The Department and the Commission shall review the findings in the triennial report and the goals, intents, and purposes of this subtitle. The Department shall, and the Commission may, transmit to the Council and the Mayor a report setting forth any recommended amendments to this subtitle.

### Sec. 2372. Rulemaking authority.

The Mayor shall, pursuant to title I of the District of Columbia Administrative Procedure Act, approved October 21, 1968 (82 Stat. 1204; D.C. Official Code § 2-501 *et seq.*), issue proposed rules to implement this subtitle. The proposed rules shall be submitted to the Council for a 45-day period of review, excluding Saturdays, Sundays, legal holidays, and days of Council recess. If the Council does not approve or disapprove the proposed rules, in whole or in part, by resolution within this 45-day review period, the proposed rules shall be deemed approved.

### Part E. Conforming Amendments.

### Sec. 2381. Amendments.

(a) Section 10b(a) of the District of Columbia Regional Interstate Banking Act of 1985, effective November 23, 1985 (D.C. Law 6-63; D.C. Official Code § 26-711(c)), is amended by striking the phrase "District of Columbia Local Business Opportunity Commission in accordance with the Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998

and inserting the phrase "Small and Local Business Opportunity Commission in accordance with the Small, Local, and Disadvantaged Business Enterprises Development and Assistance Act of 2005 (Subtitle N of title II of Bill 16-200)".

(b) Section 17a(a) of the District of Columbia Savings and Loan Acquisition Amendment Act of 1988, effective October 12, 1988, (D.C. Law 7-175; D.C. Official Code § 26-1217(a)), is amended by striking the phrase ""District of Columbia Local Business Opportunity Commission in accordance with Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998 and inserting the phrase "Small and Local Business Opportunity Commission in accordance with the Small, Local, and Disadvantaged Business Enterprises Development and Assistance Act of 2005 (Subtitle N of title II of Bill 16-200)".

(c) Section 47-351.11 of the District of Columbia Official Code is amended by striking the phrase "District of Columbia Local Business Opportunity Commission in accordance with subchapter IX of Chapter 2 of Title 2" and inserting the phrase "Small and Local Business Opportunity Commission in accordance with the Small, Local, and Disadvantaged Business Enterprises Development and Assistance Act of 2005 (Subtitle N of title II of Bill 16-200)".

Sec. 2382. Repealers.

(a) Sections 4, 5, and 13 of the Minority Contracting Act of 1976, effective March 29, 1977 (D.C. Law 1-95; D.C. Official Code §§ 2-215.03, 2-215.04, and 2-215.11), are repealed.

(b) The Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998, effective April 27, 1999 (D.C. Law 12-268; D.C. Official Code § 2-217.01 *et seq.*), is repealed.

(c) An order, rule, or regulation in effect under a law repealed by this section shall remain in effect under the corresponding provision enacted by this subtitle until repealed, amended, or superseded.

Part F.  Fiscal Impact.

Sec. 2391.  Fiscal impact statement.

The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

TITLE III.  PUBLIC SAFETY AND JUSTICE

SUBTITLE A. ESTABLISHMENT OF THE OFFICE OF THE CHIEF MEDICAL EXAMINER MANAGEMENT FUND

Sec. 3001.  Short title.

This subtitle may be cited as the "Office of the Chief Medical Examiner Management Fund Amendment Act of 2005".

"(A) One hundred percent of the proceeds collected by the District for rental of public space;

"(B) Fifty percent of the proceeds of sales and use taxes collected by the District for parking and storing vehicles; provided, that the funds shall be used exclusively to pay the debt service associated with approved programs, such as the Traffic Relief Program; and

"(C) One hundred percent of the District's parking meter proceeds.

"(2) Beginning on October 1, 2005, the Mayor shall submit to the Council a report, certified by the Office of the Chief Financial Officer, that details the activities, budget, expenditures, and variances, at the program level, of all programs, activities, and projects undertaken by the District Department of transportation from all available funding sources. The report shall be submitted on a quarterly basis.

"Sec. 11b. Securities funds; Council project approval.

"(a) For each project for which funding is derived, in whole or in part, from securitized funds, the Mayor shall submit to the Council a resolution of project approval accompanied by a summary description of the proposed project, including the cost of the project, the expected duration of the project, details of the financing, and a summary of the public benefits to be derived from the proposed project for a 45-day period of Council review, excluding Saturdays, Sundays, legal holidays, and days of Council recess.

