UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
CAPITOL PAVING OF D.C., INC.,                       )
                    Plaintiff,                      )
                                                    )
        v.                                          )  Civil Action No. 07-00113  (RJL)
                                                    )
DISTRICT OF COLUMBIA, *et al.*,                     )
                    Defendants.                     )
_____            )

## OPPOSITION OF DEFENDANTS
## TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Defendants District of Columbia and Mayor Adrian M. Fenty (collectively "the District" or "Defendants") oppose the motion of Plaintiff Capitol Paving of D.C., Inc. ("Plaintiff" or "Capitol") for a preliminary injunction ("PI").  The requested PI would enjoin Defendants from awarding preference points in the analysis of bids for government contracts for businesses located in the District for twenty years or more as required by the District of Columbia Small, Local, and Disadvantaged Business Enterprise Development and Assistance Act of 2005, D.C. Law 16-33 (effective October 20, 2005) ("the Act").  D.C. Official Code §§ 2-218.01 *et seq*. (2006).  In effect, Plaintiff seeks to preclude the issuance of both pending and future contracts incorporating such preference points in the analysis of the competing bids, including a much-needed contract for alley repair and rehabilitation that is presently undergoing administrative review before submittal to the D.C. Council for approval.

Defendants note that – whether measured by number of contracts or dollar amount of the contracts – only twenty (20) percent of D.C. Department of Transportation ("DDOT") contracts are subject to the Act because the funded exclusively with District of Columbia funds.  The other eighty

(80) percent are partially funded by the Federal Highway Administration with federal funds and are not subject to the Act.  Declaration of Jerry Carter at ¶¶ 3 and 4.

Defendants note that they filed a motion to dismiss under F.R. Civ. P. 12(b)(1) and 12(b)(6) on March 22, 2007.

## Parallel Proceedings in D.C. Courts

This is not the only civil action in which Plaintiff challenges the Act.  There are presently two appeals pending in the D.C. Superior Court from decisions of the D.C. Contract Appeals Board ("CAB").  In those decisions, the CAB, an administrative agency that decided contract disputes arising under the District's Procurement Practices Act, D.C. Official Code § 2-301.01 *et seq.* (2006) ("PPA").  In the first case (involving alley repair and rehabilitation), Capitol challenged the applicability of preference points provided for in the Act on non-constitutional grounds to a proposed contract award.  *Capitol Paving of D.C., Inc. v. D.C. Contract Appeals Board*, Superior Court Civil No. 2006 CA 08266 P(MPA).  In the second (involving street repair), Capitol challenged the applicability of the preference points on non-constitutional grounds to the issuance of a solicitation for bids.  *Capitol Paving of D.C., Inc. v. D.C. Contract Appeals Board*, Superior Court Civil No. 2006 CA 08817 P(MPA).

Capitol moved for a stay in each of those cases, equivalent to a PI.  In No. 008266, it moved to stay the award of the contract.  That motion was denied on March 15, 2007 (Attachment One).  Defendant submits that the Superior Court's findings, at least, on irreparable injury, harm to other parties, and public interest are entitled to preclusive effect here.

In No. 008817, a substantively identical motion to stay the decision of the CAB was granted as unopposed by a different Judge of the Superior Court.  Subsequently, the Court granted reconsideration of that stay order.  The two cases were then consolidated before a single Judge and

the question of whether there should be a stay in the second matter is currently pending before the Superior Court.

The CAB (the Respondent in the Superior Court appeals) intends to move to dismiss the second appeal as moot inasmuch as the underlying contract solicitation has been cancelled (Exhibit to Affidavit of Jerry Carter, appended as Attachment Two).

## Introduction

Plaintiff's asks this Court to declare invalid a provision in the District of Columbia Small, Local and Disadvantaged Business Enterprise Act of 2005 ("the Act"), D.C. Official Code §§ 2-218.01 et seq.  The Act provides preferences for small, local and disadvantaged businesses in the District's contracting and procurement process.  Plaintiff challenges one particular provision of the Act, which gives a "longtime resident" preference to any local business enterprise that has been in business in the District of Columbia for at least twenty consecutive years.  D.C. Official Code §§ 2-218.02(13).  The legislative history confirms that the purpose of this provision was to reward "a business' long-time dedication to the District" through "the poorest years of the local economy."  Complaint Exhibit 2 at 4 (Committee Report on Bill 16-506, the Longtime Resident Business Definition Amendment Act of 2006).  In considering amendments to the Act, a legislative committee report estimated that the worst years of the local economy did not end until at least fifteen years ago.  Id.

Plaintiff asserts that the challenged provisions of the Act violate Fifth Amendment equal protection principles because it has a disproportionate effect on minority-owned businesses.  To support this claim of a disparate effect, plaintiff alleges that there are "a significant number of minority-owned businesses," like itself, who have not been in existence for twenty years.  Complaint at ¶ 47.  Plaintiff's equal protection challenge is also based on a claim that the Act has

no rational basis.  In this regard, plaintiff claims that the longtime resident preference conflicts with a key purpose of the Act to stimulate and foster greater opportunities for local, small and disadvantaged business enterprises.  Complaint at ¶ 53.  Plaintiff's final constitutional claim is that the Act is impermissibly vague because of alleged ambiguities.  Complaint at ¶¶ 62-64.  Plaintiff also raises several challenges to the Act based on District of Columbia law:  (a) that the Act conflicts with the PPA, Complaint at ¶¶ 58-59); and that the District has violated the D.C. Administrative Procedure Act, as well as the D.C. Small, Local and Disadvantaged Business Enterprise Act of 2005, by failing to issues rules implementing the Act, Complaint at ¶ 66.

