IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAPITOL PAVING OF D.C., INC.** : | |
| Plaintiff : | |
| v. : | Civil Case No. 07cv113 (RJL) |
| **DISTRICT OF COLUMBIA et al.** : | |
| Defendants : | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE COMPLAINT**

Plaintiff, Capitol Paving of D.C., Inc. ("Capitol Paving"), by its attorneys, Gavett and Datt, P.C., and Douglas A. Datt, Esquire, respectfully files this opposition to the Motion of Defendants, District of Columbia and Mayor Adrian Fenty, to Dismiss the Complaint. Defendants file their motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. As shown below, Plaintiff has stated a claim upon which relief can be granted based on the unconstitutionality of the statute at issue. This Court therefore also has supplemental jurisdiction over the remaining local law claims.

**I.   BACKGROUND**

In this action, Plaintiff seeks to have this Court declare invalid and enjoin the implementation of a provision in the District of Columbia Small, Local, and Disadvantaged Business Enterprise Development and Assistance Act of 2005 ("the 2005 SLDBEDA Act"), D.C. Code § 2-218.01 *et seq.*, which gives an unprecedented and disproportionate preference to businesses who compete in the District of Columbia's contracting and procurement process who have been in business in the District of Columbia for twenty consecutive years

or longer. This new classification, entitled "Longtime Resident Business" ("LRB"), is defined in the Act as "a business which has been ***continuously eligible*** for certification as a Local Business Enterprise... ***for twenty consecutive years***." §2-218.02(13)(emphasis added).

Since the 1970's, the District of Columbia has had a contracting program regarding contracts for competitively-bid goods and services entered into with the District of Columbia. Under this program, local, small and economically disadvantaged businesses, which have been certified as such by a District of Columbia agency, have been able to receive preference points on responses to Requests for Proposals ("RFP's") or percent reductions on responses to Invitations or Requests for Bids ("IFB"). Thus, although a business may submit a bid with a bid price that is higher than a competitor's bid, after the application of these preference points or percent reductions, the bid may be considered the lower bid resulting in the contract being awarded to that bidder. Although a contractor's bid may be given a discount for purposes of award consideration, the actual contract award to be paid to the contractor will be the actual bid amount.

Although throughout the entire history of the District of Columbia contracting program, the number of preference points or percent reductions for particular classifications has varied from 2 points or 2 percentage point reductions to 5 points or 5 percentage point reductions for any one category, this new legislation affords LRB's a preference of ten points or ten percent (10%) reduction in bid price. § 2-218.43.

Plaintiff, a District of Columbia minority-owned and operated corporation, which has performed work in the District of Columbia since for nineteen years, alleges in the Complaint

that the preferences accorded to an LRB effectively preclude plaintiff and other local, small, and/or disadvantaged enterprises from competing in the District of Columbia contracting and procurement process.[1]

There are five Counts in the Complaint. These counts allege that the LRB classification: (1) violates Equal Protection in that it sets forth a classification and preference that are not rationally related to a legitimate state interest, are arbitrary, capricious, and unreasonable, and conflict with the stated purpose of the 2005 SLDBEDA Act to stimulate and foster greater opportunities for local, small, and disadvantaged business enterprises to participate in the District's contracting and procurement process; (2) violates the Equal Protection clause as well as Plaintiff's civil rights in that it denies minority businesses, who, for the most part, have not had the advantage of being in business for twenty or more years, equal opportunity to participate in the District of Columbia's contracting and procurement process; (3) conflicts with the District of Columbia Procurement Practices Act because it has the effect of reducing competition; and (4) is unconstitutionally vague.

