## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CAPITOL PAVING OF D.C., INC.** | : | |
| **Plaintiff** | : | |
| **v.** | : | **Civil Case No. 07cv113 (RJL)** |
| **DISTRICT OF COLUMBIA et al.** | : | |
| **Defendants** | : | |

## PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, Capitol Paving of D.C., Inc. ("Capitol Paving"), by its attorneys, Gavett and Datt, P.C., and Douglas A. Datt, Esquire, respectfully files this Reply to the Opposition of Defendants, District of Columbia and Mayor Adrian Fenty, to Plaintiff's Motion for Preliminary Injunction.

As shown in Plaintiff's Motion, the District of Columbia passed the legislation in question, with the newly created and unprecedented Longtime Resident Business ("LRB") classification and preference, after the classification was belatedly inserted into the legislation without any evidence that there had been any consideration or discussion whatsoever of the provision. Now, in a desperate attempt to find a rational basis for this classification, which completely departs from well-established law, the District seeks to try to explain what the District of Columbia Council may have had in mind in enacting this provision and tries to offer a rational basis for the provision. The District's attempt to find rationality where none exists, however, cannot survive scrutiny.

## A.    PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS CLAIM

As shown in Plaintiff's Motion, there is a substantial likelihood that plaintiff will succeed on the merits of this action.  Without re-hashing its previous arguments, plaintiff will attempt to narrow the dispute between the parties in this Reply.

Defendants have taken the position that Plaintiff's constitutional claims are without merit, and that this Court therefore lacks supplemental jurisdiction over the local law claims. Plaintiff concedes that this Court would have no jurisdiction of the local law claims in the absence of a federal claim.  As shown previously, and in reply to defendants' position, however, Plaintiff has a likelihood of success on the merits of its constitutional claims.  If Plaintiff can show that the legislation in question is unconstitutional based on one cause of action, this Court need not even examine the other causes of action.

### 1.    The LRB Classification Has No Rational Basis

In its Motion, plaintiff demonstrates that the LRB classification violates the Equal Protection clause because it is an economic provision not rationally related to a legitimate state interest, is arbitrary, capricious, and unreasonable, and conflicts with the stated purpose of the Act.

As described more fully in Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction, there is no evidence that the District of Columbia Council considered any justification whatsoever for the adoption of the LRB classification and preference.  In fact, when the SLDBEDA legislation was first introduced before the Council, there was no reference whatsoever to an LRB classification, and there is no indication in the legislative history how this classification suddenly appeared in the final Act.  Moreover, less than one

month after the effective date of the 2005 SLDBEDA Act, on November 2, 2005, an amendment was introduced, the "Longtime Resident Business Definition Amendment Act of 2005," to change the definition of LRB as set forth in the Act.  A public hearing was held on the proposed Amendment, which included testimony from individual businesses and public interest organizations representing minority business owners, and the District's own Department of Small and Local Business Development, and the Small and Local Business Opportunity Commission, who testified in support of the proposed amendment to reduce the significant advantage being enjoyed by LRB's  against smaller companies.

Legislation was then proposed that amended the existing law defining resident businesses and small businesses, which after several mark-ups, resulted in a bill which  was ultimately passed by the Council and amends the definition of Longtime Resident Business by lowering the threshold for Small Business Enterprises to fifteen consecutive years.  The amendment was signed by the Mayor on December 28, 2006 and is pending approval by Congress.

In its Opposition, in search of a "rational basis" for the originally-defined LRB classification, the District incredibly relies on the legislative history of the ***amended*** definition of LRB, to try to come up with a justification for the original LRB definition.  The District selectively cites part of that legislative history, which, the District asserts, "has an obvious and legitimate rationale: to reward 'a business' longtime dedication to the District" through "the poorest years of the local economy.'" Defendants' Opposition at 12. Defendants further assert that "the Council could also have believed it was securing the future vitality of the local economy" because in the event of another economic downturn, the

LRB preference would be an incentive for businesses to remain in the District.  *Id.* at 12-13.
Defendants speculate that the legislature could have conceivably concluded that the poorest
years of the local economy occurred at least fifteen years ago and that the legislature could
also rationally award a longtime resident preference to a local business that had been
operating in the District for at least twenty consecutive years.  *Id.*

