UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAPITOL PAVING OF D.C., INC.,<br>      Plaintiff,<br><br>      v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br>      Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 07-00113 (RJL)<br>)<br>)<br>)<br>) |

### SUR-REPLY OF DEFENDANTS
### TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Defendants District of Columbia and Mayor Adrian M. Fenty (collectively "the District" or "Defendants") file this sur-reply to bring two essential matters to the Court's attention and to briefly address several other issues raised by Capitol's reply memorandum.

First, the statute whose application Plaintiff Capitol Paving of D.C., Inc. ("Capitol" or "Plaintiff"), seeks to enjoin was amended, effective March 14, 2007. The definition of Longtime Resident Business ("LRB") was expanded to include not only any qualified business that had been continuously operating in the District for twenty years but also to any qualified small business that has been operating for at least fifteen consecutive fifteen years. Thus, the legal framework that Capitol seeks to enjoin has been fundamentally altered.

Second, Capitol asserts that it qualifies as a "small" business. It further asserts that it is "a minority-owned and operated corporation authorized to conduct business in the District of Columbia, which has performed work in the District of Columbia since 1987." Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Injunction at 2. See also Affidavit of Francisco Neto, Exhibit 15 to that Memorandum at ¶ 4; Capitol's now-denied

motion to stay the contract award at the D.C. Superior Court, Civil No. 06-008266 (Capitol describes itself as "a minority-owned, District of Columbia business enterprise for almost nineteen years[.]")  Thus, Capitol may well meet the new standard for an LRB in that it has fifteen years of consecutive operation in the District as a small business.  If so, Capitol will now be eligible for the same number of LRB preference points as Fort Myer Construction Corp. ("Fort Myer") as an LRB. [1]  Apparently Capitol believes that it does meet the criteria because it has applied for small business certification.  Exhibit 4. [2]

## Discussion

In this case, Plaintiff Capitol challenges the constitutionality, on equal protection grounds, of the District of Columbia Small, Local, and Disadvantaged Business Enterprise Development and Assistance Act of 2005, D.C. Law 16-33 (effective October 20, 2005) ("the Act").  D.C. Official Code §§ 2-218.01 *et seq*. (2006).  Plaintiff seeks to preclude the issuance of both pending *and future* contracts for which the District has included 10 preference points for a longtime resident business ("LRB") in the analysis of the competing bids for the contract.  That is, Plaintiff seeks to require that all D.C. contracts be evaluated without regard to whether any individual bidder is an LRB; a start-up would be on an equal footing with a firm that has a long-standing presence in the community.  Plaintiff has also moved for a preliminary injunction ("PI"),

---

[1] It should be noted that there are several classes of preference points available to qualifying firms, including LRB, small business, resident-owned business, disadvantaged business, and local business with its principal place of business in an enterprise zone.  D.C. Official Code § 2-218.43(a) (2006 Repl.) as amended by Law 16-266.  In no event, however, may any firm obtain more than twelve preference points.  D.C. Official Code § 2-218.43(b) (2006 Repl.).

[2] Defendants are not submitting the exhibits with this filing because of technical problems with one of the scanners (needed to copy and convert the documents into PDF format). Defendants will hand-deliver them to the Court and to counsel at the PI hearing and formally file them via a Praecipe as soon as possible.

apparently to enjoin award of a much-needed contract for alley repair and rehabilitation to one of its competitors, Fort Myer. (Although Capitol makes much of the fact that it is a minority-owned firm, Fort Myer is also a minority-owned firm.)

As enacted in 2005, the Act, among other things, provided that the District award preference points for certain firms that have established their eligibility as small, local, or disadvantaged businesses in the analysis of their bids for government contracts. The Act provides that a certified LRB is entitled to ten preference points in the analysis of its bids for District of Columbia contracts. D.C. Official Code § 2-218.43(a)(1)(C) (2006 Repl.). An LRB is a firm that has operated continuously in the District for at least twenty years. See D.C. Official Code § 2-218.02(13) (2006 Repl.).

**First.** The question of preferences for LRBs was a matter of significant attention in both the contracting community and in the D.C. Council. On November 2, 2005, scarcely two weeks after the Act went became effective, Councilmember Kwame Brown introduced Bill 16-506, the Longtime Resident Business Definition Amendment Act of 2006. That bill would have redefined LRB to be any business that was certified as a small business enterprise for 10 consecutive years. A number of individuals and firms – including Plaintiff – testified in favor of the Bill at a public hearing on October 20, 2006. See Legislative History, attached in part as Exhibit 3 (including testimony of Capitol's representative).

Bill 15-506, after amendment, was enacted as Act 16-622. Act 16-622 changed the definition of LRB. An LRB was no longer simply as a firm that had been in continuous operation for at least 20 years. Under the amended definition, an LRB is either (1) a firm that has operated continuously in the District for 20 years or (2) a small business enterprise, as

defined in the Act, that has operated in the District for 15 consecutive years.³  See 54 D.C. Reg. 829-30 (Feb. 2, 2007), attached as Exhibit 1.  The Act became effective, as Law 16-266, on March 14, 2007 (after the required 30-legislative Congressional review period).  Exhibit 2.

Thus, the legal paradigm now in effect is significantly different from that challenged by Capitol.

**Second.**  Capitol, apparently, is fully aware of this change in the law and has moved quickly to take advantage of it.  On January 12, 2007, barely three weeks after enactment of Act No. 16-622 and before the Congressional review period had concluded, Capitol submitted a formal request that the District of Columbia certify it as a small business concern.  Exhibit 4.  According to Capitol's January 12, 2007, request and according to its assertions in this civil action, it has been in continuous operation in the District for nineteen years – four more than the minimum – and it reasonably believes that it qualifies as a "small" business concern.   The D.C. Small and Local Business Opportunity Commission has placed Capitol's request on the agenda of its meeting of April 10, 2007, at 6:00 p.m.  Attached as Exhibit 5.