"(b) The Council may approve, conditionally approve, or disapprove a proposed project by resolution within 45 days after the Mayor transmits to the Council the proposed resolution and information set forth in subsection (a) of this section. If the Council takes no action on the resolution within the 45-day review period, the project shall be deemed approved.".

Sec. 6063. Fiscal impact statement.

The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

TITLE VII. EFFECTIVE DATE

Sec. 7001. This act shall take effect following approval by the Mayor (or in event of veto by the Mayor, action by the Council to override the veto), a 30-day period of Congressional review as provided in section 602(c)(1) of the District of Columbia Home Rule Act, approved December 24,

**ENROLLED ORIGINAL**

1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(1)), and publication in the District of Columbia Register.

_____

Chairman
Council of the District of Columbia

_____

Mayor
District of Columbia

Council of the District of Columbia
Committee on Economic Development
**Report**                           .,,,, ,-• ^7  p‌ £ 30
1350 Pennsylvania Avenue, N.W. Washington, D.C. 20004

0 1 i ‑ •

To:             All Councilmembers

From:           Councilmember Sharon Ambrose, Chair

                Committee on Economic Development

Date:           November 6, 2006

Subject:        Report on Bill 16-506, the "Longtime Resident Business Definition Amendment
                Act of 2006"

    The Committee on Economic Development reports favorably on Bill 16-506, the
"Longtime Resident Business Definition Amendment Act of 2006".

## TABLE OF CONTENTS.

I.      Background, Purpose and Effect
II.     Legislative History
III.    Summary  of  Testimony
IV.     Fiscal Impact Statement
V.      Section-by-Section Analysis
VI.     Impact on Existing Law
VII.    Committee Action
VIII.   Attachments

## I.    BACKGROUND, PURPOSE AND EFFECT

    On November 2, 2005 Councilmember Kwame Brown (D-At Large) introduced Bill 16-506, the "Longtime Resident Business Definition Amendment Act of 2006". The purpose of Bill 16-506, as introduced, is to amend the Small, Local, and Disadvantaged Business Enterprise Development and Assistance Act of 2005 by defining a longtime resident business as a business that had been continuously eligible for certification as a small business enterprise for 10 consecutive years. A Public Hearing was held on this bill on October 20, 2006, with testimony from the public, the Small and Local Business Development Commission, and the Department of Small and Local Business Development. The Committee met on November 6, 2006 to consider and markup Bill 16-506.

## II.    LEGISLATIVE HISTORY

November 2, 2005    Bill 16-506 is introduced by Councilmember Kwame Brown.

November 7, 2006    Bill16-506 is referred to the Committee on Economic Development.

**Exhibit 2**

November 18, 2005 Notice of Intent to Act on New Legislation published in the District of
                  Columbia Register.

October 20, 2006    Public Hearing on Bill 16-506 held by the Committee on Economic
                    Development.

November 6, 2006    Committee on Economic Development's markup and consideration of
                    Bill 16-506.

## III.    SUMMARY OF TESTIMONY

A Public Hearing on Bill 16-506 and other measures was held on October 20, 2006, at
10:00 am. Councilmember Kwame Brown presided over the Public Hearing on behalf of
Chairperson Sharon Ambrose (D-Ward 6). No other Councilmembers were in attendance during
the Committee's consideration of Bill 16-506 which commenced at 1pm. Acting Chairperson
Brown called the first witness to the table to give testimony.

**Carmen Price Calhoun, Hodges Enterprises, Inc.** testified in support of the proposed
legislation. Ms. Price Calhoun stated that Hodges Enterprises supports the legislation because
the reduction in years to be eligible for the preference will allow a number of businesses to
qualify for longtime resident business status. Hodges Enterprises also supports the legislation
because it will level the playing field for the small business owner with longtime resident
business status.

**Terri Woodfolk, Capitol Paving, Inc.** Ms. Woodfolk testified in support of the
legislation because the current twenty year requirement for longtime resident business status is at
present only available to one out of four local construction firms. Ms. Woodfolk stated that this
creates a monopoly and that the law should be changed to require less than twenty years for
longtime resident business certification.