Plaintiff has moved for a preliminary injunction.  As demonstrated here, the motion should be denied.  There is little likelihood of success on the merits.  Absent an allegation of discriminatory purpose, plaintiff's claim that the Act has a disproportionate effect on minorities fails to state an equal protection violation.  Plaintiff similarly fails to show that the statute violates equal protection because the District, as a market participant contracting for services, has a rational basis for providing preferences to longtime resident businesses.  Legislation such as this easily withstands rational relationship review.  The constitutional void-for-vagueness doctrine is not implicated here, because the Act has no application to the plaintiff.  Since the federal claims are properly dismissed, this Court lacks supplemental jurisdiction over the remaining local law claims.  On the question of irreparable harm, the D.C. Superior Court has already determined that on the facts presented to it by Plaintiff, similar to those presented here, there is no irreparable harm.  That finding is entitled to preclusive effect.  Moreover, Plaintiff has not met the very high level of proof for irreparable injury – it has not shown that it will be put out of business.  Finally, there will be substantial harm to the Defendants by the preliminary

injunction sought – it will effectively preclude the District from going forward with a much needed alley repair and reconstruction program.

### Facts

This government contracts matter had its genesis in two Invitations for Bids ("IFB") issued by the D.C. of Contracting and Procurement ("OCP"). They are described separately.

**The Alley Repair / Rehabilitation Matter.**  The first IFB was for a proposed multi-million contract to repair and rehabilitate alleys throughout the District for a period of five years (one year with four option years).  The proposed contract would be funded solely by District of Columbia funds and would be administered by the D.C. Department of Transportation ("DDOT").  Capitol and Fort Myer Construction Corp. ("Fort Myer"), among others, bid on the contract.  Capitol was the nominal low bidder.  However, after application of the statutorily-required preference points for long-time resident businesses and for local business enterprises under the Act, Fort Myer became the low bidder.  See Affidavit of Jerry Carter, attached.

Bid opening was June 1, 2006.  After evaluation of the bids and application of the preference points to these two bidders, Fort Myer was found to be the low bidder.  Capitol was notified of this on June 7, 2006.

Following bid opening, Capitol initiated a bid protest [1] at the CAB to challenge the award of the proposed contract to Fort Myer.    The basis of the protest was award of preference points to Fort Myer.  The CAB, however, upheld the decision to award the contract to Fort Myer

---

[1]    "Bid protest" is a term of art in government contracting.  It generally refers to (1) a challenge to the issuance of an invitation for bids or a request for proposals by a government agency and (2) a challenge to the award or proposed award of a contract.  See D.C. Official Code § 2-309.08 (2006) for bid protest procedures at the CAB.  A bid protest must be distinguished from a contract "claim," which generally deals with questions of contract performance by either the government or a contractor, requests for contract adjustments, etc.

holding that OCP had acted properly in evaluating the bids and refusing to review whether the Small, Local Business Opportunity Commission ("SLBOC") had erred in certifying Fort Myer as a long time resident business. Protest of Capitol Paving of D.C., Inc, CAB No. P-0736 (Oct. 12, 2006). Capitol then filed a Petition for Review of the CAB's decision with the Superior Court. Capitol Paving of D.C., Inc. v. D.C. Contract Appeals Board, Superior Court Civil No. 2006 CA 08266 P(MPA). The appeal seeks review and reversal of the CAB's decision regarding Fort Myer's entitlement to the preference points. That appeal is pending.

As noted above, a motion for stay of award of the contract was filed with the petition for review. On March 15, 2007, the Superior Court (Judge Wright) denied that motion. Attachment One.

The Court has scheduled no further proceedings in the case until June 2007 because of concerns about any preclusive effects of any rulings by this Court.

Funding for this proposed contract has only recently been secured despite the best efforts of the DDOT. Declaration of Jerry Carter. Because the contract will be for a million dollars or more, it must be submitted to the D.C. Council for approval before it can be awarded. OCP intends to submit the proposed contract to the Mayor for transmission to the Council as soon as possibly, preferably within the next several weeks. Id. Assuming that the Council does not disapprove the contract, OCP will formally issue the Contract shortly thereafter and work will commence as soon as possible. Id.

**The Street Repair Matter.** On July 28, 2006, OCP issued IFB No. POKA-2006-B-0090-LJ for a contractor to street repair services consisting of joint seal, slurry seal, and bituminous surface treatment to repair cracks in roadways in the District. This contract would also be

funded exclusively by District funds and would be administered by the DDDOT.  Bid opening was initially scheduled for August 31, 2006.  See Exhibit 6 to Plaintiff's Motion.

On August 15, 2006, Capitol filed a bid protest asserting two defects in the IFB.  First, it asserted that there was no reference in Attachment J.7 of the IFB to a certification for resident-owned or longtime resident businesses.  Second, it objected to the evaluation factors in the IFB, in particular the award of preference points under the Act because there were no implementing regulations and because any certification under the Act could not be applicable until 2012.  That is, the second ground is identical to the ground for challenge to the alley repair solicitation.

On August 21, 2006, OCP issued Amendment No. 2 to the IFB, deleting Attachment J.7.  On August 21, 2006, OCP issued amendment No. 3 which extended the bid opening date to January 10, 2007.  See Exhibit 6 to Plaintiff's Motion.

On November 9, 2007, the CAB issued its decision on the bid protest.  Protest of Capitol Paving of D.C., Inc., CAB No. P-0741.  The CAB at decision held that the issue regarding Attachment J.7 been rendered moot by Amendment No. 2.  The decision further rejected the claims based on the Act in light of its recent decision in the alley repair case.  Exhibit 6 to Plaintiff's Motion.

Once again, Capitol appealed to the Superior Court and moved for a stay of the CAB decision and order.

On January 10, 2006, bids were opened.  Capitol was not a bidder.  See Attachment to Declaration of Jerry Carter.

On February 13, 2006, the Superior Court (J. Leibovitz), noting that Respondent had not filed a response to the motion, granted the motion to stay as unopposed.  On March 16, 2006, Judge Leibovitz granted a motion for reconsideration and then transferred the matter to Judge

Wright for consolidation with the other Capitol Paving appeal.  The motion for stay is pending before Judge Wright.

The Court has scheduled no further proceedings in the case until June 2007 because of concerns about any preclusive effects of any rulings by this Court.

In any event, this matter has become moot because the Chief Procurement Officer of the District of Columbia has formally withdrawn the IFB for this contract.  Attachment to Carter Declaration.  This IFB, therefore, can never mature into a government contract.  (The District intends to move to dismiss the Superior Court appeal based on this contract shortly.)