Plaintiff further alleged that the 2005 SLDBEDA Act explicitly required that the Mayor issue proposed rules to implement the legislation and required that the Director of the District of Columbia Department of Small and Local Business Development establish procedures and guidelines for the implementation of the programs established pursuant to the Act. Since the Mayor never issued any proposed rules or implementing rules, and the Director of the District of Columbia Department of Small and Local Business Development

---

[1] A complete description of the background of the 2005 SLDBEDA Act is set forth in Plaintiff's Memorandum of Points and Authorities in support of its Motion for Preliminary Injunction, which is incorporated herein by reference.

has never established procedures and guidelines for the implementation of the programs, plaintiff alleged that the actions taken by the District of Columbia Department of Small and Local Business Development and/or District of Columbia Small and Local Business Opportunity Commission in certifying companies for this preference, and the actions taken by District agencies, in particular the District of Columbia Department of Public Works, District Division of Transportation, in applying this preference in evaluating bids and awarding contracts, are in violation of the 2005 SLDBEDA Act as well as the District of Columbia Administrative Procedures Act.

**Legislative History**

As described more fully in Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction, there is no evidence that the District of Columbia Council considered any justification whatsoever for the adoption of the LRB classification and preference. In fact, when the SLDBEDA legislation was first introduced before the Council, there was no reference whatsoever to an LRB classification, and there is no indication in the legislative history how this classification suddenly appeared in the final Act. Moreover, less than one month after the effective date of the 2005 SLDBEDA Act, on November 2, 2005, an amendment was introduced , the "Longtime Resident Business Definition Amendment Act of 2005," to change the definition of LRB as set forth in the Act. A public hearing was held on the proposed Amendment, which included testimony from individual businesses and public interest organizations representing minority business owners, and the District's own Department of Small and Local Business Development, and the Small and Local Business Opportunity Commission, who testified in support of the proposed amendment to reduce the significant advantage being enjoyed by LRB's when competing for city contracts against smaller companies.

Legislation was then proposed that amended the existing law defining resident businesses and small businesses, which after several mark-ups, resulted in a bill which which was passed by the Council and amends the definition of Longtime Resident Business under the 2005 SLDBEDA Act by lowering the threshold for Small Business Enterprises to fifteen consecutive years. Thus, pursuant to the Amendment, a Longtime Resident Business would include either a business which has been continuously eligible for certification as a Local Business Enterprise for twenty consecutive years or a Small Business Enterprise which has been continuously eligible for certification as a Local Business Enterprise for fifteen consecutive years. The amendment was signed by the Mayor on December 28, 2006 and is pending approval by Congress.

In its Motion to Dismiss, in search of a "rational basis" for the originally-defined LRB classification, the District incredibly relies on the legislative history of the *amended* definition, which changed the definition of LRB. The District selectively cites part of that legislative history, which, the District asserts, confirms that "the purpose of this provision was to reward 'a business' longtime dedication to the District" through "the poorest years of the local economy.'"

## II.   STANDARDS APPLICABLE TO MOTIONS TO DISMISS

Defendants' Motion to Dismiss is submitted pursuant to Federal Rule 12(b)(1) and 12(b)(6). A motion to dismiss for failure to state a claim may be granted if it appears beyond doubt that the Plaintiff can prove no set of facts in support of its claim which would entitle the plaintiff to relief. The Court must view the allegations in light most favorable to the Plaintiff, accepting the truth of all relevant material facts that are well pleaded. *Scheuer v. Rhodes*, 416 U.S. 232 (1974) (abrogated on other grounds).

## III. <u>LEGAL ARGUMENT</u>

Defendant takes the position that plaintiff fails to state a constitutional violation, and that this court lacks supplemental jurisdiction over any remaining local law claims. Plaintiffs concede that if its federal claims are dismissed, this Court would lack supplemental jurisdiction over any remaining local law claims. As shown below, however, there is no merit to defendant's argument that Plaintiff's federal claims should be dismissed.

### 1. Plaintiff Has Stated A Cause of Action for Count I that The LRB Classification is Discriminatory

As shown in Plaintiff's Motion for Preliminary Injunction and Supporting Memorandum, the LRB classification provides an uneven preference to established white-owned businesses to the extreme disadvantage to minority-owned firms. Although the legislation does not explicitly define the categories by racial classification, it is clear that the categories set forth in the legislation are drawn along racial lines.