The Defendants' attempt to manufacture a legitimate rationale on the part of the
District is admirable, however, it simply doesn't survive rational basis review.  First of all,
the District only quotes a small excerpt of the legislative history of the LRB amendment. The
public record reflects that this was the first time a hearing was even held on the LRB
definition, although, at this point, it was done in the context of ***amending*** the definition since
there was absolutely no public discussion of the original provision to begin with.  The report
notes that Chairperson Brown stated that the Committee would take a close look at whether
the proposed legislation should require ten or fifteen  years to qualify businesses as longtime
resident businesses (Complaint Ex. 2 at 3).  The report further notes that the majority of
***witnesses*** testified that "a ten-year period does not reach far back enough in time to reward
those businesses that endured the poorest years of the local economy estimated to have ended
at a minimum of fifteen years ago", and that the "current law's twenty-year requirement is
inadequate as it reaches too far back in time and benefits too small a number of businesses."
*Id.* at 4.  It should also be emphasized that this hearing was held on October 20, 2006, and
the Committee Report was issued on November 6, 2006.  So, according to the testimony and
the committee report, it was determined at that time that a ten-year period, October 20, 1996,
did not reach back far enough, the poorest years of the local economy ended a minimum of

- 4 -

fifteen years prior, which was October 20, 1991, and twenty years prior to the hearing, October 20, 1986, was considered too long ago.

The evidence is overwhelming that, in fact, the Council did not consider any rationale whatsoever when it adopted the original LRB provision. But, even if one examines the attempted rationales that the District now proposes, those explanations can be immediately dismissed. First, as to the supposed rationale that the District was rewarding businesses that were dedicated to the District through "the poorest years of the local economy," which the District surmises that the legislature may have concluded took place at least fifteen years ago, this rationale is absolutely ludicrous given the wording of the legislation. The Mayor approved the original version of the legislation containing the LRB twenty-year provision on July 26, 2005. Assuming that the Council had a rational basis for rewarding local businesses that were in existence at least twenty years prior to that date, that would result in a decision to reward businesses that existed on July 26, 1985. The legislation, however, was not drafted to reward businesses that were dedicated to the District through this alleged poorest time of the economy – July 26, 1985 and earlier. Instead, the legislation was drafted to reward businesses in existence for twenty years, and this twenty-year period was not fixed or tied into the poorest years of the economy. Thus, as shown above, by the time the hearing on the amendment took place, it was already October 20, 1986. Since there is no set date in the legislation, today, if a business applies for LRB classification and that business was formed on April 1, 1987, it could qualify as an LRB. Yet, according to the defendants, the Council must have rationally decided that businesses in existence on July 26, 1985 and earlier were the ones that were in existence during the appropriate poor years. Five years from now,

on April 1, 2012, a business that was formed on April 1, 1992 would be able to be classified as an LRB. Moreover, this date of formation would be AFTER the time the legislature determined, according to the defendants' theory, that the poorest years of the economy took place. Thus, the District would be rewarding businesses that were not local businesses at least fifteen years prior to the passage of the legislation, the time of the District's poorest years.

Second, the District tries to posit that in rewarding a business' longtime dedication, the Council may have believed it was securing the future vitality of the local economy in the event of another economic downturn, and that it would be an incentive for businesses to remain in the District. This alleged rationale is just as absurd as the first manufactured reason offered by defendants. First, suppose there was a small, minority business that came into existence in 2005 which qualified as a local business enterprise. Assume there was a severe economic downturn in 2008 - 20012, and that business not only stayed in the District, but bid for District work and contracted with the District . Under the current classification, that business would not be able to be classified as an LRB until 20 years from 2005, the year 2025, thirteen years after the downturn.

On the other hand, suppose there is a local business enterprise that has been in existence in the District since 1987. Again assume a severe economic downturn in the years 2008 - 2012. Unlike the business in the previous example, however, this business does no bidding or contracting with the District during that time, and instead focuses its work in Pennsylvania, Virginia, and Maryland. Suddenly in 2013, after the downturn, this business, which would qualify as an LRB would be rewarded for having been a LBE for twenty years

when it did nothing to stand by the District during its poorest years. Defendants' attempt to come up with a rationale for the LRB certification completely fails and defies logic.