Two conclusions flow immediately from this.  First, assuming Capitol's application is approved, it will then be certified as a small business.  Further, assuming that it has been in operation in the District for at least fifteen consecutive years, as provided in the statute, Capitol can also seek certification as an LRB.  In fact, Capitol may apply for LRB status on the basis of

---

³  The Act also changed the preference point structure in that it increased the number of preference points from three to five for resident-owned businesses.  The number of preference points for LRBs remained unchanged at 10.

the fifteen year provision at any time.<sup>4</sup> If its request is approved, Capitol will then immediately be entitled to the same ten preference points as Fort Myer.

Second, Capitol will not be deprived of any business opportunity because of any alleged constitutional defect in the definition of LRB or the preference points awarded thereunder and will not experience any irreparable injury. After all, according to the affidavits of Messrs. Neto and Phang, it is this prospective loss of business that is the harm to which Capitol would be subjected. If Capitol gains its small business certification, it cannot be an aggrieved party as to any future contracting situations because it will not be disadvantaged by any other firm's LRB status.

**Third.** Courts have long held that unless classifications violate fundamental personal rights or are drawn upon inherently suspect distinctions such as race, religion, or alienage, the constitutionality of the statutory distinctions are presumed. E.g., New Orleans v. Dukes, 427 U.S. 297, 303 (1976). Such classifications only require that the statute challenged be rationally related to a legitimate state interest. States and municipalities are accorded very wide latitude in the regulation of their local economies under their police powers and rational distinctions may be made with substantially less than mathematical exactitude. Id.

The cases cited by Plaintiff for the proposition that, as a matter of law, there can be no rational relationship between the Act (whether the 2005 Act or the Act as amended effective March 14, 2007) and a legitimate government interest based on length of time, are inapposite. Those cases primarily relate to citizens of a state and to benefits provided directly by the states themselves, either in the form of direct payments or credits, based on permanent and immutable

---

<sup>4</sup>   It is indeed curious that Capitol has not already sought this LRB status. If Capitol qualifies for this status but has not applied for it, Capitol certainly cannot complain that it is denied preference points because of actions of the Defendants.

distinctions between those citizens based on the length of their residency in the jurisdiction. Zobel v. Williams, 457 U.S. 55 (1982), for example, dealt with Alaska's apportionment of the State's mineral income among citizens and, in that case, the Supreme Court even noted that the State courts had found no rational relationship between the provisions of the statute at issue and legitimate government objectives.  In Williams v. Vermont, 472 U.S. 14 (1985), the Court struck down a Vermont sales tax credit for cars purchased by Vermont residents but denied to residents who purchased the car before moving to Vermont.  In Hooper v. Bernalillo County Assessor, 472 U.S. 612 (1985), the Court struck down a statute giving tax credits to longtime resident Vietnam War veterans.  See also, e.g., Shapiro v. Thompson, 394 U.S. U.S. 618 (1969) (striking a statute that apportioned welfare benefits on the basis of prior tax payments of applicants).

Not one of the cases cited by Plaintiff deals with the area of business regulation.  In that area, the case law is clear that business preferences based on length of operation in the jurisdiction are constitutionally permissible.  E.g., New Orleans v. Dukes, 427 U.S. at 303.

**Fourth.**   Finally, it should be noted that Capitol asserts that the statute has a constitutionally-inappropriate disparate impact on minority contractors.  To establish this, however, as noted in the Defendants' Motion to Dismiss, Plaintiff must show a discriminatory intent or purpose.  Motion at 3, quoting Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-65 (1977).

Plaintiff has not done so, even for purposes of establishing likelihood of success on the merits for its motion for a PI.  Aside from several unsupported allegations, Plaintiff has done no more than provide two sets of data from the U.S. Census Bureau.  Exhibits 7 and 8 to the Complaint.  The data, however, do not meet minimal evidentiary standards for the purpose of showing that the District's statute has a disparate impact because, among other defects, the two

data sets are not comparable: The first set of data (for 1992) shows the number of Hispanic-owned businesses on a state-by-state basis and the second of data (for 2001) shows the number of minority-owned businesses on a state-by-state basis. Because incompatible data bases may not be compared, Hispanic-owned businesses in one year cannot be compared with minority-owned businesses in another year for any purpose. Moreover, the Act came into effect in 2005, four years after the second data set was compiled, so that the two data sets cannot be used to create some form of inferential "before and after" picture of the alleged disparate impact of the creation of LRB. Thus, Plaintiff's data are not probative evidence of some sort of disparate impact.

### Conclusion

For all of the foregoing reasons, the motion for a preliminary injunction should be denied.

Dated: April 4, 2007

                              Respectfully submitted,

                              LINDA SINGER
                              Attorney General for the District of Columbia

                              GEORGE C. VALENTINE
                              Deputy Attorney General
                              Civil Litigation Division

                                /s/  Kimberly M. Johnson
                              KIMBERLY MATTHEWS JOHNSON
                              Chief, Section 1
                              DC Bar No. 435163

                                /s/  Jack M. Simmons, III
                              JACK M. SIMMONS, III

Assistant Attorney General
DC Bar No. 925420
441 Fourth St., NW, Sixth Floor South
Washington, DC  20001-2714
(202) 724-6653
(202) 727-0431   (fax)
jack.simmons@dc.gov
Attorney for Defendant

- 8 -