**Keith Forney, Forney Enterprises, Inc.** Mr. Forney was not present at the hearing and a
representative of his company read a statement prepared by Mr. Forney. According to the
statement, Forney Enterprises, Inc. opposes the proposed legislation because the longtime
business residency requirement should be thirty years and not ten as proposed by the legislation..

**Warner Sessions, National Minority Business Coalition** testified in strong support of
the proposed legislation because it will lower the current law's twenty year requirement for
qualification as a longtime resident business enterprise. Mr. Sessions testified that failure to
lower the number of years as well as to find a way to reward smaller businesses that qualify will
result in an uneven playing field.

Acting Chairperson Brown stated that he agreed with Mr. Sessions and the National
Minority Business Coalition. Acting Chairperson Brown then stated that longtime resident
businesses should be rewarded for staying in the District through the bad years of the economy.
Acting Chairperson Brown further added that the current twenty year requirement may not

reward those companies that remained in the District during the bad years because the economy was not doing well either fifteen years ago.

**Carlos Perdomo, DC Hispanic Contractors Association** testified in support of the proposed legislation. Mr. Perdomo stated that his association had consulted with the Small and Local Business Opportunity Commission regarding the proposed legislation. Mr. Perdomo stated that in working with the Commission, the two entities had produced some suggested changes to the proposed legislation. Mr. Perdomo then stated that his association fully supported the recommendations of the Commission.

**Cardell Shelton, DC Contractors Guild** did not provide the Committee with a written copy of his testimony. Mr. Shelton's oral testimony did not address the proposed legislation directly if at all. Mr. Shelton instead testified on matters not before the Committee.

**Ronne L. Edwards, Acting Director, Department of Small and Local Business Development** testified in support of the proposed legislation. Acting Director Edwards suggested amending the proposed legislation prior to mark-up by reducing the twenty year requirement for longtime resident business certification as well as by including a two-tier point preference system. Under this system, certified small business enterprises and firms with longtime resident business certification will be entitled to receive ten preference points or ten percent price reduction on bids and proposals submitted to the District government. Businesses certified as longtime residents but not as small businesses will be entitled to receive five preference points or five percent price reduction. Acting Director Edwards testified that this change will reduce the significant advantage currently being enjoyed by larger longtime resident businesses when competing for city contracts against smaller companies.

Acting Director Edwards further recommended that the proposed legislation be amended to allow for the granting of five preference points or five percent priced reduction for businesses certified as resident owned business instead of the current three preference points or three percent price reduction awarded to such. Acting Director Edwards stated that this change will enable local businesses that are owned by individuals subject to personal income tax in the District to better compete for city contracts, which in turn assists a group of businesses that directly contribute to the District's tax base.

**Alberto Gomez, Small and Local Business Opportunity Commission** testified in support of the legislation. Mr. Gomez stated his support of the Department's proposed two-tiered system. Mr. Gomez also stated that the Commission viewed a fifteen year residency requirement as the most equitable and best suited for identifying longtime resident businesses.

Acting Chairperson Brown thanked all the witnesses for their testimony and comments. Acting Chairperson Brown then stated that the Committee would take a close look at whether the proposed legislation should require ten or fifteen years to qualify businesses as longtime resident businesses. Acting Chairperson Brown further noted that the two-tiered system would be taken into consideration. Acting Chairperson Brown then adjourned the Public Hearing's consideration

3

of Bill 16-506 at 1:45 pm.

IV.    FISCAL IMPACT

Bill 16-506 has no fiscal impact on the District.

V.    SECTION-BY-SECTION ANALYSIS

Section 1 of Bill 16-506 provides the title of the bill as the "Longtime Resident Business Definition Amendment Act of 2006".

Section 2(a) amends the Small, Local, and Disadvantaged Business Enterprise Development and Assistance Act of 2005, effective October 20, 2005 (D.C. Law 16-33; D.C. Official Code § 2-218.01 *et seq.),* by amending Section 2302(13) (D.C. Official Code § 2-218.02(13)) so that it will define a long term resident business enterprises as a business enterprise that has been continuously eligible during fifteen years for certification as a small or local business enterprise. At present, the law defines a long term resident business as a local business enterprise that has been continuously eligible for certification for a period of twenty years. The introduced version of B16-506 required eligibility only for small business enterprises for a period of ten years. The Committee Print reflects the input received from the public that fifteen years is the most equitable period for determining a business' longtime dedication to the District. As the majority of the witnesses testified, a ten year period does not reach far back enough in time to reward those businesses that endured the poorest years of the local economy estimated to have ended at a minimum of 15 years ago. The current law's twenty year requirement is inadequate as it reaches too far back in time and benefits too small a number of businesses.