## Argument

### A.     THE STANDARDS FOR A PRELIMINARY INJUNCTION.

In order to obtain a preliminary injunction, a plaintiff must demonstrate *each* prong of the familiar four-part test: (1) that there is a substantial likelihood of success on the merits; (2) that plaintiff will suffer irreparable harm should the relief be denied; (3) that a preliminary injunction would not substantially injure other interested parties; and (4) that the public interest will be furthered by the issuance of the requested order.  E.g., Mova Pharmaceuticals Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998); CityFed Financial Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995); District of Columbia v. Group Insurance Administration, 633 A.2d 2, 21–24 (D.C. 1993) (preliminary injunctions on government contract matters under District of Columbia law).

While a strong showing on one of the four factors may make up for a weaker showing on another, Serono Labs. v. Shalala, 158 F.3d 1313, 1318 (D.C. Cir. 1998), a particularly weak showing on one factor may be more than the other factors can "compensate" for.  Taylor v. RTC, 56

F.3d 1497, 1506 (D.C. Cir. 1995), amended on other grounds on reh'g., 66 F.3d 1226 (D.C. Cir. 1995).

A preliminary injunction "is an extraordinary remedy, and the trial court's power to issue it should be exercised only after careful deliberation has persuaded it of the necessity for the relief." Wieck v. Sterenbuch, 350 A.2d 384, 387 (D.C. 1976). Such relief should be granted sparingly. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (a preliminary injunction is "an extraordinary and drastic remedy"); Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004) ("A preliminary injunction is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion.").

When injunctive relief is sought in an area that affects government operations, as the request does here, the court must be particularly cautious. The court must give "serious weight to the obviously disruptive effect which the grant of temporary relief . . . is likely to have on the administrative process." Sampson v. Murray, 415 U.S. 61, 83 (1974). See also District of Columbia v. Group Insurance Administration, 633 A.2d at 21. "In the field of government procurement the courts must be sedulous to heed the admonition that their authority to vacate and enjoin action that is illegal must be exercised with restraint les[t] the courts fall into the error of supposing that they may revise 'action simply because [they] happen to think it ill-considered, or to represent the less appealing alternative solution available.' " M. Steindahl & Co. v. Seamans, 147 U.S. App. D.C. 221, 230-31, 455 F.2d 1289, 1298-99 (1971), quoting Calcutta East Coast of India and East Pakistan/ U.S.A. Conference v. Federal Maritime Commission, 130 U.S. App. D.C. 261, 264, 399 F.2d 994, 997 (1968).

**B.    APPELLANT HAS FAILED TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS.**

**1.    Plaintiff Fails to State a Violation of Constitutional Equal Protection Based on Disparate Impact, Count I.**

Plaintiff's allegation that the Act has a disproportionate impact on minority-owned businesses fails to state a violation of constitutional equal protection. The challenged statute admittedly does not create any racial suspect classification. Moreover, there is no allegation that the legislature had a racially discriminatory purpose in enacting the statute. Plaintiff merely claims that the statute has a racially disproportionate effect. The Supreme Court, however, has long refused to hold "that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another." Washington v. Davis, 426 U.S. 229, 242 (1976). As a result, "it [is] clear that official action will not be held unconstitutional solely because it results in a racially disproportionate impact." Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-65 (1977). Rather, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Id. at 265. Because Capitol does not allege that the D.C. Council acted with a racially discriminatory intent, plaintiff's claim that the legislation has a disparate effect on minorities fails to state an equal protection violation.

**2.    Plaintiff Fails to State a Violation of Constitutional Equal Protection Because the Challenged Statute Has a Rational Basis, Count II.**

A statutory classification challenged under the equal protection component of the Due Process Clause of the Fifth Amendment must be upheld if it is "rationally related" to a legitimate government purpose unless the classification discriminates against a suspect class or interferes

with the exercise of a fundamental right.  See, e.g., Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 457-58 (1988).  Capitol, however, concedes that the statutory classification based on length of residence does not target a suspect class or implicate a fundamental right.  As a result, there is no dispute that the rational basis test applies to the challenged statutory provision.

Under rational basis review, a legislature is not obligated to articulate the basis for any classification.  Heller v. Doe, 509 U.S. 312, 320 (1993).  Instead, a classification "is accorded a strong presumption of validity" and "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Id. at 319; FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). Accord Hodel v. Indiana, 452 U.S. 314, 332-33 (1998) (legislation has a "presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality").  A legislature thus "has no obligation to produce evidence to sustain the rationality of a statutory classification," and "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."  Heller, 509 U.S. at 320 (emphasis added).  "The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."  Lenhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973) (emphasis added).  Finally, "rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices' " and does not "authorize 'the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations[.]' "  Heller, 509 U.S. at 319, quoting Beach Communications, 508 U.S. at 313, and New Orleans v. Dukes, 427 U.S. 297, 303 (1976) (per curiam).

Through the Act's provisions, the District is acting as a participant in the free market by deciding with whom it wishes to contract for services. "To the extent that a state is acting as a market participant, it may pick and choose its business partners, its terms of doing business, and its business goals – just as if it were a private party." SSC Corp. v. Town of Smithtown, 66 F.3d 502, 510 (2d. Cir. 1995). The Supreme Court has long instructed courts to give great deference to state and local governments in this area. State and local governments, like any private business, "should similarly share existing freedoms from federal constraints," including "the long recognized right of trader or manufacturer, engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." Reeves, Inc. v. Stake, 447 U.S. 429, 438-39 (1980), quoting United States v. Colgate & Co., 250 U.S. 300, 307 (1919).

Judicial deference is particularly warranted in government contracting because of "the role of each State as guardian and trustee for its people." Id. at 438 (internal citations omitted). When a government acts as a market participant, "the adjustment of interests in this context is a task better suited for [the legislature] than this Court." Id. at 439; accord White v. Massachusetts Council of Constr. Employers, 460 U.S. 204 (1983) (applying same principles when a local government acts as a market participant).