Defendants assert that there is no allegation the Legislature had a racially discriminatory purpose in enacting the statute, and that official action will not be held unconstitutional solely because it results in a racially disproportionate impact. In fact, although the legislation is not explicitly drawn along racial lines, the legislation effectively eliminates businesses who have been in business for less than twenty years from competing in the District of Columbia contracting program, and it is obvious that those businesses are largely minority-owned. Since there was absolutely no public record in connection with the adoption of the original LRB provision, it is difficult to prove that plaintiff and other minority-owned businesses were specifically overtly targeted by this legislation.

As noted in plaintiff's memorandum in support of its Motion for Preliminary Injunction, however, past discrimination studies performed in the District supported a finding

of contracting discrimination against Black and Hispanic businesses in the District of Columbia geographic market area. This past history, along with the clear disparate treatment of minority businesses pursuant to the current LRB provision, certainly supports the argument that plaintiff and others similarly situated were targeted by this provision. As such, Plaintiff has stated a cause of action for violation of Equal Protection and this Count should not be dismissed.

>   **2.   Plaintiff States a Cause of Action in Count II That The LRB Classification Has No Rational Basis**

In its Complaint, plaintiff alleges that the LRB classification violates the Equal Protection clause because it is an economic provision not rationally related to a legitimate state interest, is arbitrary, capricious, and unreasonable, and conflicts with the stated purpose of the Act.

As described more fully in Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction, there is no evidence that the District of Columbia Council considered any justification whatsoever for the adoption of the LRB classification and preference. In fact, when the SLDBEDA legislation was first introduced before the Council, there was no reference whatsoever to an LRB classification, and there is no indication in the legislative history how this classification suddenly appeared in the final Act. Moreover, less than one month after the effective date of the 2005 SLDBEDA Act, on November 2, 2005, an amendment was introduced , the "Longtime Resident Business Definition Amendment Act of 2005," to change the definition of LRB as set forth in the Act. A public hearing was held on the proposed Amendment, which included testimony from individual businesses and public interest organizations representing minority business owners, and the District's own Department of Small and Local Business Development, and the Small and Local Business

Opportunity Commission, who testified in support of the proposed amendment to reduce the significant advantage being enjoyed by LRB's against smaller companies.

Legislation was then proposed that amended the existing law defining resident businesses and small businesses, which after several mark-ups, resulted in a bill which was ultimately passed by the Council and amends the definition of Longtime Resident Business by lowering the threshold for Small Business Enterprises to fifteen consecutive years. The amendment was signed by the Mayor on December 28, 2006 and is pending approval by Congress.

In its Motion to Dismiss, in search of a "rational basis" for the originally-defined LRB classification, the District incredibly relies on the legislative history of the *amended* definition of LRB, to try to come up with a justification for the original LRB definition. The District selectively cites part of that legislative history, which, the District asserts, "has an obvious and legitimate rationale: to reward 'a business' longtime dedication to the District" through "the poorest years of the local economy.'" Defendants' Memorandum at 5-6. Defendants further assert that "the Council could also have believed it was securing the future vitality of the local economy" because in the event of another economic downturn, the LRB preference would be an incentive for businesses to remain in the District. *Id.*. Defendants speculate that the legislature could have conceivably concluded that the poorest years of the local economy occurred at least fifteen years ago and that the legislature could also rationally award a longtime resident preference to a local business that had been operating in the District for at least twenty consecutive years. *Id.*