As noted in Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction, the United States Supreme Court and federal courts have consistently struck down statutes that set forth classifications favoring longtime residents. *Zobel v. Williams,* 457 U.S. 55 (1982); *Shapiro v. Thompson,* 394 U.S. 618 (1969); *Williams v. Vermont,* 472 U. S. 14 (1985); *Hooper v. Bernalillo County Assessor,* 472 U. S. 612 (1985); *Soto-Lopez v. New York City Civil Service Commission,* 755 F.2d 266 (2d Cir. 1985), *aff'd,* 476 U.S. 898 (1986); *Bunyan v. Camacho,* 770 F.2d 773 (9th Cir. 1985), *cert. denied,* 477 U.S. 903 (1986); *Maldonado v. Houstoun,*177 F.R.D. 311 (E.D. Pa. 1997), *aff'd,* 157 F.3d 179 (3d Cir. 1998), *cert. denied,* 526 U.S. 1130 (1999). The Supreme Court has noted that it is NOT a legitimate state interest to reward citizens for past contributions. In the *Zobel* case, one of the justifications the legislature offered in rewarding citizens of long-standing was similar to the one the defendants are advancing here – that the distinctions made by its dividend program would create a financial incentive for individuals to establish and maintain residence in Alaska. The Court found that this objective was not rationally related to the distinctions Alaska sought to make between its residents. In fact, the Court found that if anything, such distinctions would DISCOURAGE new residents, since they would be receiving a smaller dividend and would likely become dissatisfied, and that it would make more sense for the State to give a LARGER, rather than smaller dividend to new residents. 457 U.S. at 678- 679 n.9.

Similarly, the supposed rationale advanced by the defendants makes no sense whatsoever. The District is trying to *encourage* businesses to come to the District - and is especially encouraging small and disadvantaged businesses to the City. Effectively eliminating their competitive edge because they cannot compete with the twelve preference points afforded LRB's makes no sense in any way and certainly does not welcome business to the District.

In their Opposition, Defendants have simply chosen to ignore the Supreme Court and federal precedent Plaintiff discussed in its Motion. Instead, defendants cite to a line of cases in which courts have upheld various economic regulations that were challenged on equal protection grounds. Those cases, however, are completely distinguishable from the instant case.

The District cites *New Orleans v. Dukes,* 427 U.S. 297 (1976), as the most compelling case in support of its argument. In that case, the city of New Orleans had an ordinance which prohibited vendors from selling food from pushcarts in the French quarter in order to preserve the character and quality of that part of the city. In 1972, the city enacted an amendment adding a grandfather clause to except from the prohibition, vendors who had continually operated the same business within the same locality for eight years *prior to the effective date of the amendment* (there were two pushcart vendors who came within this exception). The Court upheld the amendment in the face of a challenge by a woman who operated a pushcart for only two years, who had not come within the grandfather exception. The *Dukes* case differs from the current matter in several respects. First, in that case the record was abundantly clear that the amended ordinance was an economic regulation aimed

- 8 -

at enhancing the role of the French quarter, and indeed, the ordinance did seem rationally related to that goal.  Second, as noted above, the legislation in that case specifically stated that businesses that  had operated the same business in the locality for eight years prior to the effective date of the amendment were permitted to continue their business, thus the legislation clearly provided for just the two qualifying pushcart vendors to operate in the French quarter.  To the contrary, as discussed above, the LRB provision in this case does not set a date that is related to the years of the District's alleged downturn in its economy, if that was the supposed rationale for the legislation as defendants assert may have been the case. Third, the Court noted that the city could have eliminated all of its pushcart food vendors, however it rationally chose to eliminate vendors of more recent vintage, and take a gradual approach to the problem.  The Court also found that the city could have reasonably decided that newer businesses were less likely to have built up substantial reliance interests in continued operation in the French quarter, whereas the two vendors who qualified under the grandfather clause, both of whom had operated in the area for over twenty years, had themselves become part of the character of the French quarter.  Thus, unlike the Supreme Court cases discussed above where the Court found it unconstitutional to attempt to reward citizens for past contributions, the city of New Orleans had a well-articulated and well-reasoned rationale for the distinctions in made.