Section 2(b) amends the Small, Local, and Disadvantaged Business Enterprise Development and Assistance Act of 2005, (D.C. Law 16-33; D.C. Official Code § 2-218.01 *et seq.),* by amending Section 2343(a) (D.C. Official Code § 2-218.43(a)) to require an agency evaluating proposals to award 5 points for a local business enterprise, 5 points for a resident business enterprise, and 10 points for a local business enterprises also certified as a small business enterprise. In addition, an agency evaluating bids is required to grant a 5% price reduction for a local business enterprise, a 5% price reduction for a resident business enterprise, and a 10% price reduction for a local business enterprise also certified as a small business enterprise. The introduced version of B16-506 did not include such a change in the bid or proposal evaluation system currently in place. The Committee Print reflects the input of the Department of Local Business Development's suggestion of a two-tiered system that rewards small longtime residents businesses ten points/price percentage reduction and five points/price percentage reduction to larger longtime resident businesses.

Section 3 establishes that the Council adopts the fiscal impact statement attached to the bill.

4

Section 4 establishes the effective date of the bill.

## VI.    COMMITTEE REASONING

        The Committee on Economic Development recommends the approval of this bill based on the public testimony and other commentary and analysis it received. The Committee's Print reflects key changes made to the introduced version of this bill after the Committee received input at the public hearing. These changes are explained in detail in the section by section analysis of this report. These changes, as evidenced by the attached public testimony, were supported by the majority of those who testified, including public witnesses, the Department of Small and Local Business Development, as well as the Small and Local Business Development Commission.

## VII.    IMPACT ON EXISTING LAW

        Bill 16-506 amends the Small, Local, and Disadvantaged Business Enterprise Development and Assistance Act of 2005.

## VIII.    COMMITTEE ACTION

        The Committee on Economic Development met on November 6, 2006 at 10:00 am to mark-up Bill 16-506 along with other measures. Present at the mark up, were Chairperson Ambrose (D-Ward 6) and Councilembers Kwame Brown (D-At Large), Vincent Orange (D-Ward 5), Jack Evans (D-Ward 2), and Vincent Gray (D-Ward 7). The bill was approved by unanimous voice vote. The meeting was adjourned at 1 1am.

**Committee members voted as follows:**

| | |
|---|---|
| **Committee members voting in favor:** | **Chairperson Sharon Ambrose**<br>**Councilmember Vincent Orange**<br>**Councilmember Kwame Brown**<br>**Councilmember Jack Evans**<br>**Councilmember Vincent Gray** |
| **Committee members voting against:** | **none** |
| **Committee members present:** | **Chairperson Sharon Ambrose**<br>**Councilmember Vincent Orange**<br>**Councilmember Kwame Brown**<br>**Councilmember Jack Evans**<br>**Councilmember Vincent Gray** |
| **Committee members absent:** | **none** |

## IX. __ATTACHMENTS__

A.    Bill 16-506 as introduced.

B. Committee Print of Bill 16-506.

C.    Fiscal Impact Statement.

D. Public Hearing notice for Bill 16-506 witness list, and copies of testimony.

**COUNCIL OF THE DISTRICT OF COLUMBIA**
1350 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

**Memorandum**

To:        Members of the Council

From:      Ira Stohlman, Acting Secretary to the Council

Date:      November 7, 2005

Subject:   Referral of Proposed Legislation

Notice is given that the attached proposed legislation was introduced in the
Office of the Secretary on Wednesday, November 02, 2005. Copies are available
in Room 10, the Legislative Services Division.

TITLE:  "Longtime Resident Business Definition Amendment Act of 2005",
         B16-0506

INTRODUCED BY:  Councilmember Brown

The Chairman is referring this legislation to the Committee on Economic
Development.