The challenged statutory provision easily satisfies rational basis review. The provision, which awards a "longtime resident" preference in the District's contracting and procurement process, has an obvious and legitimate rationale: to reward "a business' long-time dedication to the District" through "the poorest years of the local economy." Complaint Exhibit 2 at 4. In rewarding a business' longtime dedication to the District, the Council could also have believed it was securing the future vitality of the local economy. In the event of another economic

- 12 -

downturn, the longtime resident preference would be an incentive for businesses to remain in the District.  Because the legislature could have conceivably concluded that the poorest years of the local economy occurred at least fifteen years ago, the legislature could also rationally award a longtime resident preference to a local business that had been operating in the District for at least twenty consecutive years.  Courts have repeatedly found a rational basis for similar legislative judgments awarding preferences to its residents where the government acts as a market participant.  See Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 810-14 (1976) (rejecting an equal protection challenge, based on rational basis review, to a statute that favored in-state scrap processors); Red River Service Corp. v. City of Minot, 146 F.3d 583, 590-91 (8th Cir. 1996) (holding that city's decision "to no longer accept municipal solid waste from anyone but its residents and existing customers is rationally related to its goal of preserving the . . . landfill for its residents").

New Orleans v. Dukes, 427 U.S. at 297, is particularly illustrative because it involved an ordinance granting a preference to longtime businesses, a preference whose effect was far more draconian than the one here.  The City of New Orleans enacted an ordinance that forbade vendors from selling foodstuffs from pushcarts in the French Quarter unless they had been in business for at least eight years at the time that the ordinance came into effect.  Nancy Dukes had operated a pushcart selling foods for two years and, thus, was faced with the loss of her livelihood under the ordinance.  She brought an equal protection challenge to the ordinance.  The Supreme Court upheld the ordinance.  As it said in its per curiam decision:

> When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. [citation omitted.]  Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions as race, religion, or alienage, our decisions presume the constitutionality of the statutory

discrimination and require only that the classification challenged be rationally related to a legitimate state interest.

New Orleans v. Dukes, 427 U.S. at 303.

Although Plaintiff does not specifically ask this Court to substitute its own judgment for that of the Council, Capitol complains that the Act awards too much of a preference to longtime resident businesses and that the amount of time necessary to qualify for the preference – twenty consecutive years in business – is too long. These issues are certainly debatable, and they continue to be the subject of *legislative* debate. See Complaint at ¶¶ 32-36, Exhibit 2. Of course, that is exactly the point – the amount of the preference and the length of time necessary to qualify for the preference are quintessential policy judgments entrusted to a democratically-elected legislature. "[T]he judiciary may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations." Dukes, 427 U.S. at 303.

Similarly, plaintiff misses the mark in claiming that the "longtime resident" preference conflicts with the overall purposes of the Act. Plaintiff's attempt "to prove that the government's actions were inimical to its intentions . . . is not the proper approach." Smith Setzer & Sons v. South Carolina Procurement Review Panel, 20 F.3d 1311, 1323-24 (4th Cir. 1994). Rather, the only question for rational basis review is whether "there is no reasonable conception" that could justify the government's action. Id. Plaintiff fails this extremely demanding test.

Because there is "no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market," Reeves, 447 U.S. at 437, and because the plaintiff cannot negate "every conceivable basis" that might support the challenged statutory provision, Lenhausen, 410 U.S. at 364, plaintiff cannot prevail on an equal protection challenge under a rational basis review.

**3.      The Act Is Not Unconstitutionally Void for Vagueness, Count IV.**

In a void for vagueness challenge, a court must assess whether a statute "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."  United States v. Barnes, 295 F.3d 1354, 1366 (D.C. Cir. 2002), quoting United States v. Lanier, 520 U.S. 259, 266 (1997).  Where, as here, plaintiff makes a facial challenge to a law in a case not implicating First Amendment rights, plaintiff must show that the law "is impermissibly vague in all its applications."  Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982); Navegar, Inc. v. United States, 103 F.3d at 1001-02 (a statute is impermissibly vague on its face only if "it is capable of no valid application").

The void for vagueness doctrine is inapplicable in the present case.  Capitol does no more than assert that the statute is impermissibly vague because it does not explain *how* a business is formally certified as a "longtime resident" and is unclear on how this particular preference is applied in conjunction with other statutory preferences in certain situations.  Complaint at ¶¶ 62-64).  Plaintiff's void for vagueness challenge fails, though, because the statutory provision does not either "forbid or require" plaintiff to do anything under threat of civil or criminal penalty. Barnes, 295 F.3d at 1366.  Indeed, plaintiff acknowledges that it is not eligible for the "longtime resident" preference, so it has no application to the plaintiff at all.  By the same token, plaintiff also cannot show that the statute is impermissibly vague "in all its applications."  Village of Hoffman Estates, 455 U.S. at 495.  In addition, plaintiff undoubtedly has the ability "to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process."  Id. at 498.  Thus, plaintiff's void for vagueness challenge fails.

### 4.   This Court Lacks Supplemental Jurisdiction Over Any Remaining Local Law Claims, Counts III and V.

Because plaintiff's federal claims should be dismissed, this Court lacks supplemental jurisdiction over any remaining local law claims. When federal and local claims derive from a common nucleus of operative fact, the claims constitute a single case or controversy within the jurisdiction of the federal courts. Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552-53 (2005); United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367. Laws applicable exclusively to the District of Columbia are not federal law for jurisdictional purposes, see 28 U.S.C. §§ 1331, 1366, "so any claims based on those laws are necessarily local." Decatur Liquors, Inc. v. District of Columbia, ____ F.3d ____, 2007 U.S. App. LEXIS 4240, at *5, 2007 WL 581821 (D.C. Cir. Feb. 27, 2007). Thus, the plaintiff's claims under the Act, the PPA, and the D.C. administrative Procedures Act are local law claims (Counts III, V).