The Defendants' attempt to manufacture a legitimate rationale on the part of the District is admirable, however, it simply doesn't survive rational basis review. First of all, the District only quotes a small excerpt of the legislative history of the LRB amendment. The

public record reflects that this was the first time a hearing was even held on the LRB definition, although, at this point, it was done in the context of *amending* the definition since there was absolutely no public discussion of the original provision to begin with. The report notes that Chairperson Brown stated that the Committee would take a close look at whether the proposed legislation should require ten or fifteen years to qualify businesses as longtime resident businesses (Complaint Ex. 2 at 3). The report further notes that the majority of *witnesses* testified that "a ten-year period does not reach far back enough in time to reward those businesses that endured the poorest years of the local economy estimated to have ended at a minimum of fifteen years ago", and that the "current law's twenty-year requirement is inadequate as it reaches too far back in time and benefits too small a number of businesses." *Id*. at 4. It should also be emphasized that this hearing was held on October 20, 2006, and the Committee Report was issued on November 6, 2006. So, according to the testimony and the committee report, it was determined at that time that a ten-year period, October 20, 1996, did not reach back far enough, the poorest years of the local economy ended a minimum of fifteen years prior, which was October 20, 1991, and twenty years prior to the hearing, October 20, 1986, was considered too long ago.

The evidence is overwhelming that, in fact, the Council did not consider any rationale whatsoever when it adopted the original LRB provision. But, even if one examines the attempted rationales that the District now proposes, those explanations can be immediately dismissed. First, as to the supposed rationale that the District was rewarding businesses that were dedicated to the District through "the poorest years of the local economy," which the District surmises that the legislature may have concluded took place at least fifteen years ago, this rationale is absolutely ludicrous given the wording of the legislation. The Mayor approved the original version of the legislation containing the LRB twenty-year provision

on July 26, 2005. Assuming that the Council had a rational basis for rewarding local businesses that were in existence at least twenty years prior to that date, that would result in a decision to reward businesses that existed on July 26, 1985. The legislation, however, was not drafted to reward businesses that were dedicated to the District through this alleged poorest time of the economy – July 26, 1985 and earlier. Instead, the legislation was drafted to reward businesses in existence for twenty years, and this twenty-year period was not fixed or tied into the poorest years of the economy. Thus, as shown above, by the time the hearing on the amendment took place, it was already October 20, 1986. Since there is no set date in the legislation, today, if a business applies for LRB classification and that business was formed on April 1, 1987, it could qualify as an LRB. Yet, according to the defendants, the Council must have rationally decided that businesses in existence on July 26, 1985 and earlier were the ones that were in existence during the appropriate poor years. Five years from now, on April 1, 2012, a business that was formed on April 1, 1992 would be able to be classified as an LRB. Moreover, this date of formation would be AFTER the time the legislature determined, according to the defendants' theory, that the poorest years of the economy took place. Thus, the District would be rewarding businesses that were not local businesses at least fifteen years prior to the passage of the legislation, the time of the District's poorest years.

Second, the District tries to posit that in rewarding a business' longtime dedication, the Council may have believed it was securing the future vitality of the local economy in the event of another economic downturn, and that it would be an incentive for businesses to remain in the District. This alleged rationale is just as absurd as the first manufactured reason offered by defendants. First, suppose there was a small, minority business that came into existence in 2005 which qualified as a local business enterprise. Assume there was a

severe economic downturn in 2008 - 2012, and that business not only stayed in the District, but bid for District work and contracted with the District . Under the current classification, that business would not be able to be classified as an LRB until 20 years from 2005, the year 2025, thirteen years after the downturn.

On the other hand, suppose there is a local business enterprise that has been in existence in the District since 1987. Again assume a severe economic downturn in the years 2008 - 2012. Unlike the business in the previous example, however, this business does no bidding or contracting with the District during that time, and instead focuses its work in Pennsylvania, Virginia, and Maryland. Suddenly in 2013, after the downturn, this business, which would qualify as an LRB would be rewarded for having been a LBE for twenty years when it did nothing to stand by the District during its poorest years. Defendants' attempt to come up with a rationale for the LRB certification completely fails and defies logic.