In the current case, the District is effectively eliminating competitive bidding for a class of businesses that are largely small and minority businesses, a class which it has sought to foster.  In addition, it is effectively eliminating competition for businesses, such as Capitol Paving, who have been in existence for almost twenty years and who have been true to the

District during the period that the legislative history of the amendment shows, was dedicated to the District during the poorest years of the local economy.  Also, as shown above, the LRB provision is not rationally related to encouraging businesses to stay in the District.  Thus, there is no rational basis for the LRB classification as originally set forth, and no conceivable basis whatsoever that might support it.

Defendants also cite the cases, *Hughes v. Alexandria Scrap Corp.,* 426 U. S. 794 (1976), and *Red River Service Corp. v. City of Minot,* 146 F.3d 583 (8th Cir. 1996), in support of their argument that courts "have repeatedly found a rational basis for similar legislative judgments awarding preferences to its residents where the government acts as a market participant. Defendant's Opposition at 13.  These cases are completely inapposite to the legislation at issue.  First of all, the current case does NOT concern a preference to current residents over non-residents, as was the case in both *Hughes* and *Red River.*  Instead, the LRB classification makes a distinction between residents of the same state, and seeks to award residents based on length of residency in the State, which, as shown above, has been held by the Supreme Court to have no rational basis.  In the *Hughes* case, the Court upheld a statutory classification which made it easier for Maryland scrap processors to dispose of Maryland junk automobiles as compared to an out-of-state scrap processor who sought to dispose of junk automobiles that had been owned in Maryland.  The Court found that the distinction was related to the basic statutory purpose of furthering Maryland's environment in clearing its landscape of abandoned automobiles, and the assumption that automobile hulks delivered to Maryland processors are likely to have been abandoned in Maryland, whereas those delivered to non-Maryland processors were likely to have been abandoned

outside of Maryland.  Therefore, requiring out-of-state processors to have to come up with more exacting evidence of Maryland automobile ownership was rationally related to the purpose of cleaning up Maryland's environment.

Similarly, in the *Red River* case, the United States Court of Appeals for the Eighth Circuit upheld the decision of a North Dakota city which prohibited an Oklahoma waste transport business to dispose of solid waste in the city-owned landfill.  The court found that there was a rational basis for the classification, finding that the city's decision to no longer accept municipal solid waste from anyone but its residents and existing customers was rationally related to its goal of preserving the useful life of its landfill for its residents.  146 F.3d at 590.  Moreover, unlike the LRB legislation, the court recognized that the city's preference created for existing customers did no more than recognize and protect their reliance interest, as was the case in *Dukes*.

The District also tries to argue that the fact that the LRB classification may conflict with the overall purpose of the Act is irrelevant, because the only question is whether there is a rational basis that could justify the government's action.  The fact that there is absolutely no legislative history behind the originally enacted provision, and the fact that the defendants have had to guess at a possible rationale for the legislature, however, does make the overall purpose of the Act quite relevant.  That is, because the overall purpose of the Act completely undermines the  rationale that the defendants have attempted to manufacture.  This rationale, that the District was possibly trying to reward businesses that stood by the District during the poorest years of its economy, contradicts with the stated goals of the District to stimulate and foster greater opportunities for local, small, and disadvantaged business enterprises to

participate in the District's contracting and procurement process, to foster effective and equitably broad-based competition in the District, to obtain full and open competition by providing that contractors are given adequate opportunities to bid and that the government receives sufficient bids to ensure that it obtains the lowest possible price for goods and services that meet specifications and standards for quality; to provide increased procurement opportunities for District-based, women-owned businesses; to provide for increased public confidence in the procedures followed in public procurement; to provide increased economy in procurement activities and to maximize, to the fullest extent allowed by law, the purchasing power of the District government; and to insure the fair and equitable treatment of all persons who deal with the procurement system of the District government. Thus, this could not possibly have been the rationale of the legislature in having adopted the LRB provision.