Attachment

cc: General Counsel
    Budget Director
    Legislative Services

1 _____

2                                                Councilmeqftjer Kwame R. Brown

3

4

5                              A BILL

6

7 _____

8

9              IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

10

11 _____

12

13

14   Councilmember Kwame R. Brown introduced the following bill, which was referred to the

15         Committee on_____.

16

17   To amend the "Small, Local, and Disadvantaged Business Enterprise Development and

18 Assistance Act of 2005" to provide that a business enterprise seeking to meet the

19         definition of a longtime resident business, that such an entity is bound by the size

20         standard of a small business enterprise and must have been continuously certified as such

21         for 10 consecutive years.

22

23      BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this

24 act may be cited as the "Longtime Resident Business Definition Amendment Act of 2005".

25 Sec. 2. Section 2302 (a)(13) of the Small, Local, and Disadvantaged Business

26 Enterprise Development and Assistance Act of 2005, signed by the Mayor July 26, 2005 (D.C.

27 Act 16-166), is amended by striking the phrase "eligible for certification as a local" and inserting

28 the phrase "certified as a small" in its place; and by striking the phrase "2331, for 20" and

29 inserting the phrase "2332, for 10" in its place.

30      Sec. 3. Fiscal impact statement.

31      The Council adopts the fiscal impact statement in the committee report as the fiscal

32 impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act,

33 approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

34      Sec. 4. Effective date.

1

1 This act shall take effect following approval by the Mayor (or in the event of veto by the

2 Mayor, action by the Council to override the veto), a 30-day period of Congressional review as

3 provided in section 602(c)(l) of the District of Columbia Home Rule Act, approved December

4  24,1973 (87 Stat. 813; D.C. Official Code § l-206.02(c)(l)), and publication in the District of

5    Columbia Register.

6

COMMITTEE PRINT                                                          1
Committee on Economic Development                                       2
November 6, 2006                                                        3

A BILL                                          4

16-506                                          5

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA                  6

_____         7

To amend the Small, Local, and Disadvantaged Business Enterprise Development and Assistance        8
Act of 2005 to define a longtime resident business as a business that has been        9
continuously eligible for certification as a local business enterprise or as a small business        10
enterprise for 15 consecutive years, and to require an agency evaluating proposals to        11
award 5 points for a local business enterprise, 5 points for a resident business enterprise,        12
and 10 points for a local business enterprises also certified as a small business enterprise        13
and an agency evaluating bids to grant a 5% price reduction for a local business        14
enterprise, a 5% price reduction for a resident business enterprise, and a 10% price        15
reduction for a local business enterprise also certified as a small business enterprise.        16

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this        17

act may be cited as the "Longtime Resident Business Definition Amendment Act of 2006".        18

Sec. 2. The Small, Local, and Disadvantaged Business Enterprise Development and        19

Assistance Act of 2005, effective October 20, 2005 (D.C. Law 16-33; D.C. Official Code § 2-        20

218.01 *et seq.),* is amended as follows:        21

(a) Section 2302(13) (D.C. Official Code § 2-218.02(13)), is amended by striking the        22

phrase "for 20" and inserting the phrase "or a small business enterprise, as defined in § 2332, for        23

15" in its place.        24

(b) Section 2343(a) (D.C. Official Code § 2-218.43(a)) is amended as follows:        25

(1) Paragraph (1) is amended as follows:        26

1

(A) Subparagraph (B) is amended by striking the word "Three" and    1

inserting the word "Five" in its place.    2

(B) Subparagraph (C) is amended by striking the phrase "longtime resident    3

business;" and inserting the phrase "small business enterprise that is also certified as a longtime    4

resident business;" in its place.    5

(C) Add a new subparagraph (G) to read as follows:    6

"(G) Five points for a local business enterprise that is also certified as a    7

longtime resident business enterprise.".    8

(2) Paragraph (2) is amended as follow:    9

(A) Subparagraph (B) is amended by striking the word "Three" and    10

inserting the word "Five" in its place.    11

(B) Subparagraph (C) is amended by striking the phrase "longtime resident    12

business;" and inserting the phrase "small business enterprise that is also certified as a longtime    13

resident business;" in its place.    14

(C) Add a new subparagraph (G) to read as follows:    15

"(G) Five percent for a local business enterprise that is also certified as a    16

longtime resident business enterprise.".    17

Sec. 3. Fiscal impact statement.    18

The Council adopts the fiscal impact statement in the committee report as the fiscal    19

impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act,    20

approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).    21

Sec. 4. Effective date.    22

This act shall take effect following approval by the Mayor (or in the event of veto by the    1