This Court cannot entertain supplemental jurisdiction over plaintiff's local law claims unless, at a minimum, there is a "substantiality of the federal claims." Id., citing Gibbs, 383 U.S. at 725. As demonstrated above, Capitol's federal claims are insubstantial and should be dismissed. "Certainly, if the federal claims are dismissed before trial, the state claims should be dismissed as well." Gibbs, 383 U.S. at 726. As a result of the dismissal of the federal claims, this Court lacks supplemental jurisdiction over the local law claims. Decatur Liquors, 2007 U.S. App. LEXIS 4240, at *9-10. This Court should therefore dismiss any remaining local law claims without prejudice to resolution in the proper forum.

Nevertheless, and out of an abundance of caution, the Defendants respond below briefly to Capitol's District of Columbia law arguments.

### 5.    There Is No Likelihood of Success on the District of Columbia Law Based Claims.

Capitol's preliminary injunction motion raises to assertions of violations of local law: first, that the Act is inconsistent with the PPA (motion at 26-28) and, second, that the application of the Act to the contracts at issue here is in violation of the District of Columbia Administrative Procedure Act ("APA") (motion at 33-35). Neither assertion requires extended discussion.

Before addressing those issues however, it must be noted that the D.C. Superior Court, in Capitol Paving of D.C., Inc. v. D.C. Contract Appeals Board, No 2006 CA 008266 P(MPA), determined that there was little likelihood of success on the merits on challenges to the Act on District of Columbia law grounds. [2] Order of March 15, 2006 (attached as Attachment One). That conclusion was based on a full and fair proceeding in which Capitol was able to present all of the evidence and arguments that it chose on this identical issue. That determination is entitled to significant weight.

As to the alleged inconsistency between the Act and the PPA, little needs to be said. The D.C. Council determined to enact the Act, even in view of the asserted "policy" statements in the PPA. Thus, since it did not determine to repeal any of the PPA's policy provisions that Capitol cites, there is no reason to believe that, as legislative goals, those policy provisions were deemed by the Council to be in any way in legal conflict with the provisions challenged by Capitol. Moreover, Capitol's claim of inconsistency is not based on any of the substantive provision of the PPA; rather is based on the statements of policy considerations of the PPA. Even if there were some inconsistency between the PPA and the Act, under normal tenets of statutory construction, the Act, being the more recent enactment, would be deemed to have supplanted the former.

---

[2]     Defendant notes that in that Superior Court matter, Capitol expressly argued that the application of the Act to the contract at issue violated the District's APA for the same reasons asserted here. However, it did not assert that the Act was inconsistent with the PPA.

As to the APA issue, Capitol's assertion is that the Act may not be applied to the contracts at issue because implementing regulations, required under the Act, have never been promulgated in conformance with the notice and comment provisions of the APA. Capitol's unstated argument is that in the absence of such regulations, no government agency could implement the provisions of the Act and the statutory preferences would be excluded from consideration.

Capitol's novel conclusion does not follow because it would require violation of the statute. At the time of the IFBs at issue, the applicable law *required* consideration of Longtime Resident Business status of bidders and provided for the award of preference points for firms that had achieved that status. OCP, even in the absence of regulations, had no discretion in this matter; it could not simply choose to disregard the law and to decline to award the preference points required by the law. The absence of implementing regulations – no matter how advisable such regulations might be and no matter that they are required by statute – simply cannot have the effect of nullifying the statutory requirement that such points be awarded. Moreover, since regulations are issued by the Executive, Capitol's argument raises significant separation of powers issues. Accordingly, regardless of whether any implementing regulations had been issued, the provisions of the statute are mandatory and OCP could not simply, as Plaintiff would have it do, disregard the law.

## C.    APPELLANT HAS FAILED TO DEMONSTRATE IRREPARABLE INJURY.

It is well recognized that there is a very high threshold for irreparable injury in a business context. " '[E]conomic loss does not, in and of itself, constitute irreparable harm,' unless the 'loss threatens the very existence of the movant's business.' " District of Columbia v. Group Insurance Administration, 633 A.2d at 22-23, quoting Wisconsin Gas Co. v. Federal Energy Regulatory Commission, 244 U.S. App. D.C. 349, 354, 758 F.2d 669, 674 (D.C. Cir. 1985).

"[C]ourts have denied injunctive relief to bid protestors who cannot show any potential injury more serious than mere pecuniary loss." <u>District of Columbia v. Group Insurance Administration</u>, 633 A.2d at 23 and cases cited therein.

In the first place, Defendant notes that the issue of irreparable injury resulting from the implementation of the Act was specifically at issue before the D.C. Superior Court in <u>Capitol Paving of D.C., Inc. v. D.C. Contract Appeals Board</u>, No 2006 CA 008266 P(MPA). By order of March 15, 2006 (attached as Attachment One), the Court found that there was no irreparable injury. That conclusion was based on a factual showing similar to the one here and is entitled to preclusive effect.

The only difference between the Superior Court facts and the ones here is that in its motion before this Court – and, in obvious recognizing the very high threshold for irreparable injury – Capitol asserts that it will be irreparably injured because it could not complete for new business with the District of Columbia and it would be forced out of business. Motion at 35-38. Neither the motion nor the affidavits submitted with it, however, even attempt to prove that Capitol will be put out of business as a result of the Act. If nothing else, Capitol's assertions must fail because they are no more than self-serving conclusions that have no basis in any admissible evidence provided to the Court in support of the motion; the Court is asked to take the word of Capitol that it will be forced from business.

It is simply incorrect for Capitol to state that it is precluded from contracting with the District by reason of the Act's preference points. Fully 80 percent of DDOT contracts – whether measured by number of contract or by total value of contracts – are not covered by the Act. As set forth in the Declaration of Jerry Carter, Agency Chief Contracting Officer for DDOT, 80 percent of DDOT street and highway contracts (paving, repairs, reconstruction, bridge and tunnel repair and

maintenance, etc.) receive funding from the Federal Highway Administration (FHA) and the preference points for Longtime Resident Business are not applicable to contracts with FHA financial participation. Carter Declaration at ¶¶ 2 and 3. Thus, even if Capitol were correct that it cannot compete where the preference points are awarded, it still may compete for the far larger share of D.C. contracts that are not covered by them.