As noted in Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction, the United States Supreme Court and federal courts have consistently struck down statutes that set forth classifications favoring longtime residents. *Zobel v. Williams,* 457 U.S. 55 (1982); *Shapiro v. Thompson,* 394 U.S. 618 (1969); *Williams v. Vermont,* 472 U. S. 14 (1985); *Hooper v. Bernalillo County Assessor,* 472 U. S. 612 (1985); *Soto-Lopez v. New York City Civil Service Commission,* 755 F.2d 266 (2d Cir. 1985), *aff'd,* 476 U.S. 898 (1986); *Bunyan v. Camacho,* 770 F.2d 773 (9th Cir. 1985), *cert. denied,* 477 U.S. 903 (1986); *Maldonado v. Houstoun,* 177 F.R.D. 311 (E.D. Pa. 1997), *aff'd,* 157 F.3d 179 (3d Cir. 1998), *cert. denied,* 526 U.S. 1130 (1999). The Supreme Court has noted that it is NOT a legitimate state interest to reward citizens for past contributions. In the *Zobel* case, one of the justifications the legislature offered in rewarding citizens of long-standing was similar to the one the defendants are advancing here – that the distinctions made by its dividend program

would create a financial incentive for individuals to establish and maintain residence in Alaska. The Court found that this objective was not rationally related to the distinctions Alaska sought to make between its residents. In fact, the Court found that if anything, such distinctions would DISCOURAGE new residents, since they would be receiving a smaller dividend and would likely become dissatisfied, and that it would make more sense for the State to give a LARGER, rather than smaller dividend to new residents. 457 U.S. at 678- 679 n.9.

Similarly, the supposed rationale advanced by the defendants makes no sense whatsoever. The District is trying to *encourage* businesses to come to the District - and is especially encouraging small and disadvantaged businesses to the City. Effectively eliminating their competitive edge because they cannot compete with the twelve preference points afforded LRB's makes no sense in any way and certainly does not welcome business to the District.

Defendants cite to a line of cases in which courts have upheld various economic regulations that were challenged on equal protection grounds. Those cases, however, are completely distinguishable from the instant case.

The District cites *New Orleans v. Dukes,* 427 U.S. 297 (1976), as the most compelling case in support of its argument. In that case, the city of New Orleans had an ordinance which prohibited vendors from selling food from pushcarts in the French quarter in order to preserve the character and quality of that part of the city. In 1972, the city enacted an amendment adding a grandfather clause to except from the prohibition, vendors who had continually operated the same business within the same locality for eight years ***prior to the effective date of the amendment*** (there were two pushcart vendors who came within this exception). The Court upheld the amendment in the face of a challenge by a woman who

operated a pushcart for only two years, who had not come within the grandfather exception. The *Dukes* case differs from the current matter in several respects. First, in that case the record was abundantly clear that the amended ordinance was an economic regulation aimed at enhancing the role of the French quarter, and indeed, the ordinance did seem rationally related to that goal. Second, as noted above, the legislation in that case specifically stated that businesses that had operated the same business in the locality for eight years prior to the effective date of the amendment were permitted to continue their business, thus the legislation clearly provided for just the two qualifying pushcart vendors to operate in the French quarter. To the contrary, as discussed above, the LRB provision in this case does not set a date that is related to the years of the District's alleged downturn in its economy, if that was the supposed rationale for the legislation as defendants assert may have been the case. Third, the Court noted that the city could have eliminated all of its pushcart food vendors, however it rationally chose to eliminate vendors of more recent vintage, and take a gradual approach to the problem. The Court also found that the city could have reasonably decided that newer businesses were less likely to have built up substantial reliance interests in continued operation in the French quarter, whereas the two vendors who qualified under the grandfather clause, both of whom had operated in the area for over twenty years, had themselves become part of the character of the French quarter. Thus, unlike the Supreme Court cases discussed above where the Court found it unconstitutional to attempt to reward citizens for past contributions, the city of New Orleans had a well-articulated and well-reasoned rationale for the distinctions in made.