### 2.    The LRB Classification is Discriminatory

As noted above, this Court need not address this issue if it finds that there is no rational basis for the LRB classification. As shown in its Motion, the LRB classification provides an uneven preference to established white-owned businesses to the extreme disadvantage to minority-owned firms. Although the legislation does not explicitly define the categories by racial classification, it is clear that the categories set forth in the legislation are drawn along racial lines.

Defendants assert that there is no allegation the Legislature had a racially discriminatory purpose in enacting the statute, and that official action will not be held unconstitutional solely because it results in a racially disproportionate impact. In fact,

although the legislation is not explicitly drawn along racial lines, the legislation effectively eliminates businesses who have been in business for less than twenty years from competing in the District of Columbia contracting program, and it is obvious that those businesses are largely minority-owned. Since there was absolutely no public record in connection with the adoption of the original LRB provision, it is difficult to prove that plaintiff and other minority-owned businesses were specifically overtly targeted by this legislation.

As noted in plaintiff's memorandum, however, past discrimination studies performed in the District supported a finding of contracting discrimination against Black and Hispanic businesses in the District of Columbia geographic market area. This past history, along with the clear disparate treatment of minority businesses pursuant to the current LRB provision, certainly supports the argument that plaintiff and others similarly situated were targeted by this provision.

### 4.    The 2005 SLDBEDA Act is Void for Vagueness

Defendants attempt to argue that the act is not unconstitutionally void for vagueness because Capitol Paving only objects that the statute does not explain how a business gets certified as an LRB, and that such a challenge would fail in any event because it does not "forbid or require" plaintiff to do anything under civil or criminal penalty. Opposition at 15. Defendant also takes the position that plaintiff cannot show that the statute is impermissibly vague in all its applications, and that plaintiff undoubtedly has the ability to clarify the meaning of the regulation by its own inquiry.

First, it should be noted that the statute does not simply fail to explain how a business gets certified as an LRB, but on its face, neglected to include the LRB category in the

statutory provision that even describes the certification process for every single other category described in the statute. Section 2-218.61(b)(1). Moreover, the legislation fails to explain whether being designated as LRB limits an entity to ten points, or allows "double dipping" by combing LRB and LBE certification, for a total of twelve points. Further, the legislation fails to describe the process by which a company may be "eligible" for certification as an LRB. The legislation with respect to the LRB classification is vague in every respect.

Moreover, it is completely disingenuous of the defendants to suggest that plaintiff has the ability to clarify the meaning of the regulation when, in fact, there have been no regulations or rulemakings that have ever been promulgated in connection with this legislation, and the District agencies that are implementing the LRB provision are doing it with a complete lack of rules and guidance.[1]

Finally, there is absolutely no requirement that plaintiff be under the threat of civil or criminal penalty in order to sustain a void for vagueness challenge. The standard is whether the statute "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Barnes,* 295 F.3d 1354 , 1366 (D.C. Cir. (2002)), *quoting United States v. Lanier,* 520 U.S. 259 (1997).

In this case, men of common intelligence must certainly guess at the meaning of the LRB classification and preference. For instance, the very simple requirement with respect

---

[1] For example, plaintiff had filed a complaint with the SLBOC, objecting to Fort Myer's certification as an LRB, based on several grounds, including the fact that Fort Myer failed to comply with what appeared to be previous requirements to obtain LBE certification. The SLBOC simply did not address these arguments in ruling on plaintiff's complaint.

- 14 -

to the number of preference points has us scratching our heads and having no idea whether the statute provides a maximum ten-point preference, or a combined LBE-LRB twelve point preference for LRB's.  In addition, since the legislation is silent with respect to LRB's receiving certification, are entities who want to receive LRB certification required to submit a Sworn Affidavit along with Certificates of Good Standing for a twenty year period?  Plaintiff cannot readily discern the answer from the legislation, and the agencies that have been asked this question have chosen to ignore it.  Defendants have failed to  address the specific questions posed by Plaintiff and the inability to provide a response supports Plaintiff's argument that the legislation is vague.