Mayor, action by the Council to override the veto), a 30-day period of Congressional review as    2

provided in section 602(c)(l) of the District of Columbia Home Rule Act, approved December    3

24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(l)), and publication in the District of    4

Columbia Register.    5

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## Office of the Chief Financial Officer



Natwar M. Gandhi
Chief Financial Officer

## MEMORANDUM

**TO:**  **The Honorable Linda W. Cropp**
      **Chairman, Council of the District of Columbia**

**FROM:**  Natwar M. Gandhi
       Chief Financial Officer

**DATE:**  NOV -6 2006

**SUBJECT:**  **Fiscal Impact Statement: "Longtime Resident Business Definition**
        **Amendment Act of 2006"**

**REFERENCE:**  **Bill 16-506 (Draft Committee Print, November 6, 2006)**

### Conclusion

Funds are sufficient in the FY 2007 through FY 2010 budget and financial plan to implement the provisions of the proposed legislation. No additional staff or resources will be required.

### Background

The proposed legislation amends existing law defining resident businesses and small businesses in the District of Columbia. It also amends provisions relating to bid and proposal preferences for local resident small businesses.

The proposed legislation would reduce the residency requirement for longtime resident businesses from 20 years to 15 years. In addition, the proposed legislation would increase the number of preference points from 3 to 5 for resident-owned business enterprises and would clarify that 10 points will be awarded to small business enterprises that are also certified as longtime resident businesses.

### Financial Plan Impact

The proposed legislation will not impact the FY 2007 through FY 2010 budget and financial plan. No additional staff or resources will be required.

---



# Council of the District of Columbia
# Legislative Information Management System

● Back    ● Home    ● Help    ● FAQ    ● Contact Us

**Enter Leg. #** B16-0506    [ Get New Record ]

| Current Reading | 1st Reading |
| --- | --- |
| Date of Vote: | 12/5/2006 |

| Vote Type: | Vote Result: |
| --- | --- |
| ● Voice Vote | ● Approved |
| ○ Roll Call | ○ Disapproved |

## Council Members

**Readings on Record:**
1st Reading
Final Reading

| Chairman: | **Cropp** | | |
| --- | --- | --- | --- |
| Ambrose | **Vote:** ABSENT | Barry | **Vote:** YES |
| Brown | **Vote:** YES | Catania | **Vote:** YES |
| Cropp | **Vote:** YES | Evans | **Vote:** YES |
| Fenty | **Vote:** YES | Graham | **Vote:** YES |
| Gray | **Vote:** ABSENT | Mendelson | **Vote:** YES |
| Orange | **Vote:** YES | Patterson | **Vote:** YES |
| Schwartz | **Vote:** YES | | |

| YES | NO | PRESENT | ABSENT | RECUSED | ABSTAINED |
| --- | --- | --- | --- | --- | --- |
| 11 | | | 2 | | |

**Exhibit 3**

_____    Councilmember

~Page 1 of _2_

AN AMENDMENT

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

DATE: December 19, 2006

Amendment offered by Councilmember _____    to:
P.R. No. _____
Bill No. 16-506
Other _____

Version:
    Introduced
    Committee Print                    X
    First Reading                    _____
    Amended First Reading            _____
    Engrossed (Amended)              _____
    Enrolled                         _____
    Unidentified                     _____
    Emergency Legislation            _____

1.    Section 2 is amended by striking the language "(a) Section 2302(13) (D. C. Official Code § 2-218.02(13)), is amended by striking the phrase "for 20" and inserting the phrase "or a small business enterprise, as defined in § 2332, for 15" in its place." and inserting the language "(a) Section 2302 (13) (D. C. Official Code § 2-218.02 (13)), is amended by adding the language ", or a small business enterprise as defined in § 2332 for 15 consecutive years." in its place.

2.    Section 2 is amended by striking the language "(B) Subparagraph (C) is amended by striking the phrase "longtime resident business," and inserting the phrase small business enterprise that is also certified as a longtime resident business;" in its place." in both instances where the language appears.