As Mr. Carter further notes, Capitol is sometimes the successful bidder for such contracts. It presently is performing on contracts with the District of a value of approximately $14 million and it will be performing on a subcontract with a District contractor worth an addition $4 million starting in mid-April of this year. Carter Declaration at ¶¶ 5 and 6.

In these circumstances, it cannot be concluded that Capitol has met its very exacting burden of demonstrating the facts of irreparable harm.

In any event, regardless of whether or not a PI is issued, it will have no effect on the relief to which Capitol might be entitled and the requested PI will provide no business benefit to Capitol. A stay of the award of the contract (which is effectively what this PI motion seeks) is not relief to which Capitol is entitled under District law for two separate reasons. First, under the applicable provisions of the PPA, a party that successfully challenges an IFB is not entitled to an order enjoining a contract award. D.C. Official Code § 2-309.09(f)(1) (2006). Instead, and if to underline that injunctive relief is to be issued on in "rare circumstances," the PPA provides for a temporary, automatic stay of the award, but only during the pendency of the CAB proceeding. D.C. Official Code § 2-309.08(c)(1) (2006). [3] Second, the PPA provides for specific, enumerated relief for firms that are successful in their bid protests: termination of the contract that was awarded for the convenience of the government, D.C. Official Code § 2-309.08(f)(1) (2006), and bid or proposal

---

[3]    That stay of award may be lifted upon a proper determination by the Chief Procurement Officer. D.C. Official Code § 2-309.08(c)(2) (2006),

preparation costs and costs of pursuing the successful protest.  D.C. Official Code § 2-309.08(f)(2) (2006).

Just as important, if Capitol is successful, it cannot be automatically awarded the contract. Rather, OCP would have to evaluate the various bids without application of preference points and light of all of the other contractual standards and to re-award the contract to the lowest responsive, responsible bidder (responsiveness and responsibility are terms of art in government contracting) that is determined at the conclusion of that new bid evaluation.  There is no legal requirement or guarantee that the protesting firm would be the new contract awardee, although that is often the case.  Thus, if Capitol is successful, it can still obtain exactly the same exclusive remedies it is provided under the PPA and cited above, termination for convenience and bid preparation costs. D.C. Official Code § 2-309.08(f)(1) and (f)(2) (2006).

Finally, assuming arguendo that it is ultimately determined that the above remedies are not exclusive and that Capitol were to be found to have been entitled to this contract ab initio, it can be made whole by money damages equivalent to the amount of its lost profits (the usual measure of damages for breach of contract).  Where money damages are available, injury is rarely irreparable. E.g., Sampson v. Murray, 415 U.S. at 89-90; Virginia Petroleum Jobbers Ass'n. v. Federal Power Commission, 104 U.S. App. D.C. at 110, 259 F.2d at 925.("[T]he possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weights heavily against a claim of irreparable harm.")

D.    THE REQUESTED PRELIMINARY INJUNCTION, IF ISSUED, WILL SUBSTANTIALLY HARM THE DISTRICT OF COLUMBIA AND THE PUBLIC INTEREST.

The final considerations are harm to other parties and to the public interest if injunctive relief is granted.  Defendant submits that the two factors should be considered as one in this instance.

As noted above, the purpose of this contract is to begin a five-year process of repair and rehabilitation of District of Columbia alleys.  The process will involve approximately $20 million over those five years.

While the District acknowledges that the bids were opened on June 1, 2006, the inability of the government to go forward with contract award has been caused by two factors.  First, during the pendency of the CAB proceeding, there was an automatic stay of award of the contract.  D.C. Official Code § 2-309.08(c)(1) (2006).  While, as noted, the automatic stay may be vacated upon a proper determination by the Chief Procurement Officer, that avenue was not available here as a factual matter because funding for the project had not yet been confirmed.  Thus, regardless of whether it would have been otherwise appropriate to seek to lift the stay, the absence of funding would make any such lifting of the stay meaningless as the contract could not have gone forward.  That stay, by operation of law, was lifted on October 12, 2006, the date of the CAB's decision.

As noted in the attached Declaration of Jerry Carter, funding for this contract funding has finally been secured.  Id. at ¶ 17.  The contract is now undergoing administrative review with the government and, assuming that there are no problems with it, the intends to go forward with this project as quickly as possible and to submit this proposed contract to the D.C. Council, through the Mayor's Office, within few weeks.  Id. at ¶ 17.

The Carter Affidavit details why the District needs to go forward with this contract now that the funding has been confirmed.  Carter Affidavit at ¶¶ 19-30.  There is significant quantity of repair work that needs to be done.  The difficulty of the repair work increases and the cost of any

individual piece of repair work become more expensive the longer the alley is permitted to deteriorate before the work is done. <u>Id.</u> at ¶¶ 20-23. Deteriorated alleys cause trash truck and other government vehicles to move more slowly through alleys, increasing the government's costs for trash collection and other government activities. It increases the government truck maintenance costs and shortens the life of government vehicles. <u>Id.</u> at ¶¶ 24 and 25. It also impedes police responses to emergencies and makes routine police patrol more difficult. <u>Id.</u> at ¶ 26. Finally, deteriorated alleys impede alley cleaning and this can provide breeding grounds for insects and permits pests to accumulate. <u>Id.</u> at ¶ 28.

Carter concludes that it is in the public interest for the contract to be awarded as quickly as possible and to go forward as quickly as possible. <u>Id.</u> at ¶ 30.

In sum, there will be significant adverse effects, both monetary and nonmonetary, to the government and to the public interest of repairing the District's public infrastructure if the PI were to be granted and the final two factors of the four-factor test strongly militate against granting the relief requested.

**Conclusion**

For all of the foregoing reasons, the motion for a preliminary injunction should be denied.