In the current case, the District is effectively eliminating competitive bidding for a class of businesses that are largely small and minority businesses, a class which it has sought to foster. In addition, it is effectively eliminating competition for businesses, such as Capitol

Paving, who have been in existence for almost twenty years and who have been true to the District during the period that the legislative history of the amendment shows, was dedicated to the District during the poorest years of the local economy. Also, as shown above, the LRB provision is not rationally related to encouraging businesses to stay in the District. Thus, there is no rational basis for the LRB classification as originally set forth, and no conceivable basis whatsoever that might support it.

Defendants also cite the cases, *Hughes v. Alexandria Scrap Corp.,* 426 U. S. 794 (1976), and *Red River Service Corp. v. City of Minot,* 146 F.3d 583 (8th Cir. 1996), in support of their argument that courts "have repeatedly found a rational basis for similar legislative judgments awarding preferences to its residents where the government acts as a market participant. Defendant's Memorandum at 6. These cases are completely inapposite to the legislation at issue. First of all, the current case does NOT concern a preference to current residents over non-residents, as was the case in both *Hughes* and *Red River*. Instead, the LRB classification makes a distinction between residents of the same state, and seeks to award residents based on length of residency in the State, which, as shown above, has been held by the Supreme Court to have no rational basis. In the *Hughes* case, the Court upheld a statutory classification which made it easier for Maryland scrap processors to dispose of Maryland junk automobiles as compared to an out-of-state scrap processor who sought to dispose of junk automobiles that had been owned in Maryland. The Court found that the distinction was related to the basic statutory purpose of furthering Maryland's environment in clearing its landscape of abandoned automobiles, and the assumption that automobile hulks delivered to Maryland processors are likely to have been abandoned in Maryland, whereas those delivered to non-Maryland processors were likely to have been abandoned outside of Maryland. Therefore, requiring out-of-state processors to have to come up with

more exacting evidence of Maryland automobile ownership was rationally related to the purpose of cleaning up Maryland's environment.

Similarly, in the *Red River* case, the United States Court of Appeals for the Eighth Circuit upheld the decision of a North Dakota city which prohibited an Oklahoma waste transport business to dispose of solid waste in the city-owned landfill. The court found that there was a rational basis for the classification, finding that the city's decision to no longer accept municipal solid waste from anyone but its residents and existing customers was rationally related to its goal of preserving the useful life of its landfill for its residents. 146 F.3d at 590. Moreover, unlike the LRB legislation, the court recognized that the city's preference created for existing customers did no more than recognize and protect their reliance interest, as was the case in *Dukes*.

As such, plaintiff has stated a cause of action for Count II, and this Count should not be dismissed.

### 3. Plaintiff Has Stated A Valid Cause of Action for Count IV, That The 2005 SLDBEDA Act is Void for Vagueness

Defendants attempt to argue that plaintiffs have not stated a cause of action that the act is unconstitutionally void for vagueness because Capitol Paving only objects that the statute does not explain how a business gets certified as an LRB, and that such a challenge would fail in any event because it does not "forbid or require" plaintiff to do anything under civil or criminal penalty. Memorandum at 7-8. Defendant also takes the position that plaintiff cannot show that the statute is impermissibly vague in all its applications, and that plaintiff undoubtedly has the ability to clarify the meaning of the regulation by its own inquiry.

First, it should be noted that the statute does not simply fail to explain how a business gets certified as an LRB, but on its face, neglected to include the LRB category in the statutory provision that even describes the certification process for every single other category described in the statute. Section 2-218.61(b)(1). Moreover, the legislation fails to explain whether being designated as LRB limits an entity to ten points, or allows "double dipping" by combing LRB and LBE certification, for a total of twelve points. Further, the legislation fails to describe the process by which a company may be "eligible" for certification as an LRB. The legislation with respect to the LRB classification is vague in every respect.