### 5.    Plaintiff Is Also Likely to Succeed on its Allegations of Defendants' Violations of District of Columbia Law

As shown above, because plaintiff is likely to succeed on its Federal claims, this Court also has supplemental jurisdiction over the remaining local law claims.

Defendants first states that the  District of Columbia Superior Court has concluded that there was little likelihood of success on the merits in plaintiff's appeals of one of its protests.  As defendants well know, plaintiff was limited in the appeal of its Protest to the issues that were before the District of Columbia Contract Appeals Board.  That Board was able to hear none of the constitutional issues currently before this Court, and similarly was not able to set aside the law based on many of the local law claims raised in this litigation.  Moreover, Judge Wright, of the District of Columbia Superior Court, specifically noted in hearing Plaintiff's  motion to stay, that the Constitutional issues were not before the CAB and were not before the Superior Court.

With respect to plaintiff's argument that the LRB provision violates the District of Columbia Procurement Practices Act, the District takes the position that since the Council enacted the recent Act, that it must have determined that there was no conflict with the PPA. As shown above, however, it appears that the Council, in fact, never actually considered the LRB provision at all, and the Council never went through any exercise whatsoever in considering its rationality. Thus, it is of no surprise that the Council may not have considered that the LRB classification completely conflicted with pre-existing District of Columbia law. Moreover, although defendant suggests that if there was an inconsistency, the act, being the more recent enactment, would be deemed to have supplanted the PPA, this argument is ludicrous considering that the belatedly inserted LRB classification itself conflicts with the stated purposes of the recent SLDBEDA Act itself.

Finally, defendants assert that although it may have been "advisable" for the District to have enacted implementing regulations, that the absence of implementing regulations cannot have the effect of nullifying the statutory requirements that the LRB preference points be awarded. Opposition at 18. The problem with defendants argument is that the legislation itself is so vague, and public officials administering this Act have begun certifying companies as LRB's in the absence of any rules or guidance whatsoever in how this is to be done. As shown above, Capitol Paving has already objected to these methods, and the agency has simply summarily concluded that there is no merit to Capitol Paving's arguments, without even explicitly addressing each objection.

**B.    PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THE COURT DOES NOT GRANT INJUNCTIVE RELIEF**

As plaintiff noted in its original memorandum, where there is a particularly strong likelihood of success on the merits even if there is relatively slight showing of irreparable injury, injunctive relief may be justified.

Defendants first cite to the fact that the Superior Court denied Capitol's Motion to Stay in the Alley Contract case, and found no irreparable injury.  As noted above, the legal arguments that were before the Superior Court were limited to the ones that were before the District of Columbia Contract Appeals Board.  Moreover, the Motion to Stay in that case concerned the award of one contract, and whether the plaintiff would suffer irreparable injury in connection with the award of that one contract.  Although plaintiff stands by its position that it would be irreparably injured even by the award of just that one contract, this Court is considering the application of the statute with respect to all contracts that are being solicited and awarded.  In addition, as defendant notes, the Superior Court did grant plaintiff's motion to stay in the appeal of another Protest, the Slurry Seal case.  Although the Superior Court will be reconsidering its granting of that motion, and the District has just indicated that it is withdrawing the Solicitation in that case, at this time, the Motion to Stay is still in effect in that case.

Defendants' contention that the fact that Capitol Paving performs other paving work and thus the potential loss of contracts funded solely by District of Columbia funds does not cause it irreparable injury is inaccurate.  During at least  the past three years, roughly one third or more of Capitol Paving's gross annual revenue has been attributable to work on

- 17 -

projects solely funded by District monies. The dollar amounts can change depending on the actual contracts and the amounts that are solicited by the District.

The affidavits submitted on behalf of Capitol Paving support its contention regarding the devastating effect that the continued application of the LRB preference will have on the company and clearly meet the standard of irreparable injury.