3.    Section 2 is amended by striking the language "(C) Add a new subparagraph (G) to read as follows: (G) Five points for a local business enterprise that is also certified as a longtime resident business enterprise." in both instances where the language appears..

**Exhibit 4**

_____     Councilmember

Page 2 of _2_

**Rationale:** This amendment clarifies the intent of the legislation to lower the threshold for a "small business enterprise" to also qualify as a "longtime resident business," while maintaining the 20 year requirement for businesses that are not small business enterprises to qualify as "longtime resident businesses.

ENGROSSED ORIGINAL

A BILL                                           1

16-506                                           2

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA        3

_____                                  4

To amend the Small, Local, and Disadvantaged Business Enterprise Development and Assistance     5
Act of 2005 to define a longtime resident business as a business that has been                  6
continuously eligible for certification as a local business enterprise or as a small business   7
enterprise for 10 consecutive years, and to require an agency evaluating proposals to           8
award 5 points for a local business enterprise, 5 points for a resident business enterprise,    9
and 10 points for a local business enterprises also certified as a small business enterprise   10
and an agency evaluating bids to grant a 5% price reduction for a local business               11
enterprise, a 5% price reduction for a resident business enterprise, and a 10% price           12
reduction for a local business enterprise also certified as a small business enterprise.        13

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this         14

act may be cited as the "Longtime Resident Business Definition Amendment Act of 2006".     15

Sec. 2.  The Small, Local, and Disadvantaged Business Enterprise Development and            16

Assistance Act of 2005, effective October 20, 2005 (D.C. Law 16-33; D.C. Official Code § 2-   17

218.01 *et seq.*), is amended as follows:                                                       18

(a) Section 2302(13) (D.C. Official Code § 2-218.02(13)), is amended by striking the       19

phrase "for 20" and inserting the phrase "or a small business enterprise, as defined in § 2332, for   20

10" in its place.                                                                               21

(b) Section 2343(a) (D.C. Official Code § 2-218.43(a)) is amended as follows:              22

(1) Paragraph (1) is amended as follows:                                                   23

1

ENGROSSED ORIGINAL

(A) Subparagraph (B) is amended by striking the word "Three" and inserting the word "Five" in its place.

(B) Subparagraph (C) is amended by striking the phrase "longtime resident business;" and inserting the phrase "small business enterprise that is also certified as a longtime resident business;" in its place.

(C) Add a new subparagraph (G) to read as follows:

"(G) Five points for a local business enterprise that is also certified as a longtime resident business enterprise.".

(2) Paragraph (2) is amended as follow:

(A) Subparagraph (B) is amended by striking the word "Three" and inserting the word "Five" in its place.

(B) Subparagraph (C) is amended by striking the phrase "longtime resident business;" and inserting the phrase "small business enterprise that is also certified as a longtime resident business;" in its place.

(C) Add a new subparagraph (G) to read as follows:

"(G) Five percent for a local business enterprise that is also certified as a longtime resident business enterprise.".

Sec. 3. Fiscal impact statement.

The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

2

ENGROSSED ORIGINAL

approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).     1

    Sec. 4. Effective date.     2

    This act shall take effect following approval by the Mayor (or in the event of veto by the     3

Mayor, action by the Council to override the veto), a 30-day period of Congressional review as     4

provided in section 602(c)(1) of the District of Columbia Home Rule Act, approved December     5

24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(1)), and publication in the District of     6

Columbia Register.     7

3

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Capitol Paving of D. C., Inc. | District of Columbia and Adrian M. Fenty, Mayor of the District of Columbia |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    **11001**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Douglas A. Datt, Esquire
Gavett and Datt, P. C.
15850 Crabbs Branch Way, Suite 180
Rockville, Maryland  20855
(301) 948-1177

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ◉ 4 | ◉ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ◉ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☒ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

42 USC, Section 1981, 1983 violations of Equal Protection clause of U. S. Constitution

**VII. REQUESTED IN COMPLAINT**  Declaratory/Injunctive Relief ☒  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23  **DEMAND $** _____  Check YES only if demanded in complaint  **JURY DEMAND:** YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE  1/17/2007    SIGNATURE OF ATTORNEY OF RECORD  _Douglas A. Datt_

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.