Dated: March 29, 2007

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division



  /s/  Kimberly M. Johnson
KIMBERLY MATTHEWS JOHNSON
Chief, Section 1
DC Bar No. 435163



  /s/  Jack M. Simmons, III
JACK M. SIMMONS, III
Assistant Attorney General
DC Bar No. 925420
441 Fourth St., NW, Sixth Floor South
Washington, DC  20001-2714
(202) 724-6653
(202) 727-0431   (fax)
jack.simmons@dc.gov
Attorney for Defendant

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| | ) | |
| CAPITOL PAVING OF D.C., INC., | ) | |
| Petitioner, | ) | Civil No. O6-08266 |
| | ) | Cal. 13  – Judge Wright |
| v. | ) | |
| | ) | Next event: |
| D.C. CONTRACT APPEALS BOARD, | ) | Initial Scheduling Conference |
| Respondent. | ) | March 2, 2007, 9:30 am |

### ORDER

Upon consideration of the motion of Petitioner for a stay of the award of the contract at issue in this appeal from the decision of the Respondent D.C. Contract Appeals Board in Protest of Capitol Paving of D.C., Inc., CAB No. P-0736 (Oct. 12, 2006), the submissions of Petitioner, Respondent, and Intervener, and the entire record herein, the Court finds (1) that Petitioner had not demonstrated a likelihood of success on the merits, (2) that petitioner has not demonstrated irreparable injury, and (3) that the considerations of harm to Respondent and to the public interest if the requested stay were to be granted strongly militate against the stay.  Therefore, it is, by the Court, this 15th day of March 2007, hereby

ORDERED that Petitioner's Motion for Stay of Award of the Contract be, and hereby is, DENIED for the reasons stated in open court on March 15, 2007.


_____

Melvin R. Wright, Associate Judge

Copies E-Filed to:

Jack M. Simmons, III
Assistant Attorney General
441 Fourth St., NW, Sixth Floor South
Washington, DC 20001-2714

Douglas A. Datt, Esq.
Gavett & Datt, PC
Suite 180
15850 Crabbs Branch Way
Rockville, MD 20855

Christopher Kerns, Esq.
Vice President and General Counsel
Fort Myer Construction Corp.
2237 Thirty-Third St., NE
Washington, DC 20018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITOL PAVING OF D.C., INC.,<br>Plaintiff, | )<br>)<br>) |
| v. | )<br>) Civil Action No. 07-00113 (RJL) |
| DISTRICT OF COLUMBIA, *et al.*,<br>Defendants. | )<br>)<br>)<br>) |

## DECLARATION OF JERRY CARTER

I, JERRY CARTER, based upon my personal knowledge, information and belief, hereby depose and state as follows:

1. I am a Contracting Officer, employed by the D.C. Office of Contracting and Procurement ("OCP"). I am the Contracting Officer for the D.C. Department of Transportation and have held that position since May 2003.

2. For street and alley projects, the District issues two kinds of contracts – those with federal funding participation from the Federal Highway Administration ("FHA") and those without federal funding participation, i.e., those that are funded solely by the District of Columbia.

3. FHA contracts are about 80 to 85 percent of the street and highway contracts, both in number and in dollar value, value, entered into each year for DDOT. Stated otherwise, about 15 to 20 percent of the contracts, both by number and by value, are funded solely by District of Columbia funds without FHA participation.

4. Capitol Paving routinely bids on contracts that have FHA participation and on contracts that do not have such participation.

5. Capitol is currently the prime contractor on contracts with federal financial participation whose aggregate value is approximately $ 13.9 million as follows: Capitol was awarded a prime contract on August 21, 2006, for the resurfacing of Rhode Island Ave, NE ($1,798,673.75). It was awarded a prime contract on July 6, 2006, for the resurfacing of Florida Ave., NW ($4,883,321.70). It was awarded a prime contract on November 29,2006, for the reconstruction of P St., NW, near Dupont Circle ($3.207,153). It was awarded a prime contract on November 29,2006, for the rehabilitation of Fourth St., NW, Florida Ave. to W St. ($4,046,608).

6. Capitol is also currently a subcontractor on one contract (the city-wide paving contract) and Capitol's subcontract is valued at approximately $ 4 million. Lane Construction, the prime contractor, submitted Capitol as a subcontractor to fulfill its local, small, disadvantaged business obligations under the contract.

7. The District of Columbia issued invitation for bids No. POKA-2005-B-0015-LS ("IFB") on March 3, 2006, seeking bids for a contract for the repair and rehabilitation of alleys throughout the District of Columbia. The contract would be for one year with four option years.

8. The contract will have a value of approximately four million dollars the first year. If the contract options are exercised by the government, the value of each option year will also be approximately four million dollars. The contract will be paid for solely with District of Columbia funds.

9. Among other things, the IFB recited that the award of the contract would be subject to the provisions of the District of Columbia Small, Local, and Disadvantaged Business Enterprise Development and Assistance Act of 2005, D.C. Law 16-33 (effective October 20, 2005) ("the Act"). Under that Act, preference points in bid evaluation would be granted, among other things, to

long-time resident businesses and other preference points would be awarded to local business enterprises as certified by the D.C. Small, Local, Business Opportunity Commission ("SLBOC").

10.     The Act and the preference points are applicable only to IFBs and contracts that are funded exclusively with District of Columbia funds. The Act and the preference points are not applicable to any contract in which there is financial participation by the FHA.

11.     The District of Columbia issued IFB No. POKA-2006-B-0090-LJ on July 28, 2006, seeking bids for a contractor to provide joint seal, slurry seal, and bituminous surface treatment to repair cracks in roadways in the District. The contract would be paid for solely with District of Columbia funds. Like the alley repair and rehabilitation contract, the IFB recited that the award of the contract would be subject to the provisions of the Act. Bids for this contract were opened on January 10, 2007.

12.     Subsequent to bid opening, on March 22, 2007, OCP has determined to cancel this solicitation. (The Determination to Cancel the IFB is attached). Accordingly, no contract will arise out of IFB No. POKA-2006-B-0090-LJ.

13.     The bid closing date for the IFB on the alley repair and rehabilitation contract was May 26, 2006. Fort Myer Construction Corp. ("Fort Myer") and Capitol Paving of D.C., Inc. ("Capitol Paving") submitted bids.