Moreover, it is completely disingenuous of the defendants to suggest that plaintiff has the ability to clarify the meaning of the regulation when, in fact, there have been no regulations or rulemakings that have ever been promulgated in connection with this legislation, and the District agencies that are implementing the LRB provision are doing it with a complete lack of rules and guidance.[2]

Finally, there is absolutely no requirement that plaintiff be under the threat of civil or criminal penalty in order to sustain a void for vagueness challenge. The standard is whether the statute "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Barnes,* 295 F.3d 1354, 1366 (D.C. Cir. (2002)), *quoting United States v. Lanier,* 520 U.S. 259 (1997).

---

[2] For example, plaintiff had filed a complaint with the SLBOC, objecting to Fort Myer's certification as an LRB, based on several grounds, including the fact that Fort Myer failed to comply with what appeared to be previous requirements to obtain LBE certification. The SLBOC simply did not address these arguments in ruling on plaintiff's complaint.

In this case, men of common intelligence must certainly guess at the meaning of the LRB classification and preference. For instance, the very simple requirement with respect to the number of preference points has us scratching our heads and having no idea whether the statute provides a maximum ten-point preference, or a combined LBE-LRB twelve point preference for LRB's. In addition, since the legislation is silent with respect to LRB's receiving certification, are entities who want to receive LRB certification required to submit a Sworn Affidavit along with Certificates of Good Standing for a twenty year period? Plaintiff cannot readily discern the answers to these questions from the legislation, and the agencies that have been asked this question have chosen to ignore it. Defendants inability to answer these and other specific questions supports Plaintiff's contention that the legislation is vague. Certainly, in the light most favorable to plaintiff, plaintiff has stated a cause of action for this Count.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss the Complaint.

Respectfully submitted,

GAVETT AND DATT, P.C.

/s/ *Douglas A. Datt*
Douglas A. Datt, Bar No. 410354
Rhoda S. Barish, Bar No. 366658
15850 Crabbs Branch Way, Suite 180
Rockville, MD 20855-2622
ddatt@gavettdatt.com
Telephone: (301) 948-1177
Facsimile: (301) 948-4334
**Counsel for Plaintiff**
**Capitol Paving of D.C., Inc.**

**REQUEST FOR HEARING**

Plaintiff, Capitol Paving of D.C., Inc. respectfully requests a hearing on its Opposition to Defendants' Motion to Dismiss the Complaint.

/s/ *Douglas A. Datt*
Douglas A. Datt

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, this 2nd day of April, 2007, a copy of the foregoing Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Complaint, and proposed Order were served by filing with the Court's electronic filing service, with instructions to serve on the following:

Jack M. Simmons III, Esquire
Kimberly Matthews, Esquire
Assistant Attorney General
441 Fourth Street, N. W., Sixth Floor South
Washington, D. C. 20001-2714
Telephone: (202) 724-6653
Facsimile: (202) 727-0431
E-mail: jack.simmons@dc.gov
kimberly.matthews@dc.gov
***Counsel for Defendants District of Columbia and Mayor Adrian Fenty***

/s/ *Douglas A. Datt*
Douglas A. Datt

F:\Data\GD\Corporate\104.000\104-35\Pleadings\Opposition-Motion-Dismiss.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAPITOL PAVING OF D.C., INC.** | : |
| **Plaintiff** | : |
| vs. | :    Civil Case No. 07cv113 (RJL) |
| **DISTRICT OF COLUMBIA,** *et al.* | : |
| **Defendants** | : |

# ORDER

UPON CONSIDERATION of the Motion of Defendants, District of Columbia and Mayor Adrian Fenty, to Dismiss the Complaint, the opposition thereto, and the oral argument of counsel, it is this _____ day of _____, 200__,

ORDERED, that the Motion is DENIED.

_____
Judge
United States District Court for the
District of Columbia

cc: Douglas A. Datt, Esquire
    Gavett and Datt, P.C.
    15850 Crabbs Branch Way
    Suite 180
    Rockville, MD 20855-2622

    Jack M. Simmons III, Esquire
    Kimberly Matthews, Esquire
    Assistant Attorney General
    441 Fourth Street, N. W., Sixth Floor South
    Washington, D. C. 20001-2714