The District's arguments that Capitol Paving can become whole through remedies in the procurement process are also inaccurate. First, in order for Capitol Paving to make any claim of termination for convenience costs, it would have to be awarded the contract. Otherwise, it is limited to challenging the award of the contract through the Protest provisions of the Contract Appeals Board. Contrary to the assertions of the District, those remedies do not allow for Capital to recover the profits it would have earned had it been awarded the contract. See D.C. Code Section 2-309.08(f)(2). Under the District procurement provisions, Capitol Paving cannot recover lost profits and thus any analogy to a breach of contract action is simply incorrect.

## C.   THE BALANCE OF HARMS WEIGHS IN FAVOR OF THE INJUNCTIVE RELIEF PLAINTIFF SEEKS

Defendants assert that they will be substantially harmed if injunctive relief is granted because, although admittedly it has taken the District so long to move on the Alley Contract, it is finally able to proceed with the award of that contract and an injunction will prevent it from beginning the process of repair and rehabilitation of its alleys. One must wonder how important the alley repair really is to the District since, in 2002, Capitol Paving was awarded the same work as specified in the Alley Contract, and the District canceled the final year of that contract.

In a February 8, 2007 filing in Superior Court, the District indicated that the Alley Contract was undergoing administrative review and that it was intended to submit the contract to the Mayor within a few weeks. That few weeks has now expired and still the contract continues to be the subject of administrative review.

In addition, in the "Slurry Seal" Protest appeal currently pending before the Superior Court, the Defendants filed a Motion to Reconsider the Court's Order to Stay, which is currently pending. In its Memorandum in Support of that motion, the District therein also argued, like it does here, that the requested Stay will substantially harm the District and the Public Interest. The District stated therein, "First, as noted above, the purpose of this contract is to conduct certain forms of street repair of the roadways of the District of Columbia. It goes without saying that there is significant repair work that needs to be done and any stay that would have the effect of precluding the work from being done would be antithetical to this need. Second, any stay would thwart the contracting processes as set forth in the statute." District's Memorandum at 11. Yet, the District has just advised that it is cancelling that solicitation. (Carter Declaration ¶ 12, attached to Defendants' Opposition). Thus, the District's alleged need to complete these projects may not be as much of a priority as the District would now have us believe.

The key inquiry, however, is whether denial of injunctive relief will cause greater injury to plaintiff than granting injunctive relief will cause to the District. Capitol Paving submits that although the District of Columbia alleys may not be the pride of the City, the fact that plaintiff and other similarly situated contractors will suffer irreparable harm if they are effectively precluded from competing in the procurement process, the application of the

LRB preference points causes substantial economic harm to the District itself, because it awards contracts to bidders who, in fact, were not the lowest bidders, and the LRB provision discriminates against small, minority-owned, and women-owned businesses and denies them equal opportunity to participate in the District of Columbia's contracting and procurement process, weighs in plaintiff's favor.

## **CONCLUSION**

For all of the foregoing reasons, and for the reasons previously stated in Plaintiff's Motion for Preliminary Injunction and supporting Memorandum, Plaintiff respectfully requests that this Court grant its Motion for Preliminary Injunction in the above-captioned matter.

Respectfully submitted,

GAVETT AND DATT, P.C.

/s/ *Douglas A. Datt*
Douglas A. Datt, Bar No. 410354
Rhoda S. Barish, Bar No. 366658
15850 Crabbs Branch Way, Suite 180
Rockville, MD 20855-2622
ddatt@gavettdatt.com
Telephone:  (301) 948-1177
Facsimile:  (301) 948-4334
**Counsel for Plaintiff**
**Capitol Paving of D.C., Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, this 2nd day of April, 2007, a copy of the foregoing Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction was served by filing with the Court's electronic filing service, with instructions to serve on the following:

Jack M. Simmons III, Esquire
Kimberly Matthews, Esquire
Assistant Attorney General
441 Fourth Street, N. W., Sixth Floor South
Washington, D. C.  20001-2714
Telephone:  (202) 724-6653
Facsimile: (202) 727-0431
E-mail: jack.simmons@dc.gov
kimberly.matthews@dc.gov
***Counsel for Defendants District of Columbia
and Mayor Adrian Fenty***

/s/ *Douglas A. Datt*
Douglas A. Datt

F:\Data\GD\Corporate\104.000\104-35\Pleadings\Reply-Motion-Preliminary-Injunction.wpd