14.     Capitol Paving submitted the lowest bid. However, after the application of preference points required by the Act, the lowest priced bidder was Fort Myer.

15.     Because this contract is for a million dollars or more, it must be submitted to the D.C. Council for approval before it can be awarded. If the Council fails to disapprove a proposed contract for more than a million dollars within the statutory period, the contract may be awarded.

16.    OCP intended to submit this proposed contract the D.C. Council shortly after bids were received and evaluated. However, funding for the proposed contract was not available at that time because existing funds remaining in the FY-06 budget was urgently needed for snow removal activities as DDOT was preparing for the upcoming winter.

17.    Funding is now available for this Contract. The proposed contract is presently undergoing administrative review within the government. If there are no problems with the proposed contract, it will be submitted to the Mayor within several weeks for transmittal to the Council for Council review.

18.    The D.C. Department of Transportation wants this contract in place as quickly as possible.

19.    There is a great need for the work to be covered by this contract. Many alleys throughout the District are in need of significant repair work or reconstruction.

20.    The longer any particular deterioration in an alley is allowed to persist, the more serious it becomes, especially during winter months. For example, a simple pothole may only require an asphalt or concrete pour to repair it. However, with the passage of time, the pothole gets bigger and deeper and repairs become more expensive just for the asphalt or concrete pour.

21.    The bigger and deeper a pothole becomes, the more difficult the repair comes. Thus, it frequently becomes necessary to excavate and repair the underlying base of the alley before concrete or asphalt pours may take place. Such work is far more expensive on a per unit basis.

22.    Especially during the winter, if repair work is not done immediately, the pothole – and for that matter, any other deterioration of an alley – becomes bigger and deeper much faster than during the summer months.

23.    As potholes or other alley deteriorations become bigger and deeper, the cost of each repair rises rapidly. Thus, if there is only a fixed sum of money available for repairs, the longer potholes and other deteriorations are allowed to persist, the fewer potholes or deteriorations can be repaired for that fixed sum or money.  ·

24.    In addition to the direct costs, outlined above, of waiting to conduct the work under this contract, there are many indirect costs for the District. For example, as trash trucks move through deteriorated alleys, they must move more slowly and can cover less territory during a normal work day. Thus, there can be overtime costs for crews to complete the daily itinerary. Some alleys become so deteriorated that routine trash collection cannot take place and the District must make other arrangements for trash collection.

25.    Trash trucks and other government vehicles moving through deteriorated alleys are also subjected to increased stresses as they bounce over potholes and deteriorations. This causes them to age faster, to increase the repair and maintenance costs and down-time, and to require more frequent replacement of them.

26.    Police vehicles moving through alleys, including those on emergency runs, must travel more slowly. This reduces their response time to citizen requests for help, makes it more difficult to timely deal with emergencies or pursue suspects, and makes it more difficult to conduct routine patrols.

27.    Just as with trash collection, alley cleaning is significantly compromised by potholes and deteriorated alleys. Such alleys are much harder to clean and frequently cannot be accessed by normal alley cleaning equipment.

28.    There are also adverse health and environmental effects from the inability or limitation of trash collection and alley cleaning services. For example, trash scatters, pests may

accumulate and breed, insects may find new and better breeding grounds. This problem becomes more severe as the weather starts to get warmer.

29.    For the foregoing reasons, DOT and OCP have been diligently attempting to get the alley repair and rehabilitation contract in place as soon as possible so that the residents of the District may begin to benefits of the work under the contract as soon as possible.

30.    It is in the public interest that the Contract be awarded just as quickly as possible and the work under it be commenced as quickly as possible.

I make the foregoing declaration, consisting of five (6) pages and thirty (30) numbered paragraphs, on the basis of my personal knowledge.

I declare under the penalty of perjury that the foregoing is true and corredt.

Jerry M. Carter

Jerry M. Carter

## DETERMINATION AND FINDINGS

### For

### Cancellation of the Solicitation

**Agency:**               District Department of Transportation  (DDOT)

**Solicitation No.**      **POKA-2006-B-0090-LJ**

**Name of Project:**      FY-2006 City-Wide Slurry Seal and Chip Seal Contract

### FINDINGS

1.   **Authorization:**

     This action is proposed in accordance with DC Code Section 2-303.07 and DCMR 27
     Section 1530.4(f) -

2.   **Minimum Need:**

     Work under this contract consists of joint sealing, slurry sealing and chip sealing with fabric
     the roadways and alleys. Location of work will be city- wide.

3.   **Estimated Reasonable Cost:**

     $ 952,300.00

4.   **Facts Which Justify Cancellation of the Solicitation:**

     A.     Bids for the subject contract were opened on January 10, 2007 with two (2)
     bidders responding as follows:

     | Bidder's Name | Bid Price |
     | --- | --- |
     | (1) KC Home Improvement & Construction Company | $1,516,550.00 |
     | (2) Anchor Construction Corporation | $1,754,600.00 |

B.     All of the bids received were found to be responsive.  However a comparison of proposed prices received in response to the solicitation shows that the bids submitted are substantially above the government estimate. The lowest bid is 159.26 % and the highest bid is 184.25% above the government estimate. We have reviewed its estimate and have determined that it reflects the market value for the items in the solicitation.

It is to be noted that the work is highly specialized and only a few companies in the area performs these projects. The two companies who bid are not known to be active contractors in this market. We believe their lack of experience and expertise in this area is largely responsible for the disparity between our estimate and their prices.

The Department can find no reasonable justification for the unreasonable bid prices. Therefore cancellation of this solicitation is appropriate.

5.     **Certification By Agency Chief Contracting Officer:**

I hereby certify that the above findings are correct and complete to the best of my knowledge and belief.

3/21/07
Date

Jerry M. Carter
Contracting Officer

**DETERMINATION**

Based on the above findings and in accordance with the DC Code Section 2-303.07 and DCMR 27 Section 1530.4(f), it is hereby determined that cancellation of this solicitation is in the best interest of the District of Columbia.

3/22/07
Date

for Oscar S. Rodriguez
Interim Chief Procurement Officer